# EXHIBIT A

**12-Person Jury**

FILED
7/19/2018 1:42 PM
DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL
2018CH09060

FILED DATE: 7/19/2018 1:42 PM   2018CH09060

### IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
### COUNTY DEPARTMENT – CHANCERY DIVISION

| | |
|---|---|
| **ERIK LUNA**, individually, and on behalf of all others similarly situated, ) ) ) | |
| Plaintiff, ) ) | |
| v. ) ) | Case No. **2018CH09060** |
| **4C KINZIE INVESTOR LLC** d/b/a Highline Bar & Lounge, ) | |
| **1001 W. LAKE OPCO, LLC** d/b/a Federales, ) | |
| **4C 1001 W. LAKE OPCO, LLC**, ) | |
| **4C 15 E. ILLINOIS OPERATIONS, LLC** d/b/a Fremont Bar, ) ) | |
| **FOUR CORNERS TAVERN FUND MANAGEMENT, LLC**, ) ) | |
| **1500 N. WELLS OPCO, LLC** d/b/a 80 Proof f/k/a SteakBar, ) ) | |
| **4C 1500 N. WELLS OPCO, LLC**, ) | |
| **TALBOTT ASSOCIATES, L.P.** d/b/a 20 EAST, ) ) | |
| **4C WRIGLEY, LLC** d/b/a Brickhouse Tavern, ) | |
| **KEYSTONE HOLDINGS CORP.**, ) | |
| **4C RIVERSIDE, LLC** d/b/a Porter Kitchen & Deck, ) ) | |
| **CHEVAL PORTER MANAGER, LLC**, ) | |
| **WELLS HOLDINGS, LLC** d/b/a Benchmark Bar and Grill, ) ) | |
| **WELLS HOLDINGS MANAGER, LLC**, ) | |
| **WEST LOOP TAP, L.L.C.** d/b/a Westend Bar & Grill f/k/a Brownstone Tavern & Grill (Madison and Ada), ) ) ) | |
| **SHEF AT OAK, INC.** d/b/a Kirkwood Bar & Grill f/k/a Brownstone Tavern & Grill (Sheffield and Oakdale), ) ) ) | |
| **RIVER NORTH TAP, INC.** d/b/a Sidebar Grille, ) ) | |
| **ROCCO'S, LLC** d/b/a Ranalli's, ) | |
| **CLARK STREET RESTAURANT PARTNERS, LLC** f/k/a 2450 N. Clark, Inc. d/b/a Gaslight, ) ) ) | |
| **ASCLOSE, INC.** d/b/a Schoolyard Tavern & Grill, ) ) | |
| ) | Jury Trial Demanded |

FILED DATE: 7/19/2018 1:42 PM 2018CH09060

**THE CHASE TAVERN, INC.** d/b/a Trellis )
Wine Bar, )
**SALOON HOLDINGS, LLC** d/b/a The )
Crossing Tavern, )
**SALOON HOLDINGS MANAGER, LLC**, )
**HARDTALES, INC.** d/b/a Brownstone Tavern )
& Grill (Lincoln and Irving Park), )
**FOUR CORNERS**, a voluntary unincorporated )
association, )
**FOUR CORNERS TAVERN FUND I, LLC**, )
**FOUR CORNERS TAVERN GROUP FUND** )
**INVESTOR, LLC**, )
**FOUR CORNERS TAVERN PARTNERS,** )
**LLC,** )
**FOUR CORNERS TAVERN GROUP INC.**, )
**FOUR CORNERS HOLDINGS, LLC**, )
**FOUR CORNERS CAPITAL ADVISORS,** )
**LLC,** )
**FOUR CORNERS SHUTTLE, LLC**, )
**4C CHEVAL LLC**, )
**1001 W. LAKE, LLC**, )
**MATTHEW MENNA**, and )
**ANDREW GLOOR,** )
 )
Defendants. )

# COLLECTIVE AND CLASS ACTION COMPLAINT

Thomas A. Zimmerman, Jr.
Sharon A. Harris
Matthew C. De Re
Nickolas J. Hagman
**ZIMMERMAN LAW OFFICES, P.C.**
77 W. Washington Street, Suite 1220
Chicago, Illinois 60602
(312) 440-0020 telephone
(312) 440-4180 facsimile
Firm I.D. No. 34418

*Counsel for Plaintiff, the putative*
*Collective Group, and the putative Classes*

FILED DATE: 7/19/2018 1:42 PM   2018CH09060

## TABLE OF CONTENTS

THE DEFENDANTS ............................................................................................1

THE PLAINTIFF ............................................................................................19

JURISDICTION AND VENUE ........................................................................19

FACTUAL ALLEGATIONS ............................................................................20

FACTS RELEVANT TO PLAINTIFF ............................................................21

THE WAGE AND HOUR CLAIMS ................................................................23

THE INCOME TAX CLAIMS ........................................................................30

COUNT I: Violation of the Fair Labor Standards Act .................................32

    Collective Action Allegations ......................................................................32

    Substantive Allegations ................................................................................35

COUNT II: Violation of the Illinois Minimum Wage Law ...........................38

    Class Action Allegations ..............................................................................38

    Substantive Allegations ................................................................................40

COUNT III: Violation of the Chicago Minimum Wage Ordinance..............43

    Class Action Allegations ..............................................................................43

    Substantive Allegations ................................................................................45

COUNT IV: Violation of the Illinois Wage Payment and Collection Act .....48

    Class Action Allegations ..............................................................................48

    Substantive Allegations ................................................................................51

COUNT V: Conversion ....................................................................................54

    Class Action Allegations ..............................................................................54

    Substantive Allegations ................................................................................56

FILED DATE: 7/19/2018 1:42 PM    2018CH09060

**COUNT VI: Violation of Section 7434 of the Internal Revenue Code**...................................**59**

    **Class Action Allegations** ...................................................................**59**

    **Substantive Allegations** .....................................................................**61**

**COUNT VII: Violation of the Racketeer Influenced and Corrupt Organizations Act** ....**67**

    **Class Action Allegations** ...................................................................**67**

    **Substantive Allegations** .....................................................................**69**

**COUNT VIII: Civil Conspiracy** ..............................................................**76**

    **Class Action Allegations** ...................................................................**76**

    **Substantive Allegations** .....................................................................**78**

**COUNT IX: Fraud** ...................................................................................**84**

    **Class Action Allegations** ...................................................................**84**

    **Substantive Allegations** .....................................................................**86**

**COUNT X: Negligent Misrepresentation** ..............................................**91**

    **Class Action Allegations** ...................................................................**92**

    **Substantive Allegations** .....................................................................**94**

**JURY DEMAND** .....................................................................................**100**

Representative Plaintiff Erik Luna ("Plaintiff"), individually, and on behalf of all others similarly situated, by and through counsel, brings this action against Defendants 4C Kinzie Investor LLC d/b/a Highline Bar & Lounge, 1001 W. Lake Opco, LLC d/b/a Federales, 4C 1001 W. Lake Opco, LLC, 4C 15 E. Illinois Operations, LLC d/b/a Fremont Bar, Four Corners Tavern Fund Management, LLC, 1500 N. Wells Opco, LLC d/b/a 80 Proof f/k/a SteakBar, 4C 1500 N. Wells Opco, LLC, Talbott Associates, L.P. d/b/a 20 East, 4C Wrigley, LLC d/b/a Brickhouse Tavern, Keystone Holdings Corp., 4C Riverside, LLC d/b/a Porter Kitchen & Deck, Cheval Porter Manager, LLC, Wells Holdings, LLC d/b/a Benchmark Bar and Grill, Wells Holdings Manager, LLC, West Loop Tap, L.L.C. d/b/a Westend Bar & Grill f/k/a Brownstone Tavern & Grill (Madison and Ada), Shef at Oak, Inc. d/b/a Kirkwood Bar & Grill f/k/a Brownstone Tavern & Grill (Sheffield and Oakdale), River North Tap, Inc. d/b/a Sidebar Grille, Rocco's, LLC d/b/a Ranalli's, Clark Street Restaurant Partners, LLC f/k/a 2450 N. Clark, Inc. d/b/a Gaslight, Asclose, Inc. d/b/a Schoolyard Tavern & Grill, The Chase Tavern, Inc. d/b/a Trellis Wine Bar, Saloon Holdings, LLC d/b/a The Crossing Tavern, Saloon Holdings Manager, LLC, Hardtales, Inc. d/b/a Brownstone Tavern & Grill (Lincoln and Irving Park), a voluntary unincorporated association known as Four Corners, Four Corners Tavern Fund I, LLC, Four Corners Tavern Group Fund Investor, LLC, Four Corners Tavern Partners, LLC, Four Corners Tavern Group Inc., Four Corners Holdings, LLC, Four Corners Capital Advisors, LLC, Four Corners Shuttle, LLC, 4C Cheval LLC, 1001 W. Lake, LLC, Matthew Menna, and Andrew Gloor (collectively, "Defendants"), as follows:

## THE DEFENDANTS

1.      Defendant 4C Kinzie Investor LLC is an Illinois limited liability company with its principal place of business located at 1040 West Randolph Street, Chicago, Illinois 60607.    4C

FILED DATE: 7/19/2018 1:42 PM   2018CH09060

FILED DATE: 7/19/2018 1:42 PM   2018CH09060

Kinzie Investor LLC does business as Highline Bar & Lounge, located at 169 West Kinzie Street, Chicago, Illinois 60654.  4C Kinzie Investor LLC employs, and controls the payment of wages to, bartenders and waiters who serve food and drinks (collectively, "Servers") to Highline Bar & Lounge's customers.  As such, 4C Kinzie Investor LLC is an "employer" of the Servers at Highline Bar & Lounge as that term is defined by 29 U.S.C. § 203(d), 820 ILCS 105/3(c), 820 ILCS 115/2, and 26 U.S.C. § 3401(d), and there is an "employment" relationship between 4C Kinzie Investor LLC and those Servers as defined by 26 U.S.C. § 3121(b).

2.      Defendant 1001 W. Lake Opco, LLC is a Delaware limited liability company with its principal place of business located at 1040 West Randolph Street, Chicago, Illinois 60607. 1001 W. Lake Opco, LLC does business as Federales, located at 180 North Morgan Street, Chicago, Illinois 60607. 1001 W. Lake Opco, LLC employs, and controls the payment of wages to, Servers who serve food and drinks to Federales's customers.  As such, 1001 W. Lake Opco, LLC is an "employer" of the Servers at Federales as that term is defined by 29 U.S.C. § 203(d), 820 ILCS 105/3(c), 820 ILCS 115/2, and 26 U.S.C. § 3401(d), and there is an "employment" relationship between 1001 W. Lake Opco, LLC and those Servers as defined by 26 U.S.C. § 3121(b).

3.      Defendant 4C 1001 W. Lake Opco, LLC is a Delaware limited liability company with its principal place of business located at 1330 West Fulton Street, Chicago, Illinois 60607. 4C 1001 W. Lake Opco, LLC is the manager of Defendant 1001 W. Lake Opco, LLC. Through 1001 W. Lake Opco, LLC, 4C 1001 W. Lake Opco, LLC employs, and controls the payment of wages to, Servers who serve food and drinks to Federales's customers.  As such, 4C 1001 W. Lake Opco, LLC is an "employer" of the Servers at Federales as that term is defined by 29 U.S.C. § 203(d), 820 ILCS 105/3(c), 820 ILCS 115/2, and 26 U.S.C. § 3401(d), and there is an

FILED DATE: 7/19/2018 1:42 PM   2018CH09060

"employment" relationship between 4C 1001 W. Lake Opco, LLC and those Servers as defined by 26 U.S.C. § 3121(b).

4.    Defendant 4C 15 E. Illinois Operations, LLC is an Illinois limited liability company with its principal place of business located at 1040 West Randolph Street, Chicago, Illinois 60607.  4C 15 E. Illinois Operations, LLC does business as Fremont Bar, located at 15 West Illinois Street, Chicago, Illinois 60654.  4C 15 E. Illinois Operations, LLC employs, and controls the payment of wages to, Servers who serve food and drinks to Fremont Bar's customers.  As such, 4C 15 E. Illinois Operations, LLC is an "employer" of the Servers at Fremont Bar as that term is defined by 29 U.S.C. § 203(d), 820 ILCS 105/3(c), 820 ILCS 115/2, and 26 U.S.C. § 3401(d), and there is an "employment" relationship between 4C 15 E. Illinois Operations, LLC and those Servers as defined by 26 U.S.C. § 3121(b).

5.    Defendant Four Corners Tavern Fund Management, LLC is a Delaware limited liability company with its principal place of business located at 1040 West Randolph Street, Chicago, Illinois 60607.  Four Corners Tavern Fund Management, LLC is the manager of Defendant 4C 15 E. Illinois Operations, LLC.  Through 4C 15 E. Illinois Operations, LLC, Four Corners Tavern Fund Management, LLC employs, and controls the payment of wages to, Servers who serve food and drinks to Fremont Bar's customers.  As such, Four Corners Tavern Fund Management, LLC is an "employer" of the Servers at Fremont Bar as that term is defined by 29 U.S.C. § 203(d), 820 ILCS 105/3(c), 820 ILCS 115/2, and 26 U.S.C. § 3401(d), and there is an "employment" relationship between Four Corners Tavern Fund Management, LLC and those Servers as defined by 26 U.S.C. § 3121(b).

6.    Defendant 1500 N. Wells Opco, LLC is a Delaware limited liability company with its principal place of business located at 1040 West Randolph Street, Chicago, Illinois

FILED DATE: 7/19/2018 1:42 PM   2018CH09060

60607.  1500 N. Wells Opco, LLC does business as 80 Proof, located at 1500 North Wells Street Chicago, IL 60610. 1500 N. Wells Opco, LLC employs, and controls the payment of wages to, Servers who serve food and drinks to 80 Proof's customers.  As such, 1500 N. Wells Opco, LLC is an "employer" of the Servers at 80 Proof as that term is defined by 29 U.S.C. § 203(d), 820 ILCS 105/3(c), 820 ILCS 115/2, and 26 U.S.C. § 3401(d), and there is an "employment" relationship between 1500 N. Wells Opco, LLC and those Servers as defined by 26 U.S.C. § 3121(b).

7.      Defendant 4C 1500 N. Wells Opco, LLC is a Delaware limited liability company with its principal place of business located at 1040 West Randolph Street, Chicago, Illinois 60607.  4C 1500 N. Wells Opco, LLC is the manager of Defendant 1500 N. Wells Opco, LLC. Through 1500 N. Wells Opco, LLC, 4C 1500 N. Wells Opco, LLC employs, and controls the payment of wages to, Servers who serve food and drinks to 80 Proof's customers.  As such, 4C 1500 N. Wells Opco, LLC is an "employer" of the Servers at 80 Proof as that term is defined by 29 U.S.C. § 203(d), 820 ILCS 105/3(c), 820 ILCS 115/2, and 26 U.S.C. § 3401(d), and there is an "employment" relationship between 4C 1500 N. Wells Opco, LLC and those Servers as defined by 26 U.S.C. § 3121(b).  Prior to being known as 80 Proof, this bar and restaurant was known as SteakBar.

8.      Defendant Talbott Associates, L.P. is an Illinois limited partnership with its principal place of business located at 1040 West Randolph Street, Chicago, Illinois 60607. Talbott Associates, L.P. does business as 20 East, located at 20 East Delaware Place, Chicago, Illinois 60611. Talbott Associates, L.P. employs, and controls the payment of wages to, Servers who serve food and drinks to 20 East's customers.  As such, Talbott Associates, L.P. is an "employer" of the Servers at 20 East as that term is defined by 29 U.S.C. § 203(d), 820 ILCS

4

FILED DATE: 7/19/2018 1:42 PM   2018CH09060

105/3(c), 820 ILCS 115/2, and 26 U.S.C. § 3401(d), and there is an "employment" relationship between Talbott Associates, L.P. and those Servers as defined by 26 U.S.C. § 3121(b).

9.     Defendant 4C Wrigley, LLC is a Delaware limited liability company with its principal place of business located at 1040 West Randolph Street, Chicago, Illinois 60607.  4C Wrigley, LLC does business as Brickhouse Tavern, located at 3647 North Clark Street, Chicago, Illinois 60613. 4C Wrigley, LLC employs, and controls the payment of wages to, Servers who serve food and drinks to Brickhouse Tavern's customers.  As such, 4C Wrigley, LLC is an "employer" of the Servers at Brickhouse Tavern as that term is defined by 29 U.S.C. § 203(d), 820 ILCS 105/3(c), 820 ILCS 115/2, and 26 U.S.C. § 3401(d), and there is an "employment" relationship between 4C Wrigley, LLC and those Servers as defined by 26 U.S.C. § 3121(b).

10.     Defendant Keystone Holdings Corp. is an Illinois corporation with its principal place of business located at 1040 West Randolph Street, Chicago, Illinois 60607. Keystone Holdings Corp. is the manager of Defendant 4C Wrigley, LLC.  Through 4C Wrigley, LLC, Keystone Holdings Corp. employs, and controls the payment of wages to, Servers who serve food and drinks to Brickhouse Tavern's customers.  As such, Keystone Holdings Corp. is an "employer" of the Servers at Brickhouse Tavern as that term is defined by 29 U.S.C. § 203(d), 820 ILCS 105/3(c), 820 ILCS 115/2, and 26 U.S.C. § 3401(d), and there is an "employment" relationship between Keystone Holdings Corp. and those Servers as defined by 26 U.S.C. § 3121(b).

11.     Defendant 4C Riverside, LLC is a Delaware limited liability company with its principal place of business located at 1040 West Randolph Street, Chicago, Illinois 60607.   4C Riverside, LLC does business as Porter Kitchen & Deck, located at 150 North Riverside Plaza, Chicago, Illinois 60606. 4C Riverside, LLC employs, and controls the payment of wages to,

Servers who serve food and drinks to Porter Kitchen & Deck's customers. As such, 4C Riverside, LLC is an "employer" of the Servers at Porter Kitchen & Deck as that term is defined by 29 U.S.C. § 203(d), 820 ILCS 105/3(c), 820 ILCS 115/2, and 26 U.S.C. § 3401(d), and there is an "employment" relationship between 4C Riverside, LLC and those Servers as defined by 26 U.S.C. § 3121(b).

12.     Defendant Cheval Porter Manager, LLC is a Delaware limited liability company with its principal place of business located at 1040 West Randolph Street, Chicago, Illinois 60607. Cheval Porter Manager, LLC is the manager of Defendant 4C Riverside, LLC. Through 4C Riverside, LLC, Cheval Porter Manager, LLC employs, and controls the payment of wages to, Servers who serve food and drinks to Porter Kitchen & Deck's customers. As such, Cheval Porter Manager, LLC is an "employer" of the Servers at Porter Kitchen & Deck as that term is defined by 29 U.S.C. § 203(d), 820 ILCS 105/3(c), 820 ILCS 115/2, and 26 U.S.C. § 3401(d), and there is an "employment" relationship between Cheval Porter Manager, LLC and those Servers as defined by 26 U.S.C. § 3121(b).

13.     Defendant Wells Holdings, LLC is an Illinois limited liability company with its principal place of business located at 1040 West Randolph Street, Chicago, Illinois 60607. Wells Holdings, LLC does business as Benchmark Bar and Grill, located at 1510 North Wells Street, Chicago, Illinois 60610. Wells Holdings, LLC employs, and controls the payment of wages to, Servers who serve food and drinks to Benchmark Bar and Grill's customers. As such, Wells Holdings, LLC is an "employer" of the Servers at Benchmark Bar and Grill as that term is defined by 29 U.S.C. § 203(d), 820 ILCS 105/3(c), 820 ILCS 115/2, and 26 U.S.C. § 3401(d), and there is an "employment" relationship between Wells Holdings, LLC and those Servers as defined by 26 U.S.C. § 3121(b).

6

FILED DATE: 7/19/2018 1:42 PM   2018CH09060

14.     Defendant Wells Holding Manager, LLC is an Illinois limited liability company with its principal place of business located at 1040 West Randolph Street, Chicago, Illinois 60607. Wells Holding Manager, LLC is the manager of Defendant Wells Holdings, LLC. Through Wells Holdings, LLC, Wells Holding Manager, LLC employs, and controls the payment of wages to, Servers who serve food and drinks to Benchmark Bar and Grill's customers. As such, Wells Holding Manager, LLC is an "employer" of the Servers at Benchmark Bar and Grill as that term is defined by 29 U.S.C. § 203(d), 820 ILCS 105/3(c), 820 ILCS 115/2, and 26 U.S.C. § 3401(d), and there is an "employment" relationship between Wells Holding Manager, LLC and those Servers as defined by 26 U.S.C. § 3121(b).

15.     Defendant West Loop Tap, L.L.C. is an Illinois limited liability company with its principal place of business located at 1040 West Randolph Street, Chicago, Illinois 60607. West Loop Tap, L.L.C. does business as Westend Bar & Grill, located at 1326 West Madison Street Chicago, Illinois 60607. West Loop Tap, L.L.C. employs, and controls the payment of wages to, Servers who serve food and drinks to Westend Bar & Grill's customers. As such, West Loop Tap, L.L.C. is an "employer" of the Servers at Westend Bar & Grill as that term is defined by 29 U.S.C. § 203(d), 820 ILCS 105/3(c), 820 ILCS 115/2, and 26 U.S.C. § 3401(d), and there is an "employment" relationship between West Loop Tap, L.L.C. and those Servers as defined by 26 U.S.C. § 3121(b). Prior to being known as Westend Bar & Grill, this bar and restaurant was known as Brownstone Tavern & Grill (Madison and Ada).

16.     Defendant Shef at Oak, Inc. is an Illinois corporation with its principal place of business located at 1040 West Randolph Street, Chicago, Illinois 60607. Shef at Oak, Inc. does business as Kirkwood Bar & Grill, located at 2934 North Sheffield Avenue, Chicago, Illinois 60657. Shef at Oak, Inc. employs, and controls the payment of wages to, Servers who serve food

FILED DATE: 7/19/2018 1:42 PM   2018CH09060

and drinks to Kirkwood Bar & Grill's customers. As such, Shef at Oak, Inc. is an "employer" of the Servers at Kirkwood Bar & Grill as that term is defined by 29 U.S.C. § 203(d), 820 ILCS 105/3(c), 820 ILCS 115/2, and 26 U.S.C. § 3401(d), and there is an "employment" relationship between Shef at Oak, Inc and those Servers as defined by 26 U.S.C. § 3121(b). Prior to being known as Kirkwood Bar & Grill, this bar and restaurant was known as Brownstone Tavern & Grill (Sheffield and Oakdale).

17.     Defendant River North Tap, Inc. is an Illinois corporation with its principal place of business located at 1040 West Randolph Street, Chicago, Illinois 60607. River North Tap, Inc. does business as Sidebar Grille, located at 221 North LaSalle Street, Chicago, Illinois 60601. River North Tap, Inc. employs, and controls the payment of wages to, Servers who serve food and drinks to Sidebar Grille's customers. As such, River North Tap, Inc. is an "employer" of the Servers at Sidebar Grille as that term is defined by 29 U.S.C. § 203(d), 820 ILCS 105/3(c), 820 ILCS 115/2, and 26 U.S.C. § 3401(d), and there is an "employment" relationship between River North Tap, Inc. and those Servers as defined by 26 U.S.C. § 3121(b).

18.     Defendant Rocco's, LLC is an Illinois limited liability company with its principal place of business located at 1040 West Randolph Street, Chicago, Illinois 60607. Rocco's, LLC does business as Ranalli's, located at 1925 North Lincoln Avenue, Chicago, Illinois, 60614. Rocco's, LLC employs, and controls the payment of wages to, Servers who serve food and drinks to Ranalli's's customers. As such, Rocco's, LLC is an "employer" of the Servers at Ranalli's as that term is defined by 29 U.S.C. § 203(d), 820 ILCS 105/3(c), 820 ILCS 115/2, and 26 U.S.C. § 3401(d), and there is an "employment" relationship between Rocco's, LLC and those Servers as defined by 26 U.S.C. § 3121(b).

FILED DATE: 7/19/2018 1:42 PM   2018CH09060

19.     Defendant Clark Street Restaurant Partners, LLC is an Illinois limited liability company with its principal place of business located at 1040 West Randolph Street, Chicago, Illinois 60607.  Clark Street Restaurant Partners, LLC does business as Gaslight, located at 2450 North Clark Street, Chicago, Illinois 60614. Clark Street Restaurant Partners, LLC employs, and controls the payment of wages to, Servers who serve food and drinks to Gaslight's customers. As such, Clark Street Restaurant Partners, LLC is an "employer" of the Servers at Gaslight as that term is defined by 29 U.S.C. § 203(d), 820 ILCS 105/3(c), 820 ILCS 115/2, and 26 U.S.C. § 3401(d), and there is an "employment" relationship between Clark Street Restaurant Partners, LLC and those Servers as defined by 26 U.S.C. § 3121(b).

20.     Until approximately June 13, 2018, 2450 N. Clark, Inc. was an Illinois corporation with its principal place of business located at 1040 West Randolph Street, Chicago, Illinois 60607.  2450 N. Clark, Inc. did business as Gaslight, located at 2450 North Clark Street, Chicago, Illinois 60614.  2450 N. Clark, Inc. employed, and controlled the payment of wages to, Servers who served food and drinks to Gaslight's customers.  As such, 2450 N. Clark, Inc. was an "employer" of the Servers at Gaslight as that term is defined by 29 U.S.C. § 203(d), 820 ILCS 105/3(c), 820 ILCS 115/2, and 26 U.S.C. § 3401(d), and there is an "employment" relationship between 2450 N. Clark, Inc. and those Servers as defined by 26 U.S.C. § 3121(b).  On or about June 13, 2018, 2450 N. Clark, Inc. was merged into, and consolidated with, Defendant Clark Street Restaurant Partners, LLC.  On information and belief, this merger and consolidation was cosmetic only, did not affect Gaslight's operations, and transferred any and all ongoing liabilities from 2450 N. Clark, Inc. to Clark Street Restaurant Partners, LLC.

21.     Defendant Asclose, Inc. is an Illinois corporation with its principal place of business located at 1259 West Foster Avenue, #1, Chicago, Illinois 60640.  Until approximately

June 2018, Asclose, Inc. did business as Schoolyard Tavern & Grill, located at 3258 North Southport Avenue, Chicago, Illinois 60657. However, in approximately June 2018, Asclose, Inc. was sold to a new owner (or owners).[1] On information and belief, that sale did not affect any of Asclose, Inc.'s ongoing liabilities. Prior to that sale, Asclose, Inc.'s principal place of business was located at 1040 West Randolph Street, Chicago, Illinois 60607. Until approximately June 2018, Asclose, Inc. employed, and controlled the payment of wages to, Servers who served food and drinks to Schoolyard Tavern & Grill's customers. As such, Asclose, Inc. was an "employer" of the Servers at Schoolyard Tavern & Grill as that term is defined by 29 U.S.C. § 203(d), 820 ILCS 105/3(c), 820 ILCS 115/2, and 26 U.S.C. § 3401(d), and there was an "employment" relationship between Asclose, Inc. and those Servers as defined by 26 U.S.C. § 3121(b).

22.     Defendant The Chase Tavern, Inc. is an Illinois corporation with its principal place of business located at 1040 West Randolph Street, Chicago, Illinois 60607. From approximately November 2013 through June 2015, The Chase Tavern, Inc. did business as Trellis Wine Bar, located at 2426 North Racine Avenue, Chicago, Illinois 60614. During that time, The Chase Tavern, Inc. employed, and controlled the payment of wages to, Servers who served food and drinks to Trellis Wine Bar's customers. As such, The Chase Tavern, Inc. was an "employer" of the Servers at Trellis Wine Bar as that term is defined by 29 U.S.C. § 203(d), 820 ILCS 105/3(c), 820 ILCS 115/2, and 26 U.S.C. § 3401(d), and there was an "employment" relationship between The Chase Tavern, Inc. and those Servers as defined by 26 U.S.C. § 3121(b).

23.     Defendant Saloon Holdings, LLC is an Illinois limited liability company with its principal place of business located at 1040 West Randolph Street, Chicago, Illinois 60607. Until approximately 2017, Saloon Holdings, LLC did business as The Crossing Tavern, located at

---

[1] http://www.chicagotribune.com/business/ct-biz-schoolyard-tavern-links-four-corners-20180611-story.html

FILED DATE: 7/19/2018 1:42 PM   2018CH09060

FILED DATE: 7/19/2018 1:42 PM   2018CH09060

2548 North Southport Avenue, Chicago, Illinois 60614. During that time, Saloon Holdings, LLC employed, and controlled the payment of wages to, Servers who served food and drinks to The Crossing Tavern's customers. As such, Saloon Holdings, LLC was an "employer" of the Servers at The Crossing Tavern as that term is defined by 29 U.S.C. § 203(d), 820 ILCS 105/3(c), 820 ILCS 115/2, and 26 U.S.C. § 3401(d), and there was an "employment" relationship between Saloon Holdings, LLC and those Servers as defined by 26 U.S.C. § 3121(b).

24.     Defendant Saloon Holdings Manager, LLC is an Illinois limited liability company with its principal place of business located at 1040 West Randolph Street, Chicago, Illinois 60607. Saloon Holdings Manager, LLC is the manager of Defendant Saloon Holdings, LLC. Through Saloon Holdings, LLC, Saloon Holdings Manager, LLC employs, and controls the payment of wages to, Servers who serve food and drinks to The Crossing Tavern's customers. As such, Saloon Holdings Manager, LLC is an "employer" of the Servers at The Crossing Tavern as that term is defined by 29 U.S.C. § 203(d), 820 ILCS 105/3(c), 820 ILCS 115/2, and 26 U.S.C. § 3401(d), and there is an "employment" relationship between Saloon Holdings Manager, LLC and those Servers as defined by 26 U.S.C. § 3121(b).

25.     Defendant Hardtales, Inc. is an Illinois corporation with its principal place of business located at 4711 W. Golf Road, Suite 1125, Skokie, Illinois 60076. Until approximately 2016, an unknown entity did business as Brownstone Tavern & Grill (Lincoln and Irving Park), located at 3937 North Lincoln Avenue, Chicago, Illinois 60613. However, in approximately 2016, Brownstone Tavern & Grill (Lincoln and Irving Park) was sold to Hardtales, Inc. On information and belief, that sale did not affect the Brownstone Tavern & Grill (Lincoln and Irving Park)'s operations, and any and all ongoing liabilities of the unknown entity as pertaining to the Brownstone Tavern & Grill (Lincoln and Irving Park) were transferred to Hardtales, Inc.

FILED DATE: 7/19/2018 1:42 PM   2018CH09060

Prior to that sale, that unknown entity employed, and controlled the payment of wages to, Servers who served food and drinks to Brownstone Tavern & Grill (Lincoln and Irving Park)'s customers. As such, that unknown entity was an "employer" of the Servers at Brownstone Tavern & Grill (Lincoln and Irving Park) as that term is defined by 29 U.S.C. § 203(d), 820 ILCS 105/3(c), 820 ILCS 115/2, and 26 U.S.C. § 3401(d), and there was an "employment" relationship between that unknown entity and those Servers as defined by 26 U.S.C. § 3121(b).

26. Each of the foregoing bars and restaurants, and the entities (and parent entities) that own and manage them, are part of a collection of bars and restaurants located in Chicago, Illinois operating under the common "Four Corners" enterprise.[2] As such, Defendant Four Corners is a voluntary unincorporated association of entities operating the foregoing bars and restaurants located in Chicago, Illinois. Like the constituent entities within the Four Corners enterprise, Defendant Four Corners employs, and controls the payment of wages to, Servers who serve food and drinks to customers at the bars and restaurants within the Four Corners enterprise. As such, Defendant Four Corners was, and is, an "employer" of the Servers at the bars and restaurants within the Four Corners enterprise as that term is defined by 29 U.S.C. § 203(d), 820 ILCS 105/3(c), 820 ILCS 115/2, and 26 U.S.C. § 3401(d), and there was, and is, an "employment" relationship between Defendant Four Corners and those Servers as defined by 26 U.S.C. § 3121(b).

27. In addition to the foregoing bars and restaurants, and the entities (and parent entities) that own and manage them, several other entities operate within the Four Corners enterprise.

---

[2] *See* _www.4cbars.com_ ("Four Corners is one of Chicago's leading hospitality groups that owns and operates … our current portfolio of 15 venues in Chicago.")

12

FILED DATE: 7/19/2018 1:42 PM    2018CH09060

28.    Defendant Four Corners Tavern Fund I, LLC is a Delaware limited liability company with its principle place of business at 1040 West Randolph Street, Chicago, Illinois 60607.  Defendant Four Corners Tavern Fund Management, LLC is the manager of Four Corners Tavern Fund I, LLC, and Four Corners Tavern Fund I, LLC is a part of the Four Corners enterprise.  Through its participation in the Four Corners enterprise, Four Corners Tavern Fund I, LLC employs, and controls the payment of wages to, Servers who serve food and drinks to customers at the bars and restaurants within the Four Corners enterprise.  As such, Four Corners Tavern Fund I, LLC is an "employer" of the Servers at the bars and restaurants within the Four Corners enterprise as that term is defined by 29 U.S.C. § 203(d), 820 ILCS 105/3(c), 820 ILCS 115/2, and 26 U.S.C. § 3401(d), and there is an "employment" relationship between Four Corners Tavern Fund I, LLC and those Servers as defined by 26 U.S.C. § 3121(b).

29.    Defendant Four Corners Tavern Group Fund Investor, LLC is a Delaware limited liability company with its principle place of business at 1040 West Randolph Street, Chicago, Illinois 60607.  Four Corners Tavern Group Fund Investor, LLC is a part of the Four Corners enterprise. Through its participation in the Four Corners enterprise, Four Corners Tavern Group Fund Investor, LLC employs, and controls the payment of wages to, Servers who serve food and drinks to customers at the bars and restaurants within the Four Corners enterprise.  As such, Four Corners Tavern Group Fund Investor, LLC is an "employer" of the Servers at the bars and restaurants within the Four Corners enterprise as that term is defined by 29 U.S.C. § 203(d), 820 ILCS 105/3(c), 820 ILCS 115/2, and 26 U.S.C. § 3401(d), and there is an "employment" relationship between Four Corners Tavern Group Fund Investor, LLC and those Servers as defined by 26 U.S.C. § 3121(b).

30.     Defendant Four Corners Tavern Partners, LLC is a Delaware limited liability company with its principle place of business at 1040 West Randolph Street, Chicago, Illinois 60607.  Four Corners Tavern Partners, LLC is a part of the Four Corners enterprise.  Through its participation in the Four Corners enterprise, Four Corners Tavern Partners, LLC employs, and controls the payment of wages to, Servers who serve food and drinks to customers at the bars and restaurants within the Four Corners enterprise.  As such, Four Corners Tavern Partners, LLC is an "employer" of the Servers at the bars and restaurants within the Four Corners enterprise as that term is defined by 29 U.S.C. § 203(d), 820 ILCS 105/3(c), 820 ILCS 115/2, and 26 U.S.C. § 3401(d), and there is an "employment" relationship between Four Corners Tavern Partners, LLC and those Servers as defined by 26 U.S.C. § 3121(b).

31.     Defendant Four Corners Tavern Group Inc. is an Illinois corporation with its principle place of business at 1040 West Randolph Street, Chicago, Illinois 60607.  Four Corners Tavern Group Inc. is the operating company for Four Corners Tavern Fund I, LLC, and is a part of the Four Corners enterprise.  Through its participation in the Four Corners enterprise, Four Corners Tavern Group Inc. employs, and controls the payment of wages to, Servers who serve food and drinks to customers at the bars and restaurants within the Four Corners enterprise.  As such, Four Corners Tavern Group Inc. is an "employer" of the Servers at the bars and restaurants within the Four Corners enterprise as that term is defined by 29 U.S.C. § 203(d), 820 ILCS 105/3(c), 820 ILCS 115/2, and 26 U.S.C. § 3401(d), and there is an "employment" relationship between Four Corners Tavern Group Inc. and those Servers as defined by 26 U.S.C. § 3121(b).

32.     Four Corners Holdings, LLC is an Illinois limited liability company with its principle place of business at 1040 West Randolph Street, Chicago, Illinois 60607.  Four Corners Holdings, LLC is a part of the Four Corners enterprise.  Through its participation in the Four

14

FILED DATE: 7/19/2018 1:42 PM   2018CH09060

FILED DATE: 7/19/2018 1:42 PM   2018CH09060

Corners enterprise, Four Corners Holdings, LLC employs, and controls the payment of wages to, Servers who serve food and drinks to customers at the bars and restaurants within the Four Corners enterprise. As such, Four Corners Holdings, LLC is an "employer" of the Servers at the bars and restaurants within the Four Corners enterprise as that term is defined by 29 U.S.C. § 203(d), 820 ILCS 105/3(c), 820 ILCS 115/2, and 26 U.S.C. § 3401(d), and there is an "employment" relationship between Four Corners Holdings, LLC and those Servers as defined by 26 U.S.C. § 3121(b).

33. Four Corners Capital Advisors, LLC is a Delaware limited liability company with its principle place of business at 1040 West Randolph Street, Chicago, Illinois 60607. Four Corners Capital Advisors, LLC is a part of the Four Corners enterprise. Through its participation in the Four Corners enterprise, Four Corners Capital Advisors, LLC employs, and controls the payment of wages to, Servers who serve food and drinks to customers at the bars and restaurants within the Four Corners enterprise. As such, Four Corners Capital Advisors, LLC is an "employer" of the Servers at the bars and restaurants within the Four Corners enterprise as that term is defined by 29 U.S.C. § 203(d), 820 ILCS 105/3(c), 820 ILCS 115/2, and 26 U.S.C. § 3401(d), and there is an "employment" relationship between Four Corners Capital Advisors, LLC and those Servers as defined by 26 U.S.C. § 3121(b).

34. Four Corners Shuttle, LLC is an Illinois limited liability company with its principle place of business at 3258 North Southport Avenue, Chicago, Illinois 60657. Four Corners Shuttle, LLC is a part of the Four Corners enterprise. Through its participation in the Four Corners enterprise, Four Corners Shuttle, LLC employs, and controls the payment of wages to, Servers who serve food and drinks to customers at the bars and restaurants within the Four Corners enterprise. As such, Four Corners Shuttle, LLC is an "employer" of the Servers at the

15

FILED DATE: 7/19/2018 1:42 PM   2018CH09060

bars and restaurants within the Four Corners enterprise as that term is defined by 29 U.S.C. § 203(d), 820 ILCS 105/3(c), 820 ILCS 115/2, and 26 U.S.C. § 3401(d), and there is an "employment" relationship between Four Corners Shuttle, LLC and those Servers as defined by 26 U.S.C. § 3121(b).

35.     4C Cheval LLC is a Delaware limited liability company with its principle place of business at 1040 West Randolph Street, Chicago, Illinois 60607.  4C Cheval LLC is a part of the Four Corners enterprise.  Through its participation in the Four Corners enterprise, 4C Cheval LLC employs, and controls the payment of wages to, Servers who serve food and drinks to customers at the bars and restaurants within the Four Corners enterprise.  As such, 4C Cheval LLC is an "employer" of the Servers at the bars and restaurants within the Four Corners enterprise as that term is defined by 29 U.S.C. § 203(d), 820 ILCS 105/3(c), 820 ILCS 115/2, and 26 U.S.C. § 3401(d), and there is an "employment" relationship between 4C Cheval LLC and those Servers as defined by 26 U.S.C. § 3121(b).

36.     1001 W. Lake, LLC is a Delaware limited liability company with its principle place of business at 1040 West Randolph Street, Chicago, Illinois 60607.  Defendant Four Corners Tavern Fund I, LLC is the manager of 1001 W. Lake, LLC, and 1001 W. Lake, LLC is a part of the Four Corners enterprise.  Through its participation in the Four Corners enterprise, 1001 W. Lake, LLC employs, and controls the payment of wages to, Servers who serve food and drinks to customers at the bars and restaurants within the Four Corners enterprise.  As such, 1001 W. Lake, LLC is an "employer" of the Servers at the bars and restaurants within the Four Corners enterprise as that term is defined by 29 U.S.C. § 203(d), 820 ILCS 105/3(c), 820 ILCS 115/2, and 26 U.S.C. § 3401(d), and there is an "employment" relationship between 1001 W. Lake, LLC and those Servers as defined by 26 U.S.C. § 3121(b).

FILED DATE: 7/19/2018 1:42 PM    2018CH09060

37.     Matthew Menna is a real person, and a manager of Defendants 4C Kinzie Investor LLC, 4C 1001 W. Lake Opco, LLC, Four Corners Tavern Fund Management, LLC, Wells Holdings Manager, LLC, West Loop Tap, L.L.C., Rocco's, LLC, Clark Street Restaurant Partners, LLC, Four Corners Tavern Group Fund Investor, LLC, Four Corners Tavern Partners, LLC, Four Corners Holdings, LLC, Four Corners Capital Advisors, LLC, Four Corners Shuttle, LLC, Saloon Holdings Manager, LLC, and 4C Cheval LLC.  Matthew Menna is also a partner in Defendant Talbott Associates, L.P., the President of Defendants Keystone Holdings Corp., 2450 N. Clark, Inc., The Chase Tavern, Inc., and Four Corners Tavern Group Inc., and the Secretary of Defendant River North Tap, Inc.  Until its sale in approximately June 2018, Matthew Menna was also the President of Defendant Asclose, Inc.  On information and belief, Matthew Menna is also a manager of Defendants 4C 1500 N. Wells Opco, LLC and Cheval Porter Manager, LLC, and is, or was, a manger, officer, or member of the unknown entity that did business as Brownstone Tavern & Grill (Lincoln and Irving Park), as well as the voluntary unincorporated association known as Four Corners.

38.     Andrew Gloor is a real person, and a manager of Defendants 4C Kinzie Investor LLC, 4C 1001 W. Lake Opco, LLC, Four Corners Tavern Fund Management, LLC, Wells Holdings Manager, LLC, West Loop Tap, L.L.C., Rocco's, LLC, Clark Street Restaurant Partners, LLC, Four Corners Tavern Group Fund Investor, LLC, Four Corners Tavern Partners, LLC, Four Corners Holdings, LLC, Four Corners Capital Advisors, LLC, Four Corners Shuttle, LLC, Saloon Holdings Manager, LLC, and 4C Cheval LLC.  Andrew Gloor is also a partner in Defendant Talbott Associates, L.P., the President of Defendants Shef at Oak, Inc. and River North Tap, Inc., and the Secretary of Defendants Keystone Holdings Corp., Shef at Oak, Inc., The Chase Tavern, Inc., and Four Corners Tavern Group Inc.  Until its sale in approximately

17

FILED DATE: 7/19/2018 1:42 PM    2018CH09060

June 2018, Andrew Gloor was also the Secretary of Defendant Asclose, Inc. On information and belief, Andrew Gloor is also a manager of Defendants 4C 1500 N. Wells Opco, LLC and Cheval Porter Manager, LLC, and is, or was, a manger, officer, or member of the unknown entity that did business as Brownstone Tavern & Grill (Lincoln and Irving Park).

39.     As managers and/or officers of the business entities which comprise the Four Corners enterprise, Matthew Menna and Andrew Gloor exercise significant control, oversight, and authority relative to the entities within the Four Corners enterprise, and the Four Corners enterprise itself. On information and belief, at each of the bars and restaurants within the Four Corners enterprise, Matthew Menna and Andrew Gloor, on behalf of the Four Corners enterprise, and the constituent entities thereof: (1) have the power to hire and fire Servers; (2) supervise and control the hours of operation and the conditions of employment; (3) create, establish, maintain, and enforce policies related to employee compensation, accounting, and recordkeeping; and (4) are responsible for maintaining records relative to employee compensation, revenue, and accounting. As such, Matthew Menna and Andrew Gloor are each an "employer" of the Servers at the bars and restaurants within the Four Corners enterprise as that term is defined by 29 U.S.C. § 203(d), 820 ILCS 105/3(c), 820 ILCS 115/2, and 26 U.S.C. § 3401(d), and there is an "employment" relationship between Matthew Menna and Andrew Gloor, and those Servers, as defined by 26 U.S.C. § 3121(b).

40.     Based on the foregoing, all Defendants are part of the Four Corners business "enterprise" as that term is defined by 29 U.S.C. § 203(r)(1), and are jointly and severally liable for the liabilities of the Four Corners enterprise.

41. Based upon information and belief, the Four Corners business enterprise has many employees who are engaged in commerce, and many employees who regularly and recurrently handle goods that have travelled in interstate commerce.

42. Based upon information and belief, the Four Corners business enterprise has an annual gross volume of business done in excess of $500,000.

43. Based on the foregoing, the Four Corners business enterprise is engaged in commerce within the meaning of 29 U.S.C. § 203(s)(1)(A).

## THE PLAINTIFF

44. Plaintiff Erik Luna is a resident and citizen of Cook County, Illinois, and worked for the Four Corners business enterprise as a Server from approximately April 2011 until June 2018. Throughout that period, Plaintiff was an "employee" as defined by 29 U.S.C. § 203(e)(1), 820 ILCS 105/3(d), 820 ILCS 115/2, 26 U.S.C. § 3121(d), and 26 U.S.C. § 3401(c).

## JURISDICTION AND VENUE

45. Jurisdiction over Defendants is proper pursuant to 735 ILCS 5/2-209(a)(1) (transaction of any business within this State), section 2-209(a)(7) (the making or performance of any contract or promise substantially connected with this State), section 2-209(b)(4) (natural person or corporation doing business within this State), and section 2-209(c) (any other basis now or hereafter permitted by the Illinois Constitution and the Constitution of the United States).

46. Venue is proper in this County pursuant to 735 ILCS 5/2-101, because this is the County in which the transaction, or some part thereof occurred, and Defendants are persons and corporations doing business in this County. 735 ILCS 5/2-102(a).

FILED DATE: 7/19/2018 1:42 PM    2018CH09060

FILED DATE: 7/19/2018 1:42 PM  2018CH09060

## **FACTUAL ALLEGATIONS**

47.     Defendants operate a collection of bars and restaurants located in Chicago, Illinois operating under the common Four Corners enterprise.[3]

48.     At each bar and restaurant within the Four Corners group, Defendants employ Servers who serve food and drinks to customers.  Defendants' Servers are compensated at an hourly rate of pay, and through tips bestowed upon them by Defendants' customers.

49.     At the end of each shift, before they leave work, Defendants' Servers calculate what they believe to be the accurate total amount of tips that were bestowed upon them by Defendants' customers, and accurately log and declare that total calculated amount of tips in Defendants' point-of-sale ("POS") system.

50.     Servers are given cash in an amount equal to the total amount of tips they declared in Defendants' POS system, and are allowed to keep that money.[4]

51.     Servers do not receive any additional payments in connection with the tips that were bestowed upon them by Defendants' customers other than the Take Home Cash they receive.

52.     Defendants' Servers' hourly compensation—*i.e.*, compensation that does not derive from tips—is to be paid once every two weeks.  However, Defendants usually retain the entirety of Servers' hourly compensation (and only that amount) for tax withholding purposes, and therefore, Servers usually do not receive any additional compensation over and above their Take Home Cash at the end of each pay period.

---

[3] *See www.4cbars.com* ("Four Corners is one of Chicago's leading hospitality groups that owns and operates … our current portfolio of 15 venues in Chicago.")

[4] For clarity, the cash that Servers are given and allowed to keep in connection with tips bestowed upon them by Defendants' customers shall be referred to as "Take Home Cash."

53. On the same biweekly basis, Servers receive paystubs ("Paystubs") that are supposed to reflect, *inter alia*, the number of hours Servers worked during the previous pay period, the amount of hourly wage compensation they earned during the previous pay period, and the amount of taxes withheld during the previous pay period. The Paystubs also state Servers' "Cash Tips" during a given pay period.

54. In principle, the value of "Cash Tips" reflected on Servers' Paystubs should uniformly reflect the total amount of tips that were bestowed upon Servers by Defendants' customers, the total amount of tips that Servers declared in Defendants' POS system, and Servers' Take Home Cash, as these values should be coextensive.

55. However, in actuality, the amount of "Cash Tips" reflected on Servers' Paystubs is greater than the amount of Take Home Cash that Servers were given (and allowed to keep) and the total amount of tips that they declared in Defendants' POS system.

56. At the end of each calendar year, Defendants generate Form W-2 wage and tax statements ("W-2s") for their Servers using the information on Servers' Paystubs. Accordingly, Servers' annual income, as set forth on their W-2s, is based upon the amount of "Cash Tips" listed on Servers' Paystubs during the previous calendar year.

**FACTS RELEVANT TO PLAINTIFF**

57. From approximately April 2011 until June 2018, Plaintiff was a bartender at a Four Corners bar known as "Benchmark Bar and Grill" ("Benchmark").

58. When he worked at Benchmark, Plaintiff was compensated at an hourly rate of pay, and through tips bestowed upon him by Defendants' customers.

59. At the end of each shift, before he left Benchmark, Plaintiff would calculate what he believed to be the accurate total amount of tips that were bestowed upon him by Defendants'

21

customers, and would accurately log and declare that total calculated amount of tips in Defendants' POS system.

60.     Plaintiff was given Take Home Cash in an amount equal to the total amount of tips he declared in Defendants' POS system, and was allowed to keep that Take Home Cash.

61.     Plaintiff did not receive any additional payments in connection with the tips that were bestowed upon him by Defendants' customers other than the Take Home Cash he received.

62.     Plaintiff usually would not receive a paycheck at the end of each pay period because the entirety of his hourly compensation (and only that amount) was usually withheld for tax purposes.

63.     Plaintiff's Paystubs routinely stated that Plaintiff's "Cash Tips" were greater than the amount of Take Home Cash that he was given (and allowed to keep) and the total amount of tips he declared in Defendants' POS system.

64.     The amount of "Cash Tips" on Plaintiff's Paystubs was used to calculate Plaintiff's annual income on his W-2s.

65.     For example, during the pay period beginning on March 22, 2017 and ending on April 4, 2017, Plaintiff worked five (5) separate shifts as a bartender at Benchmark.   During that pay period, Plaintiff believed that the accurate total amount of tips bestowed upon him by Defendants' customers was $2,437, and Plaintiff logged and declared that amount in Defendants' POS system.  *See*, records reflecting the value of the tips that Plaintiff declared in Defendants' POS system, attached hereto as Exhibit 1.

66.     During the pay period beginning on March 22, 2017 and ending on April 4, 2017, Plaintiff received Take Home Cash in an amount equal to the total amount tips that he declared in Defendants' POS system—$2,437.   This Take Home Cash constituted the only payments

FILED DATE: 7/19/2018 1:42 PM   2018CH09060

FILED DATE: 7/19/2018 1:42 PM   2018CH09060

Plaintiff received during the pay period beginning on March 22, 2017 and ending on April 4, 2017 in connection with the tips bestowed upon him by Defendants' customers.

67.     However, Plaintiff's Paystub for that same pay period states that Plaintiff's "Cash Tips" were $2,850.  *See*, Plaintiff's Paystub for the pay period beginning on March 22, 2017 and ending on April 4, 2017, attached hereto as <u>Exhibit 2</u>.  That Paystub also indicates that the entirety of Plaintiff's hourly compensation (and no more)—$316.60—was withheld for tax purposes.[5]  *See*, <u>Exhibit 2</u>.

## THE WAGE AND HOUR CLAIMS

68.     Applicable here, the Fair Labor Standards Act ("FLSA")—codified as 29 U.S.C. §§ 201, *et seq.*—the Illinois Minimum Wage Law ("IMWL")—codified as 820 ILCS 105/1, *et seq.*—and the Chicago Minimum Wage Ordinance ("Chicago Ordinance")—codified as Chi. Mun. Code §§ 1-24-010, *et seq.*—all establish a minimum hourly rate at which employers must compensate employees (*i.e.*, a minimum wage).

69.     From July 24, 2009 through the present, the FLSA provided that employees are to be compensated at an hourly rate of at least $7.25 per hour.  29 U.S.C. § 206(a)(1)(C).  Prior to that, from July 24, 2007 through July 23, 2008, the FLSA provided that employees are to be compensated at an hourly rate of at least $5.85 per hour (29 U.S.C. § 206(a)(1)(A)), and from July 24, 2008 through July 23, 2009, the FLSA provided that employees are to be compensated at an hourly rate of at least $6.55 per hour (29 U.S.C. § 206(a)(1)(B)).

70.     Relative to "tipped employees"—as defined by 29 U.S.C. § 203(t)—the FLSA permits employers to credit the amount of tips employees receive towards employees' hourly rate

---

[5] Accordingly, Plaintiff did not receive a paycheck for the pay period beginning on March 22, 2017 and ending on April 4, 2017.

FILED DATE: 7/19/2018 1:42 PM   2018CH09060

of pay, so long as employers pay "tipped employees" a cash wage of at least $2.13 per hour.  29 U.S.C. § 203(m)(2); 29 CFR § 531.59(a).

71.     From July 1, 2010 through the present, the IMWL provided that employees are to be compensated at an hourly rate of at least $8.25 per hour.  820 ILCS 105/4(a)(1).  Prior to that: (1) from July 1, 2007 through June 30, 2008, the IMWL provided that employees are to be compensated at an hourly rate of at least $7.50 per hour; (2) from July 1, 2008 through June 30, 2009, the IMWL provided that employees are to be compensated at an hourly rate of at least $7.75 per hour; and (3) from July 1, 2009 through June 30, 2010, the IMWL provided that employees are to be compensated at an hourly rate of at least $8.00 per hour.   820 ILCS 105/4(a)(1).

72.     Relative to employees "engaged in an occupation in which gratuities have customarily and usually constituted and have been recognized as part of the" employees' compensation, the IMWL permits employers to credit the amount of tips employees receive towards employees' hourly rate of pay, so long as the amount credited does not exceed 40% of the prevailing minimum wage rate—*e.g.*, under the current minimum wage of $8.25 per hour, employers must pay tipped employees a cash wage of at least $4.95 per hour.   820 ILCS 105/4(c).

73.     The foregoing provisions of the FLSA and IMWL establish what is commonly referred to as the "tip credit" because those provisions allow employers to credit a certain amount of tips that employees receive towards the FLSA's and IMWL's applicable minimum wage.

74.     Because "whether a tip is to be given, and its amount, are matters determined solely by the customer, who has the right to determine who shall be the recipient of the gratuity,"

FILED DATE: 7/19/2018 1:42 PM   2018CH09060

it is well-established that "tips are the property of the employee."  29 CFR § 531.52.  As such, "tip credit provisions of [the FLSA and IMWL] require employers to permit employees to retain all tips received by the employee."  29 CFR § 531.59(b); *see also*, *Williams-Green v. J. Alexander's Restaurants, Inc.*, 277 F.R.D. 374, 378 (N.D. Ill. 2011) ("Tip credits are treated identically under both the [IMWL] and [FLSA].").

75.     Accordingly, "an employer may only take the tip credit under the FLSA and IMWL if each tipped employee retains all of his tips."  *E.g.*, *Starr v. Chicago Cut Steakhouse, LLC*, 75 F.Supp.3d 859, 864-65 (N.D. Ill. 2014) (citing 29 U.S.C. § 203(m)(2) and 820 ILCS 105/4(c)); *Williams-Green*, 277 F.R.D. at 378; 29 CFR § 531.52; 29 CFR § 531.59(b).

76.     Similarly, employers are not permitted to withhold tip income from employees for tax purposes.  26 U.S.C. § 3102(c)(1); 26 U.S.C. § 3402(k).  Although employees can, after receiving tips, remit a portion of those tips back to their employers for tax withholding purposes, employees are not required to do so.  26 U.S.C. § 3102(c)(2); 26 U.S.C. § 3402(k).

77.     The Chicago Ordinance—which went into effect on July 1, 2015—also establishes a minimum wage for employees.  From July 1, 2015 through June 30, 2016, the Chicago Ordinance provided that employees are to be compensated at an hourly rate of at least $10.00 per hour (Chi. Mun. Code § 1-24-020(a)), from July 1, 2016 through June 30, 2017, the Chicago Ordinance provided that employees are to be compensated at an hourly rate of at least $10.50 per hour (Chi. Mun. Code § 1-24-020(b)), and from July 1, 2017 through June 30, 2018, the Chicago Ordinance provided that employees are to be compensated at an hourly rate of at least $11.00 per hour (Chi. Mun. Code § 1-24-020(c)).  As of July 1, 2018, the Chicago Ordinance requires employees to be compensated at an hourly rate of at least $12.00 per hour. Chi. Mun. Code § 1-24-020(d).

FILED DATE: 7/19/2018 1:42 PM   2018CH09060

78.     Like the FLSA and IMWL, the Chicago Ordinance establishes a lesser minimum wage relative to employees "engaged in an occupation in which gratuities have customarily and usually constituted part of the" employees' compensation.  Chi. Mun. Code § 1-24-030(a).  From July 1, 2015 through June 30, 2016, the minimum wage for tipped employees under the Chicago Ordinance was $5.45 per hour (Chi. Mun. Code § 1-24-030(a)(1)), from July 1, 2016 through June 30, 2017, the minimum wage for tipped employees under the Chicago Ordinance was $5.95 per hour (Chi. Mun. Code § 1-24-030(a)(2)), and from July 1, 2017 through June 30, 2018, the minimum wage for tipped employees under the Chicago Ordinance was $6.10 per hour (Chi. Mun. Code § 1-24-030(a)(3)).  As of July 1, 2018, the minimum wage for tipped employees under the Chicago Ordinance is $6.25 per hour (Chi. Mun. Code § 1-24-030(a)(3)).

79.     To avail itself of the lesser minimum wage for tipped employees—*i.e.*, a tip credit under the Chicago Ordinance—an employer must permit its employees to retain all of their tips.  Chi. Mun. Code § 1-24-030(b).  Otherwise, an employer must pay tipped employees the minimum wage applicable to employees who do not customarily receive tips.  Chicago Minimum Wage and Paid Sick Leave Rules, MW 2.04.

80.     Here, at all times relevant, Plaintiff's and Servers' hourly rate of pay, taken alone, irrespective of tips, was less than the applicable minimum rates established by the FLSA (29 U.S.C. § 206(a)(1)), the IMWL (820 ILCS 105/4(a)(1)), and the section of the Chicago Ordinance pertaining to employees who do not customarily receive tips (Chi. Mun. Code § 1-24-020).

81.     Accordingly, Defendants were required to rely on a "tip credit" to satisfy the minimum wage requirements set forth by the FLSA and the IMWL, and avail themselves of the lesser minimum wage for tipped employees established by the Chicago Ordinance.

FILED DATE: 7/19/2018 1:42 PM   2018CH09060

82.     As discussed above, there is a discrepancy between the amount of "Cash Tips" stated on Plaintiff's and Servers' Paystubs—a larger number—and the amount of Take Home Cash that Plaintiff and Servers were actually given and allowed to keep—a smaller number. Accordingly, only one of these numbers—*i.e.*, the amount of "Cash Tips" stated on Plaintiff's and Servers' Paystubs *or* the Take Home Cash that Plaintiff and Servers were given—accurately reflected the amount of tips that were bestowed upon Plaintiff and Servers by Defendants' customers.

83.     The precise reason for the discrepancy between the amount of "Cash Tips" stated on Plaintiff's and Servers' Paystubs and the amount of Take Home Cash that Plaintiff and Servers were actually given and allowed to keep is unknown at this time.  However, for purposes of the "Wage and Hour Claims" set forth herein, it is assumed that the amount of "Cash Tips" stated on Plaintiff's and Servers' Paystubs was *accurate* with respect to the actual amount of tips that were bestowed upon Plaintiff and Servers by Defendants' customers.  Necessarily, this means that the amount of Take Home Cash that Plaintiff and Servers were given and allowed to keep was *inaccurate* with respect to the amount of tips that were bestowed upon Plaintiff and Servers by Defendants' customers.  If the foregoing is true, then the amount of tips that were bestowed upon Plaintiff and Servers by Defendants' customers is *greater* than the amount of Take Home Cash that Plaintiff and Servers were actually given and allowed to keep.

84.     Plaintiff and Servers were not given any additional money that would eliminate the discrepancy between the actual amount of tips that were bestowed upon them by Defendants' customers—as reflected on their Paystubs, assuming those Paystubs are accurate—and the amount of Take Home Cash that Plaintiff and Servers were given and allowed to keep.  Instead, Defendants retained those additional sums for their own benefit.

27

FILED DATE: 7/19/2018 1:42 PM   2018CH09060

85. Defendants did not retain those additional sums for tax withholding purposes, as those additional amounts were not listed on Plaintiff's and Servers' Paystubs as being withheld for tax purposes. In fact, Defendants could not withhold those additional amounts for tax purposes, as Defendants would only be permitted to do so if Plaintiff and Servers remitted those amounts back to Defendants *after* Defendants gave them to Plaintiff and Servers. 26 U.S.C. § 3102(c); 26 U.S.C. § 3402(k).

86. Because Plaintiff and Servers did not receive the entirety of the tips that were bestowed upon them by Defendants' customers in the form of Take Home Cash, and Defendants retained those additional amounts for their own benefit, Defendants cannot rely on a tip credit relative to Plaintiff's and Servers' hourly rate of pay. *E.g.*, 29 CFR § 531.52; 29 CFR § 531.59(b); *Starr*, 75 F.Supp.3d at 864-65; *Williams-Green*, 277 F.R.D. at 378.

87. Moreover, regardless of whether Defendants can rely on a tip credit relative to Plaintiff's and Servers' hourly rate of pay, Defendants were not permitted to retain any portion of the tips that were bestowed upon Plaintiff and Servers by Defendants' customers. *E.g.*, 29 U.S.C. § 203(m)(2)(B); 29 CFR § 531.52; 29 CFR § 531.54; 29 CFR § 531.59; *Starr*, 75 F.Supp.3d at 865; *see also*, 26 U.S.C. § 3102(c); 26 U.S.C. § 3402(k).

88. In addition, in accordance with the minimum wage and tip credit provisions of the FLSA, IMWL, and Chicago Ordinance, Defendants agreed to compensate Plaintiff and Servers at an hourly rate that complied with the applicable minimum wage, and to allow Plaintiff and Servers to retain all tips that were bestowed upon Plaintiff and Servers by Defendants' customers.

89. As such, the entirety of the tips that were bestowed upon Plaintiff and Servers by Defendants' customers were "wages" under the Illinois Wage Payment and Collection Act

FILED DATE: 7/19/2018 1:42 PM   2018CH09060

("IWPCA")—codified as 820 ILCS 115/1, *et seq.*—the FLSA, the IMWL, and the Chicago Ordinance. 820 ILCS 115/2; 29 U.S.C. § 203(m); 820 ILCS 105/3(b); Chi. Mun. Code § 1-24-010.

90.     Since Defendants are not permitted to avail themselves of a tip credit with respect to Plaintiff and Servers to satisfy Defendants' minimum wage obligations under the FLSA, IMWL, and Chicago Ordinance, and because *all* of the tips that were bestowed upon Plaintiff and Servers by Defendants' customers also constitute wages owed to Plaintiff and Servers, Defendants did not pay Plaintiff and Servers the full amount of all wages to which they were entitled, in violation of the FLSA, IMWL, Chicago Ordinance, and IWPCA. 29 U.S.C. § 206(a)(1); 29 U.S.C. § 203(m); 820 ILCS 105/4(a)(1); 820 ILCS 105/4(c); Chi. Mun. Code § 1-24-020; Chi. Mun. Code § 1-24-030(b); 820 ILCS 115/4.

91.     Similarly, because *all* of the tips that were bestowed upon Plaintiff and Servers by Defendants' customers are Plaintiff's and Servers' property, Defendants' failure to remit the entirety of those tips to Plaintiff and Servers constitutes conversion. *Roderick Dev. Inv. Co., Inc. v. Cmty. Bank of Edgewater*, 282 Ill.App.3d 1052, 1057 (1st Dist. 1996) ("Conversion is any unauthorized act, which deprives a man of his property permanently or for an indefinite time.") (internal quotations omitted).

92.     Accordingly, Plaintiff, individually, and on behalf of other similarly situated individuals, brings claims under the FLSA, IMWL, Chicago Ordinance, and the IWPCA, as well as for conversion (collectively, the "Wage and Hour Claims") against Defendants.

93.     With respect to Plaintiff's FLSA claims, Plaintiff seeks to represent the "Collective Group" of similarly situated employees defined below, pursuant to 29 U.S.C. § 216(b).

FILED DATE: 7/19/2018 1:42 PM   2018CH09060

94.     With respect to Plaintiff's IMWL claims, Plaintiff seeks to represent the "IMWL Class" of similarly situated individuals defined below, pursuant to 735 ILCS 5/2-801.

95.     With respect to Plaintiff's Chicago Ordinance claims, Plaintiff seeks to represent the "Chicago Ordinance Class" of similarly situated individuals defined below, pursuant to 735 ILCS 5/2-801.

96.     With respect to Plaintiff's IWPCA claims, Plaintiff seeks to represent the "IWPCA Class" of similarly situated individuals defined below, pursuant to 735 ILCS 5/2-801.

97.     With respect to Plaintiff's conversion claims, Plaintiff seeks to represent the "Conversion Class" of similarly situated individuals, pursuant to 735 ILCS 5/2-801.

## THE INCOME TAX CLAIMS

98.     In the alternative to Plaintiff's Wage and Hour Claims, Plaintiff, individually, and on behalf of other similarly situated individuals, brings claims under Section 7434 of the Internal Revenue Code ("IRC Statute")—codified as 26 U.S.C. § 7434—and the Racketeer Influenced and Corrupt Organizations Act ("RICO")—codified as 18 U.S.C. §§ 1961, *et seq.*—as well as for common law civil conspiracy, fraud, and negligent misrepresentation (collectively, the "Income Tax Claims").

99.     As discussed above, there is a discrepancy between the amount of "Cash Tips" stated on Plaintiff's and Servers' Paystubs—a larger number—and the amount of Take Home Cash that Plaintiff and Servers were actually given and allowed to keep—a smaller number. Accordingly, only one of these numbers—*i.e.*, the amount of "Cash Tips" stated on Plaintiff's and Servers' Paystubs *or* the Take Home Cash that Plaintiff and Servers were given—accurately reflected the amount of tips that were bestowed upon Plaintiff and Servers by Defendants' customers.

FILED DATE: 7/19/2018 1:42 PM   2018CH09060

100.    The precise reason for the discrepancy between the amount of "Cash Tips" stated on Plaintiff's and Servers' Paystubs and the amount of Take Home Cash that Plaintiff and Servers were actually given and allowed to keep is unknown at this time.  However, for purposes of the Income Tax Claims set forth herein, it is assumed that the amount of "Cash Tips" stated on Plaintiff's and Servers' Paystubs was *inaccurate* with respect to the actual amount of tips that were bestowed upon Plaintiff and Servers by Defendants' customers.  Necessarily, this means that the value of the Take Home Cash that Plaintiff and Servers were given and allowed to keep was *accurate* with respect to the amount of tips that were bestowed upon Plaintiff and Servers by Defendants' customers.  If the foregoing is true, then the amount Take Home Cash that Plaintiff and Servers were actually given and allowed to keep is *lesser* than the amount of "Cash Tips" stated on Plaintiff's and Servers' Paystubs.

101.    Accordingly, Plaintiff's and Servers' Paystubs overstated the amount of taxable income that Plaintiff and Servers actually received—*i.e.*, the amount of "Cash Tips" stated on Plaintiff's and Servers' Paystubs was *greater* than the amount of Take Home Cash that Plaintiff and Servers were actually given and allowed to keep.

102.    Because the amount of "Cash Tips" stated on Plaintiff's and Servers' Paystubs was used to calculate the amount of Plaintiff's and Servers' taxable income on their W-2s—instead of the amount of Take Home Cash that Plaintiff and Servers were actually given and allowed to keep—Plaintiff and Servers were required to pay income tax on income that they did not actually receive.

103.    With respect to Plaintiff's IRC Statute claims, Plaintiff seeks to represent the "Tax Fraud Class" of similarly situated individuals defined below, pursuant to 735 ILCS 5/2-801.

31

FILED DATE: 7/19/2018 1:42 PM   2018CH09060

104.    With respect to Plaintiff's RICO claims, Plaintiff seeks to represent the "RICO Class" of similarly situated individuals defined below, pursuant to 735 ILCS 5/2-801.

105.    With respect to Plaintiff's civil conspiracy claims, Plaintiff seeks to represent the "Conspiracy Class" of similarly situated individuals defined below, pursuant to 735 ILCS 5/2-801.

106.    With respect to Plaintiff's fraud claims, Plaintiff seeks to represent the "Fraud Class" of similarly situated individuals defined below, pursuant to 735 ILCS 5/2-801.

107.    With respect to Plaintiff's negligent misrepresentation claims, Plaintiff seeks to represent the "Negligent Misrepresentation Class" of similarly situated individuals defined below, pursuant to 735 ILCS 5/2-801.

## COUNT I
### Violation of the Fair Labor Standards Act
### (29 U.S.C. §§ 201, *et seq.*)
### (On Behalf of Plaintiff and the Collective Group)

108.    Plaintiff repeats and realleges the allegations in Paragraphs 1-97 with the same force and effect as though fully set forth herein.

### *Collective Action Allegations*

109.    Plaintiff brings this Count as a Collective Action on behalf of himself and the Collective Group of similarly situation employees, pursuant to 29 U.S.C. § 216(b).

110.    **Collective Group Definition:** Plaintiff pursues the requested relief on behalf of the following Collective Group:

> All individuals who (1) currently work, or have worked, for Defendants as Servers, or any other position with similar job duties, during the applicable statute of limitations period, (2) were compensated at an hourly rate of pay, irrespective of tips, that was less than $7.25 per hour, and (3) received, on or after July 19, 2015, a Paystub which stated that they were given a greater amount in "Cash Tips" than they actually received in Take Home Cash.

FILED DATE: 7/19/2018 1:42 PM   2018CH09060

111.    Plaintiff is a member of the Collective Group because he was employed by Defendants during the time period relevant to this action, was compensated at an hourly rate of pay that was less than $7.25 per hour, and received Paystubs which stated that he was given a greater amount in "Cash Tips" than he actually received in Take Home Cash.

112.    Plaintiff's FLSA Collective Action consent form is attached hereto as <u>Exhibit 3</u>.

113.    Although Plaintiff and the Collective Group members may have had different job titles and/or worked in different locations throughout the time period relevant to this action, this action may be properly maintained as a Collective Action because:

> a.    Plaintiff and Collective Group members performed substantially similar job duties as Servers;
>
> b.    Plaintiff and Collective Group members were compensated at an hourly rate of pay that was less than $7.25 per hour;
>
> c.    Plaintiff and Collective Group members calculated what they believed to be the accurate amount of tips that were bestowed upon them by Defendants' customers, and accurately logged and declared that calculated amount in Defendants' POS system;
>
> d.    Plaintiff and Collective Group members were given Take Home Cash in an amount equal to the amount of tips that they declared in Defendants' POS system;
>
> e.    Other than their Take Home Cash, Plaintiff and Collective Group members were not given any additional amounts to account for the amount of tips that were actually bestowed upon them by Defendants' customers during a given shift;
>
> f.    Plaintiff and Collective Group members were not given and allowed to keep *all* of the tips that were bestowed upon them by Defendants' customers; and
>
> g.    Defendants uniformly retained the additional amounts in tips bestowed upon Plaintiff and Collective Group members by Defendants' customers over and above what Plaintiff and Collective Group members were given in Take Home Cash.

FILED DATE: 7/19/2018 1:42 PM   2018CH09060

114.    Defendants encouraged, required, and permitted Plaintiff and Collective Group members to work without being properly compensated.

115.    Defendants knew that Plaintiff and Collective Group members performed work that required them to be paid at a rate not less than the minimum wage established by the FLSA, and that they were entitled to retain the full amount of tips that were bestowed upon Plaintiff and Collective Group members by Defendants' customers.  Nonetheless, Defendants operated under a uniform scheme to deprive Plaintiff and Collective Group members of a portion of the tips that were bestowed upon Plaintiff and Collective Group members by Defendants' customers, such that Defendants cannot claim a tip credit with respect to Plaintiff's and Collective Group members' hourly rate of pay.  Therefore, Plaintiff and Collective Group members were compensated at a rate that was less than the minimum wage established by the FLSA, and were deprived of the full amount of tips that were bestowed upon them by Defendants' customers.

116.    Defendants' conduct, as alleged herein, was willful and has caused significant damage to Plaintiff and Collective Group members, as they were compensated at a rate that was less than the minimum wage established by the FLSA and were deprived of the full amount of tips that were bestowed upon them by Defendants' customers.

117.    Defendants are liable under the FLSA for failing to properly compensate Plaintiff and Collective Group members at an hourly rate that satisfied the FLSA's minimum wage provisions, and retaining a portion of the tips that were bestowed upon Plaintiff and Collective Group members by Defendants' customers. Plaintiff requests that the Court authorize notice to the members of the Collective Group to inform them of the pendency of this action and their right to opt-in to this lawsuit—pursuant to 29 U.S.C. § 216(b)—for the purpose of seeking

unpaid compensation and liquidated damages under the FLSA, and the other relief requested herein.

118.    Plaintiff estimates that the Collective Group, including both current and former employees over the time period relevant to this action, will include hundreds of members.  This is based on the fact that Defendants operated approximately twenty (20) bars and restaurants during the time period applicable to this action, and each bar and restaurant employed about fifty (50) Servers at any given time.  The precise number of Collective Group members should be readily available from Defendants' personnel, scheduling, time, and payroll records maintained in accordance with 29 U.S.C. § 211(c).  Given the composition and size of the Collective Group, its members may be informed of the pendency of this action directly via U.S. mail, e-mail, and by posting notice in Defendants' bars and restaurants.

### *Substantive Allegations*

119.    Plaintiff's and Collective Group members' work activities were for the direct and substantial benefit of Defendants, and engaged them individually in "commerce," as defined by 29 U.S.C. § 203(b).

120.    At all times relevant, Plaintiff's and Collective Group members' hourly rate of pay, taken alone, was less than the minimum $7.25 per hour rate established by the FLSA.  29 U.S.C. § 206(a)(1)(C).

121.    The amount of "Cash Tips" stated on Plaintiff's and Collective Group members' Paystubs *accurately* reflected the amount of tips that were bestowed upon Plaintiff and Collective Group members by Defendants' customers during their respective shifts.

122.    However, the Take Home Cash that was given to Plaintiff and Collective Group members was less than the amount of tips that were bestowed upon Plaintiff and Collective

FILED DATE: 7/19/2018 1:42 PM   2018CH09060

FILED DATE: 7/19/2018 1:42 PM    2018CH09060

Group members by Defendants' customers during their respective shifts (and less than the amount of "Cash Tips" that was accurately stated on Plaintiff's and Collective Group members' Paystubs).

123.    Plaintiff and Collective Group members did not receive any additional payments in connection with the tips that were bestowed upon them by Defendants' customers other than the Take Home Cash they were given by Defendants.

124.    Plaintiff and Collective Group members were not given and allowed to keep *all* of the tips that were bestowed upon them by Defendants' customers by Defendants' customers. Instead, Defendants uniformly retained the additional amounts in tips that were bestowed upon Plaintiff and Collective Group members by Defendants' customers over and above what Plaintiff and Collective Group members were given in Take Home Cash.

125.    As such, Defendants cannot claim a tip credit with respect to Plaintiff and Collective Group members (29 U.S.C. § 203(m)(2)), and Plaintiff and Collective Group members were compensated at a rate less than the minimum wage established by the FLSA (29 U.S.C. § 206(a)(1)(C)).

126.    Moreover, Defendants unlawfully retained a portion of the tips that were bestowed upon Plaintiff and Collective Group members by Defendants' customers.  29 U.S.C. § 203(m)(2)(B).

127.    Plaintiff and Collective Group members have been harmed as a direct and proximate result of Defendants' unlawful conduct because they have been deprived of compensation at a rate not less the minimum wage established by the FLSA, as well as the full amount of tips bestowed upon them by Defendants' customers.

128.    Defendants knew of the FLSA requirements described herein.

36

FILED DATE: 7/19/2018 1:42 PM   2018CH09060

129. Defendants' violations of the FLSA requirements described herein were willful.

130. Pursuant to 29 U.S.C. § 216(b), Plaintiff and Collective Group members are entitled to: (1) compensation for all of the hours that they worked for Defendants' benefit in an amount equal to the difference between FLSA's established minimum wage and Plaintiff's and Collective Group members' hourly rate of compensation, irrespective of tip income; (2) compensation in an amount equal to the amount of tips bestowed upon Plaintiff and Collective Group members by Defendants' customers that Defendants retained; and (3) liquidated damages in an amount equal to all such unpaid compensation.

131. Plaintiff and Collective Group members are also entitled to reasonable attorneys' fees and costs, pursuant to 29 U.S.C. § 216(b).

WHEREFORE, Plaintiff, individually, and on behalf of the Collective Group, prays for an Order as follows:

A. Finding that this action satisfies the prerequisites for maintenance as a Collective Action, as set forth by 29 U.S.C. § 216(b), and certifying the Collective Group defined herein;

B. Designating Plaintiff as representative of the Collective Group and his undersigned counsel as Collective Group Counsel;

C. Entering judgment in favor of Plaintiff and the Collective Group and against Defendants;

D. Awarding Plaintiff and the Collective Group all unpaid compensation to which they are entitled;

E. Awarding Plaintiff and the Collective Group liquidated damages in an amount equal to the amount of the unpaid compensation to which they are entitled;

F. Awarding Plaintiff and the Collective Group reasonable attorneys' fees and costs; and

FILED DATE: 7/19/2018 1:42 PM   2018CH09060

G.      Granting all such further and other relief as the Court deems just and appropriate.

## COUNT II
### Violation of the Illinois Minimum Wage Law
### (820 ILCS 105/1, *et seq.*)
### (On Behalf of Plaintiff and the IMWL Class)

132.    Plaintiff repeats and realleges the allegations in Paragraphs 1-97 with the same force and effect as though fully set forth herein.

### *Class Action Allegations*

133.    Plaintiff brings this Count as a Class Action on behalf of himself and the IMWL Class of similarly situation employees, pursuant to 735 ILCS 5/2-801.

134.    **IMWL Class Definition:** Plaintiff pursues the requested relief on behalf of the following IMWL Class:

> All individuals who (1) currently work, or have worked, for Defendants as Servers, or any other position with similar job duties, (2) were compensated at an hourly rate of pay, irrespective of tips, that was less than $8.25 per hour, and (3) received, on or after July 19, 2015, a Paystub which stated that they were given a greater amount in "Cash Tips" than they actually received in Take Home Cash.

Excluded from the IMWL Class are: (1) Defendants, Defendants' agents, subsidiaries, parents, successors, predecessors, and any entity in which Defendants or their parents have a controlling interest, and those entities' current and former employees, officers, and directors; (2) the Judge to whom this case is assigned and the Judge's immediate family; (3) any person who executes and files a timely request for exclusion from the IMWL Class; (4) any persons who have had their claims in this matter finally adjudicated and/or otherwise released; and (5) the legal representatives, successors and assigns of any such excluded person. Plaintiff hereby reserves the right to amend the above class definition based on discovery and the proofs at trial.

135.    *Numerosity.* The IMWL Class is so numerous that joinder of all members is impracticable. Plaintiff estimates that the IMWL Class, including both current and former employees over the time period relevant to this action, will include hundreds of members. This is based on the fact that Defendants operated approximately twenty (20) bars and restaurants

FILED DATE: 7/19/2018 1:42 PM    2018CH09060

during the time period applicable to this action, and each bar and restaurant employed about fifty (50) Servers at any given time. The precise number of IMWL Class members should be readily available from Defendants' personnel, scheduling, time, and payroll records maintained in accordance with 29 U.S.C. § 211(c).

136. *Commonality and Predominance*. There are questions of fact or law common to the IMWL Class, which predominate over any questions affecting only individual members including, *inter alia*, the following:

a. Whether Plaintiff's and IMWL Class members' Paystubs accurately reflected the amount of tips that Defendants' customers bestowed upon Plaintiff and IMWL Class members;

b. Whether Plaintiff and IMWL Class members were given Take Home Cash to account for what they believed, and accurately reported, to be the amount of tips that Defendants' customers bestowed upon Plaintiff and IMWL Class members during a given shift;

c. Whether Plaintiff and IMWL Class members were given any additional amounts, other than their Take Home Cash, to account for the amount of tips that Defendants' customers bestowed upon Plaintiff and IMWL Class members during a given shift;

d. Whether Plaintiff and IMWL Class members were given and allowed to keep *all* of the tips that Defendants' customers bestowed upon Plaintiff and IMWL Class members;

e. Whether Defendants retained the additional amounts in tips that Defendants' customers bestowed upon Plaintiff and IMWL Class members over and above what Plaintiff and IMWL Class members were given in Take Home Cash;

f. Whether Defendants were entitled to avail themselves of a tip credit relative to the hourly rate of compensation paid to Plaintiff and IMWL Class members;

g. Whether Plaintiff and IMWL Class members were compensated at an hourly rate of pay that was less than the minimum rate of $8.25 per hour established by the IMWL;

FILED DATE: 7/19/2018 1:42 PM   2018CH09060

h.    Whether Plaintiff and the members of the IMWL Class have sustained damages and, if so, what is the proper measure of their damages; and

i.    Whether Plaintiff and the members of the IMWL Class are entitled to the relief sought, including attorney's fees.

137.    *Adequacy*.  Plaintiff will fairly and adequately protect the interests of the IMWL Class. Plaintiff has retained the undersigned class counsel, who are competent and experienced in the prosecution of complex and class action litigation.  The interests of Plaintiff are aligned with, and not antagonistic to, those of the IMWL Class.

138.    *Appropriateness*.  A class action is an appropriate method for the fair and efficient adjudication of this controversy.  The common questions of law and fact enumerated above predominate over questions affecting only individual members of the IMWL Class.  Also, the likelihood that individual members of the IMWL Class will prosecute separate actions is remote due to the extensive time and considerable expense necessary to conduct such litigation, especially in view of the relatively modest amount of monetary relief at issue for individual IMWL Class members.

### Substantive Allegations

139.    Plaintiff's and IMWL Class members' work activities were for the direct and substantial benefit of Defendants, and entitled them to wages, as defined by 820 ILCS 105/3(b).

140.    At all times relevant, Plaintiff's and IMWL Class members' hourly rate of pay, taken alone, was less than the minimum $8.25 per hour rate established by the IMWL.  820 ILCS 105/4(a)(1).

141.    The amount of "Cash Tips" stated on Plaintiff's and IMWL Class members' Paystubs *accurately* reflected the amount of tips that were bestowed upon Plaintiff and IMWL Class members by Defendants' customers during their respective shifts.

FILED DATE: 7/19/2018 1:42 PM   2018CH09060

142. However, the Take Home Cash that was given to Plaintiff and IMWL Class members was less than the amount of tips that were bestowed upon Plaintiff and IMWL Class members by Defendants' customers during their respective shifts (and less than the amount of "Cash Tips" that was accurately stated on Plaintiff's and IMWL Class members' Paystubs).

143. Plaintiff and IMWL Class members did not receive any additional payments in connection with the tips that were bestowed upon them by Defendants' customers other than the Take Home Cash they were given by Defendants.

144. Plaintiff and IMWL Class members were not given and allowed to keep *all* of the tips that were bestowed upon them by Defendants' customers by Defendants' customers. Instead, Defendants uniformly retained the additional amounts in tips that were bestowed upon Plaintiff and IMWL Class members by Defendants' customers over and above what Plaintiff and IMWL Class members were given in Take Home Cash.

145. As such, Defendants cannot claim a tip credit with respect to Plaintiff and IMWL Class members (820 ILCS 105/4(c)), and Plaintiff and IMWL Class members were compensated at a rate less than the minimum wage established by the IMWL (820 ILCS 105/4(a)(1)).

146. Moreover, Defendants unlawfully retained a portion of the tips that were bestowed upon Plaintiff and IMWL Class members.  820 ILCS 105/3(b).

147. Plaintiff and IMWL Class members have been harmed as a direct and proximate result of Defendants' unlawful conduct because they have been deprived of compensation at a rate not less the minimum wage established by the IMWL, as well as the full amount of tips bestowed upon them by Defendants' customers.

148. Defendants knew of the IMWL requirements described herein.

149. Defendants' violations of the IMWL requirements described herein were willful.

FILED DATE: 7/19/2018 1:42 PM   2018CH09060

150.     Pursuant to 820 ILCS 105/12(a), Plaintiff and IMWL Class members are entitled to: (1) compensation for all of the hours that they worked for Defendants' benefit in an amount equal to the difference between IMWL's established minimum wage and Plaintiff's and IMWL Class members' hourly rate of compensation, irrespective of tip income; (2) compensation in an amount equal to the amount of tips bestowed upon Plaintiff and IMWL Class members by Defendants' customers that Defendants retained; and (3) damages in an amount equal to 2% of the amount of all such unpaid compensation for each month following the date of payment during which such underpayments remain unpaid.

151.     Plaintiff and IMWL Class members are also entitled to reasonable attorneys' fees and costs, pursuant to 820 ILCS 105/12(a).

WHEREFORE, Plaintiff, individually, and on behalf of the IMWL Class, prays for an Order as follows:

A.     Finding that this action satisfies the prerequisites for maintenance as a Class Action, as set forth by 735 ILCS 5/2-801, and certifying the IMWL Class defined herein;

B.     Designating Plaintiff as representative of the IMWL Class and his undersigned counsel as IMWL Class Counsel;

C.     Entering judgment in favor of Plaintiff and the IMWL Class and against Defendants;

D.     Awarding Plaintiff and the IMWL Class all unpaid compensation to which they are entitled;

E.     Awarding Plaintiff and the IMWL Class damages in an amount equal to 2% of the amount of all unpaid compensation for each month following the date of payment during which such underpayments remain unpaid;

F.     Awarding Plaintiff and the IMWL Class reasonable attorneys' fees and costs; and

42

FILED DATE: 7/19/2018 1:42 PM   2018CH09060

G.     Granting all such further and other relief as the Court deems just and appropriate.

### COUNT III
**Violation of the Chicago Minimum Wage Ordinance**
**(Chi. Mun. Code §§ 1-24-010, *et seq.*)**
**(On Behalf of Plaintiff and the Chicago Ordinance Class)**

152.    Plaintiff repeats and realleges the allegations in Paragraphs 1-97 with the same force and effect as though fully set forth herein.

*Class Action Allegations*

153.    Plaintiff brings this Count as a Class Action on behalf of himself and the Chicago Ordinance Class of similarly situation employees, pursuant to 735 ILCS 5/2-801.

154.    **Chicago Ordinance Class Definition:** Plaintiff pursues the requested relief on behalf of the following Chicago Ordinance Class:

> All individuals who (1) currently work, or have worked, for Defendants as Servers, or any other position with similar job duties, (2) were compensated at an hourly rate of pay, irrespective of tips, that was less than the applicable minimum wage established by the section of the Chicago Ordinance pertaining to employees who do not customarily receive tips, and (3) received, on or after July 1, 2015, a Paystub which stated that they were given a greater amount in "Cash Tips" than they actually received in Take Home Cash.

Excluded from the Chicago Ordinance Class are: (1) Defendants, Defendants' agents, subsidiaries, parents, successors, predecessors, and any entity in which Defendants or their parents have a controlling interest, and those entities' current and former employees, officers, and directors; (2) the Judge to whom this case is assigned and the Judge's immediate family; (3) any person who executes and files a timely request for exclusion from the Chicago Ordinance Class; (4) any persons who have had their claims in this matter finally adjudicated and/or otherwise released; and (5) the legal representatives, successors and assigns of any such excluded person. Plaintiff hereby reserves the right to amend the above class definition based on discovery and the proofs at trial.

155.    *Numerosity.* The Chicago Ordinance Class is so numerous that joinder of all members is impracticable. Plaintiff estimates that the Chicago Ordinance Class, including both current and former employees over the time period relevant to this action, will include hundreds

FILED DATE: 7/19/2018 1:42 PM   2018CH09060

of members. This is based on the fact that Defendants operated approximately twenty (20) bars and restaurants during the time period applicable to this action, and each bar and restaurant employed about fifty (50) Servers at any given time. The precise number of Chicago Ordinance Class members should be readily available from Defendants' personnel, scheduling, time, and payroll records maintained in accordance with 29 U.S.C. § 211(c).

156.    *Commonality and Predominance*.  There are questions of fact or law common to the Chicago Ordinance Class, which predominate over any questions affecting only individual members including, *inter alia*, the following:

a.    Whether Plaintiff's and Chicago Ordinance Class members' Paystubs accurately reflected the amount of tips that Defendants' customers bestowed upon Plaintiff and Chicago Ordinance Class members;

b.    Whether Plaintiff and Chicago Ordinance Class members were given Take Home Cash to account for what they believed, and accurately reported, to be the amount of tips that Defendants' customers bestowed upon Plaintiff and Chicago Ordinance Class members during a given shift;

c.    Whether Plaintiff and Chicago Ordinance Class members were given any additional amounts, other than their Take Home Cash, to account for the amount of tips that Defendants' customers bestowed upon Plaintiff and Chicago Ordinance Class members during a given shift;

d.    Whether Plaintiff and Chicago Ordinance Class members were given and allowed to keep *all* of the tips that Defendants' customers bestowed upon Plaintiff and Chicago Ordinance Class members;

e.    Whether Defendants retained the additional amounts in tips that Defendants' customers bestowed upon Plaintiff and Chicago Ordinance Class members over and above what Plaintiff and Chicago Ordinance Class members were given in Take Home Cash;

f.    Whether Defendants were entitled to avail themselves of the lesser minimum wage for tipped employees under the Chicago Ordinance relative to the hourly rate of compensation paid to Plaintiff and Chicago Ordinance Class members;

FILED DATE: 7/19/2018 1:42 PM   2018CH09060

g.   Whether Plaintiff and Chicago Ordinance Class members were compensated at an hourly rate of pay that was less than the applicable minimum per hour rate established by the Chicago Ordinance;

h.   Whether Plaintiff and the members of the Chicago Ordinance Class have sustained damages and, if so, what is the proper measure of their damages; and

i.   Whether Plaintiff and the members of the Chicago Ordinance Class are entitled to the relief sought, including attorney's fees.

157.   *Adequacy*.  Plaintiff will fairly and adequately protect the interests of the Chicago Ordinance Class. Plaintiff has retained the undersigned class counsel, who are competent and experienced in the prosecution of complex and class action litigation.  The interests of Plaintiff are aligned with, and not antagonistic to, those of the Chicago Ordinance Class.

158.   *Appropriateness*.  A class action is an appropriate method for the fair and efficient adjudication of this controversy.  The common questions of law and fact enumerated above predominate over questions affecting only individual members of the Chicago Ordinance Class. Also, the likelihood that individual members of the Chicago Ordinance Class will prosecute separate actions is remote due to the extensive time and considerable expense necessary to conduct such litigation, especially in view of the relatively modest amount of monetary relief at issue for individual Chicago Ordinance Class members.

### *Substantive Allegations*

159.   Plaintiff's and Chicago Ordinance Class members' work activities were for the direct and substantial benefit of Defendants, and were performed while physically present within the geographic boundaries of the City of Chicago, Illinois.  As such, Plaintiff and Chicago Ordinance Class members are "Covered Employees" as defined by Chi. Mun. Code § 1-24-010.

FILED DATE: 7/19/2018 1:42 PM    2018CH09060

160.    At all times relevant, Plaintiff's and Chicago Ordinance Class members' hourly rate of pay, taken alone, was less than the prevailing minimum per hour rate established by the Chicago Ordinance relative to employees who do not receive tips.  Chi. Mun. Code § 1-24-020.

161.    The amount of "Cash Tips" stated on Plaintiff's and Chicago Ordinance Class members' Paystubs *accurately* reflected the amount of tips that were bestowed upon Plaintiff and Chicago Ordinance Class members by Defendants' customers during their respective shifts.

162.    However, the Take Home Cash that was given to Plaintiff and Chicago Ordinance Class members was less than the amount of tips that were bestowed upon Plaintiff and Chicago Ordinance Class members by Defendants' customers during their respective shifts (and less than the amount of "Cash Tips" that was accurately stated on Plaintiff's and Chicago Ordinance Class members' Paystubs).

163.    Plaintiff and Chicago Ordinance Class members did not receive any additional payments in connection with the tips that were bestowed upon them by Defendants' customers other than the Take Home Cash they were given by Defendants.

164.    Plaintiff and Chicago Ordinance Class members were not given and allowed to keep *all* of the tips that were bestowed upon them by Defendants' customers by Defendants' customers.  Instead, Defendants uniformly retained the additional amounts in tips that were bestowed upon Plaintiff and Chicago Ordinance Class members by Defendants' customers over and above what Plaintiff and Chicago Ordinance Class members were given in Take Home Cash.

165.    As such, Defendants cannot avail themselves of the lesser minimum wage for tipped employees under the Chicago Ordinance relative to the hourly rate of compensation paid to Plaintiff and Chicago Ordinance Class members (Chi. Mun. Code § 1-24-030), and Plaintiff

and Chicago Ordinance Class members were compensated at a rate less than the applicable minimum wage established by the Chicago Ordinance (Chi. Mun. Code § 1-24-020).

166.    Moreover, Defendants unlawfully retained a portion of the tips that Defendants' customers bestowed upon Plaintiff and Chicago Ordinance Class members. Chi. Mun. Code § 1-24-010.

167.    Plaintiff and Chicago Ordinance Class members have been harmed as a direct and proximate result of Defendants' unlawful conduct because they have been deprived of compensation at a rate not less the minimum wage established by the Chicago Ordinance, as well as the full amount of tips bestowed upon them by Defendants' customers.

168.    Defendants knew of the Chicago Ordinance requirements described herein.

169.    Defendants' violations of the Chicago Ordinance requirements described herein were willful.

170.    Pursuant to Chi. Mun. Code § 1-24-110, Plaintiff and Chicago Ordinance Class members are entitled to recover three times the amount of compensation owed for all of the hours that they worked for Defendants' benefit in an amount equal to the difference between Chicago Ordinance's established minimum wage for employees who do not receive tips and Plaintiff's and Chicago Ordinance Class members' hourly rate of compensation, irrespective of tip income, plus the amount of tips bestowed upon Plaintiff and Chicago Ordinance Class members by Defendants' customers that Defendants retained.

171.    Plaintiff and Chicago Ordinance Class members are also entitled to reasonable attorneys' fees and costs, pursuant to Chi. Mun. Code § 1-24-110.

FILED DATE: 7/19/2018 1:42 PM    2018CH09060

FILED DATE: 7/19/2018 1:42 PM   2018CH09060

WHEREFORE, Plaintiff, individually, and on behalf of the Chicago Ordinance Class, prays for an Order as follows:

A. Finding that this action satisfies the prerequisites for maintenance as a Class Action, as set forth by 735 ILCS 5/2-801, and certifying the Chicago Ordinance Class defined herein;

B. Designating Plaintiff as representative of the Chicago Ordinance Class and his undersigned counsel as Chicago Ordinance Class Counsel;

C. Entering judgment in favor of Plaintiff and the Chicago Ordinance Class and against Defendants;

D. Awarding Plaintiff and the Chicago Ordinance Class an amount equal to three times the amount of all unpaid compensation to which they are entitled;

E. Awarding Plaintiff and the Chicago Ordinance Class reasonable attorneys' fees and costs; and

F. Granting all such further and other relief as the Court deems just and appropriate.

### COUNT IV
**Violation of the Illinois Wage Payment and Collection Act**
**(820 ILCS 115/1, *et seq.*)**
**(On Behalf of Plaintiff and the IWPCA Class)**

172. Plaintiff repeats and realleges the allegations in Paragraphs 1-97 with the same force and effect as though fully set forth herein.

### *Class Action Allegations*

173. Plaintiff brings this Count as a Class Action on behalf of himself and the IWPCA Class of similarly situation employees, pursuant to 735 ILCS 5/2-801.

174. **IWPCA Class Definition:** Plaintiff pursues the requested relief on behalf of the following IWPCA Class:

All individuals who (1) currently work, or have worked, for Defendants as Servers, or any other position with similar job duties, (2) were compensated at an

FILED DATE: 7/19/2018 1:42 PM  2018CH09060

hourly rate of pay, irrespective of tips, that was less than the applicable minimum wage, and (3) received, on or after July 19, 2008, a Paystub which stated that they were given a greater amount in "Cash Tips" than they actually received in Take Home Cash.

Excluded from the IWPCA Class are: (1) Defendants, Defendants' agents, subsidiaries, parents, successors, predecessors, and any entity in which Defendants or their parents have a controlling interest, and those entities' current and former employees, officers, and directors; (2) the Judge to whom this case is assigned and the Judge's immediate family; (3) any person who executes and files a timely request for exclusion from the IWPCA Class; (4) any persons who have had their claims in this matter finally adjudicated and/or otherwise released; and (5) the legal representatives, successors and assigns of any such excluded person. Plaintiff hereby reserves the right to amend the above class definition based on discovery and the proofs at trial.

175. *Numerosity*. The IWPCA Class is so numerous that joinder of all members is impracticable. Plaintiff estimates that the IWPCA Class, including both current and former employees over the time period relevant to this action, will include hundreds of members. This is based on the fact that Defendants operated approximately twenty (20) bars and restaurants during the time period applicable to this action, and each bar and restaurant employed about fifty (50) Servers at any given time. The precise number of IWPCA Class members should be readily available from Defendants' personnel, scheduling, time, and payroll records maintained in accordance with 29 U.S.C. § 211(c).

176. *Commonality and Predominance*. There are questions of fact or law common to the IWPCA Class, which predominate over any questions affecting only individual members including, *inter alia*, the following:

    a.    Whether Plaintiff's and IWPCA Class members' Paystubs accurately reflected the amount of tips that Defendants' customers bestowed upon Plaintiff and IWPCA Class members;

    b.    Whether Plaintiff and IWPCA Class members were given Take Home Cash to account for what they believed, and accurately reported, to be the amount of tips that Defendants' customers bestowed upon Plaintiff and IWPCA Class members during a given shift;

49

FILED DATE: 7/19/2018 1:42 PM    2018CH09060

c.     Whether Plaintiff and IWPCA Class members were given any additional amounts, other than their Take Home Cash, to account for the amount of tips that Defendants' customers bestowed upon Plaintiff and IWPCA Class members during a given shift;

d.     Whether Plaintiff and IWPCA Class members were given and allowed to keep *all* of the tips that Defendants' customers bestowed upon Plaintiff and IWPCA Class members;

e.     Whether Defendants retained the additional amounts in tips that Defendants' customers bestowed upon Plaintiff and IWPCA Class members over and above what Plaintiff and IWPCA Class members were given in Take Home Cash;

f.     Whether Defendants were entitled to avail themselves of a tip credit relative to the hourly rate of compensation paid to Plaintiff and IWPCA Class members;

g.     Whether Defendants agreed to compensate Plaintiff and IWPCA Class members at an hourly rate that complied with the applicable minimum wage, and to allow Plaintiff and IWPCA Class members to retain all tips bestowed upon Plaintiff and IWPCA Class members by Defendants' customers;

h.     Whether Plaintiff and IWPCA Class members were compensated at an hourly rate of pay that was less than the hourly rate agreed upon between Plaintiff and IWPCA Class members;

i.     Whether Plaintiff and the members of the IWPCA Class have sustained damages and, if so, what is the proper measure of their damages; and

j.     Whether Plaintiff and the members of the IWPCA Class are entitled to the relief sought, including attorney's fees.

177.    *Adequacy*.  Plaintiff will fairly and adequately protect the interests of the IWPCA Class. Plaintiff has retained the undersigned class counsel, who are competent and experienced in the prosecution of complex and class action litigation.  The interests of Plaintiff are aligned with, and not antagonistic to, those of the IWPCA Class.

178.    *Appropriateness*.  A class action is an appropriate method for the fair and efficient adjudication of this controversy.  The common questions of law and fact enumerated above

FILED DATE: 7/19/2018 1:42 PM   2018CH09060

predominate over questions affecting only individual members of the IWPCA Class. Also, the likelihood that individual members of the IWPCA Class will prosecute separate actions is remote due to the extensive time and considerable expense necessary to conduct such litigation, especially in view of the relatively modest amount of monetary relief at issue for individual IWPCA Class members.

### *Substantive Allegations*

179.    Plaintiff's and IWPCA Class members' work activities were for the direct and substantial benefit of Defendants, and entitled them to wages, as defined by 820 ILCS 115/2.

180.    Defendants agreed to compensate Plaintiff and IWPCA Class members at an hourly rate that complied with the applicable minimum wage, and to allow Plaintiff and IWPCA Class members to retain all tips bestowed upon Plaintiff and IWPCA Class members by Defendants' customers.

181.    At all times relevant, Plaintiff's and IWPCA Class members' hourly rate of pay, taken alone, was less than the prevailing minimum per hour rate established by law. 29 U.S.C. § 206(a)(1)(C); 820 ILCS 105/4(a)(1); Chi. Mun. Code § 1-24-020.

182.    The amount of "Cash Tips" stated on Plaintiff's and IWPCA Class members' Paystubs *accurately* reflected the amount of tips that were bestowed upon Plaintiff and IWPCA Class members by Defendants' customers during their respective shifts.

183.    However, the Take Home Cash that was given to Plaintiff and IWPCA Class members was less than the amount of tips that were bestowed upon Plaintiff and IWPCA Class members by Defendants' customers during their respective shifts (and less than the amount of "Cash Tips" that was accurately stated on Plaintiff's and IWPCA Class members' Paystubs).

FILED DATE: 7/19/2018 1:42 PM   2018CH09060

184.    Plaintiff and IWPCA Class members did not receive any additional payments in connection with the tips that were bestowed upon them by Defendants' customers other than the Take Home Cash they were given by Defendants.

185.    Plaintiff and IWPCA Class members were not given and allowed to keep *all* of the tips that were bestowed upon them by Defendants' customers by Defendants' customers. Instead, Defendants uniformly retained the additional amounts in tips that were bestowed upon Plaintiff and IWPCA Class members by Defendants' customers over and above what Plaintiff and IWPCA Class members were given in Take Home Cash.

186.    As such, Defendants cannot claim a tip credit with respect to Plaintiff and IWPCA Class members, and Plaintiff and IWPCA Class members were compensated at a rate less than the prevailing minimum per hour rate established by law.  29 U.S.C. § 206(a)(1)(C); 820 ILCS 105/4(a)(1); Chi. Mun. Code § 1-24-020.

187.    Due to the fact that Plaintiff and IWPCA Class members were compensated at a rate less than the prevailing minimum per hour rate established by law, and Defendants unlawfully retained a portion of the tips that Defendants' customers bestowed upon Plaintiff and IWPCA Class members, Defendants failed to pay Plaintiff and IWPCA Class members the full amount of wages to which they were entitled, as required by the IWPCA.  820 ILCS 115/4.

188.    Plaintiff and IWPCA Class members have been harmed as a direct and proximate result of Defendants' unlawful conduct because they have been deprived of compensation at a rate not less the minimum wage established by the IMWL, as well as the full amount of tips bestowed upon them by Defendants' customers.

189.    Defendants knew of the IWPCA requirements described herein.

190.    Defendants' violations of the IWPCA requirements described herein were willful.

FILED DATE: 7/19/2018 1:42 PM   2018CH09060

191.    Pursuant to 820 ILCS 115/14(a), Plaintiff and IWPCA Class members are entitled to: (1) compensation for all of the hours that they worked for Defendants' benefit in an amount equal to the difference between applicable minimum wage and Plaintiff's and IWPCA Class members' hourly rate of compensation, irrespective of tip income, that was not paid within 13 days after the bi-weekly pay period in which that compensation was earned, (2) compensation in an amount equal to the amount of tips bestowed upon Plaintiff and IWPCA Class members by Defendants' customers that Defendants retained, that was not paid within 13 days after the bi-weekly pay period in which that compensation was earned; and (3) damages in an amount equal to 2% of the amount of all such unpaid compensation for each month following the date of payment during which such underpayments remain unpaid.

192.    Plaintiff and IWPCA Class members are also entitled to reasonable attorneys' fees and costs, pursuant to 820 ILCS 115/14(a).

WHEREFORE, Plaintiff, individually, and on behalf of the IWPCA Class, prays for an Order as follows:

A.    Finding that this action satisfies the prerequisites for maintenance as a Class Action, as set forth by 735 ILCS 5/2-801, and certifying the IWPCA Class defined herein;

B.    Designating Plaintiff as representative of the IWPCA Class and his undersigned counsel as IWPCA Class Counsel;

C.    Entering judgment in favor of Plaintiff and the IWPCA Class and against Defendants;

D.    Awarding Plaintiff and the IWPCA Class all unpaid compensation to which they are entitled;

E.    Awarding Plaintiff and the IWPCA Class damages in an amount equal to 2% of the amount of all unpaid compensation for each month following the date of payment during which such underpayments remain unpaid;

F.    Awarding Plaintiff and the IWPCA Class reasonable attorneys' fees and costs; and

G.    Granting all such further and other relief as the Court deems just and appropriate.

**COUNT V**
**Conversion**
**(On Behalf of Plaintiff and the Conversion Class)**

193.    Plaintiff repeats and realleges the allegations in Paragraphs 1-97 with the same force and effect as though fully set forth herein.

***Class Action Allegations***

194.    Plaintiff brings this Count as a Class Action on behalf of himself and the Conversion Class of similarly situation employees, pursuant to 735 ILCS 5/2-801.

195.    **Conversion Class Definition:** Plaintiff pursues the requested relief on behalf of the following Conversion Class:

> All individuals who (1) currently work, or have worked, for Defendants as Servers, or any other position with similar job duties, and (2) received, on or after July 19, 2013, a Paystub which stated that they were given a greater amount in "Cash Tips" than they actually received in Take Home Cash.

Excluded from the Conversion Class are: (1) Defendants, Defendants' agents, subsidiaries, parents, successors, predecessors, and any entity in which Defendants or their parents have a controlling interest, and those entities' current and former employees, officers, and directors; (2) the Judge to whom this case is assigned and the Judge's immediate family; (3) any person who executes and files a timely request for exclusion from the Conversion Class; (4) any persons who have had their claims in this matter finally adjudicated and/or otherwise released; and (5) the legal representatives, successors and assigns of any such excluded person. Plaintiff hereby reserves the right to amend the above class definition based on discovery and the proofs at trial.

196.    *Numerosity.* The Conversion Class is so numerous that joinder of all members is impracticable. Plaintiff estimates that the Conversion Class, including both current and former employees over the time period relevant to this action, will include hundreds of members. This is based on the fact that Defendants operated approximately twenty (20) bars and restaurants

FILED DATE: 7/19/2018 1:42 PM 2018CH09060

54

FILED DATE: 7/19/2018 1:42 PM   2018CH09060

during the time period applicable to this action, and each bar and restaurant employed about fifty (50) Servers at any given time. The precise number of Conversion Class members should be readily available from Defendants' personnel, scheduling, time, and payroll records maintained in accordance with 29 U.S.C. § 211(c).

197. *Commonality and Predominance*. There are questions of fact or law common to the Conversion Class, which predominate over any questions affecting only individual members including, *inter alia*, the following:

a. Whether Plaintiff's and Conversion Class members' Paystubs accurately reflected the amount of tips that Defendants' customers bestowed upon Plaintiff and Conversion Class members;

b. Whether Plaintiff and Conversion Class members were given Take Home Cash to account for what they believed, and accurately reported, to be the amount of tips that Defendants' customers bestowed upon Plaintiff and Conversion Class members during a given shift;

c. Whether Plaintiff and Conversion Class members were given any additional amounts, other than their Take Home Cash, to account for the amount of tips that Defendants' customers bestowed upon Plaintiff and Conversion Class members during a given shift;

d. Whether Plaintiff and Conversion Class members were given and allowed to keep *all* of the tips that Defendants' customers bestowed upon Plaintiff and Conversion Class members;

e. Whether Defendants retained the additional amounts in tips that Defendants' customers bestowed upon Plaintiff and Conversion Class members over and above what Plaintiff and Conversion Class members were given in Take Home Cash;

f. Whether Plaintiff and the members of the Conversion Class have sustained damages and, if so, what is the proper measure of their damages; and

g. Whether Plaintiff and the members of the Conversion Class are entitled to the relief sought, including attorney's fees.

198. *Adequacy*. Plaintiff will fairly and adequately protect the interests of the Conversion Class. Plaintiff has retained the undersigned class counsel, who are competent and

FILED DATE: 7/19/2018 1:42 PM   2018CH09060

experienced in the prosecution of complex and class action litigation. The interests of Plaintiff are aligned with, and not antagonistic to, those of the Conversion Class.

199.    *Appropriateness*.  A class action is an appropriate method for the fair and efficient adjudication of this controversy.  The common questions of law and fact enumerated above predominate over questions affecting only individual members of the Conversion Class.  Also, the likelihood that individual members of the Conversion Class will prosecute separate actions is remote due to the extensive time and considerable expense necessary to conduct such litigation, especially in view of the relatively modest amount of monetary relief at issue for individual Conversion Class members.

### *Substantive Allegations*

200.    To state a claim for conversion, "a plaintiff must allege (1) the defendant's unauthorized and wrongful assumption of control, dominion or ownership over the plaintiff's personal property, (2) the plaintiff's right in the property, (3) the plaintiff's right to immediate possession of the property, absolutely and unconditionally, and (4) the plaintiff's demand for possession of the property."  *E.g.*, *Roderick*, 282 Ill.App.3d at 1057.

201.    The full amount of tips bestowed upon Plaintiff and Conversion Class members by Defendants' customers were in recognition of services provided by Plaintiff and Conversion Class members, and are Plaintiff's and Conversion Class members' property.  29 CFR § 531.52.

202.    The tips bestowed upon Plaintiff and Conversion Class members by Defendants' customers are specific sums of money, and are not debts owed by Defendants to Plaintiff and Conversion Class members.

203.    Plaintiff and Conversion Class members entrusted the tips they received from Defendants' customers—*i.e.*, their property—to Defendants, on a temporary basis, with the

FILED DATE: 7/19/2018 1:42 PM 2018CH09060

mutual understanding that the entirety of those tips would be returned in the form of Take Home Cash after their respective shifts ended.

204.    After their respective shifts ended, Plaintiff and Conversion Class members became immediately entitled to the return of their property—*i.e.*, the entirety of the tips bestowed upon them by Defendants' customers—in the form of Take Home Cash.

205.    The amount of "Cash Tips" stated on Plaintiff's and Conversion Class members' Paystubs *accurately* reflected the amount of tips that were bestowed upon Plaintiff and Conversion Class members by Defendants' customers during their respective shifts.

206.    However, the Take Home Cash that was given to Plaintiff and Conversion Class members was less than the amount of tips that were bestowed upon Plaintiff and Conversion Class members by Defendants' customers during their respective shifts (and less than the amount of "Cash Tips" that was accurately stated on Plaintiff's and Conversion Class members' Paystubs).

207.    Plaintiff and Conversion Class members did not receive any additional payments in connection with the tips that were bestowed upon them by Defendants' customers other than the Take Home Cash they were given by Defendants.

208.    After their respective shifts ended, Plaintiff and Conversion Class members demanded that Defendants return *all* of the tips bestowed upon them by Defendants' customers— *i.e.*, their property—in the form of Take Home Cash.  However, Defendants uniformly retained the additional amounts in tips bestowed upon Plaintiff and Conversion Class members by Defendants' customers over and above what Plaintiff and Conversion Class members were given in Take Home Cash.

FILED DATE: 7/19/2018 1:42 PM   2018CH09060

209.    As such, Defendants unlawfully retained Plaintiff's and Conversion Class members' property—*i.e.*, the tips that were bestowed upon Plaintiff and Conversion Class members by Defendants' customers but which were not given to Plaintiff and Conversion Class members in the form of Take Home Cash.

210.    Defendants have continued to unlawfully exercise possession over Plaintiff's and Conversion Class members' property.  Plaintiff, individually, and on behalf of the Conversion Class, demanded that Defendants return Plaintiff's and Conversion Class members' property— *i.e.*, the tips that Defendants' customers bestowed upon Plaintiff and Conversion Class members but which were not given to Plaintiff and Conversion Class members in the form of Take Home Cash.

211.    Plaintiff and Conversion Class members have been harmed as a direct and proximate result of Defendants' unlawful conduct because they have been deprived of immediate and continued possession of their property—*i.e.*, the tips that Defendants' customers bestowed upon Plaintiff and Conversion Class members but which were not given to Plaintiff and Conversion Class members in the form of Take Home Cash.

212.    Defendants knew that they were in possession of Plaintiff's and Conversion Class members' property, Plaintiff's and Conversion Class members' immediate right to possession of their property, and Plaintiff's and Conversion Class members' demands for the return of their property.  Nevertheless, Defendants have refused to return Plaintiff's and Conversion Class members' property.

213.    Accordingly, Plaintiff, individually, and on behalf of the Conversion Class, seeks recovery of the property—*i.e.*, the tips that Defendants' customers bestowed upon Plaintiff and

FILED DATE: 7/19/2018 1:42 PM   2018CH09060

Conversion Class members but which were not given to Plaintiff and Conversion Class members in the form of Take Home Cash—that has been unlawfully converted by Defendants.

WHEREFORE, Plaintiff, individually, and on behalf of the Conversion Class, prays for an Order as follows:

A. Finding that this action satisfies the prerequisites for maintenance as a Class Action, as set forth by 735 ILCS 5/2-801, and certifying the Conversion Class defined herein;

B. Designating Plaintiff as representative of the Conversion Class and his undersigned counsel as Conversion Class Counsel;

C. Entering judgment in favor of Plaintiff and the Conversion Class and against Defendants;

D. Commanding Defendants to return Plaintiff's and Conversion Class members' property (*i.e.*, the full amount of tips that were bestowed upon Plaintiff and Conversion Class members by Defendants' customers);

E. Awarding Plaintiff and the Conversion Class reasonable attorneys' fees and costs; and

F. Granting all such further and other relief as the Court deems just and appropriate.

### COUNT VI
**Violation of Section 7434 of the Internal Revenue Code**
**(26 U.S.C. § 7434)**
**(On Behalf of Plaintiff and the Tax Fraud Class)**
**(In the Alternative to Counts I through V)**

214. Plaintiff repeats and realleges the allegations in Paragraphs 1-67 and 98-107 with the same force and effect as though fully set forth herein.

215. Plaintiff brings this Count in the alternative to Counts I through V set forth above.

### *Class Action Allegations*

216. Plaintiff brings this Count as a Class Action on behalf of himself and the Tax Fraud Class of similarly situation employees, pursuant to 735 ILCS 5/2-801.

59

FILED DATE: 7/19/2018 1:42 PM   2018CH09060

217. **Tax Fraud Class Definition:** Plaintiff pursues the requested relief on behalf of the following Tax Fraud Class:

> All individuals who (1) currently work, or have worked, for Defendants as Servers, or any other position with similar job duties, during the applicable statute of limitations period, and (2) received a W-2 from at least one Defendant which (a) stated that they received a greater amount in wage income from Defendants and tips bestowed upon them by Defendants' customers than they actually received in hourly compensation and Take Home Cash, and (b) was filed by said Defendant with the United States government on or after July 19, 2012.

Excluded from the Tax Fraud Class are: (1) Defendants, Defendants' agents, subsidiaries, parents, successors, predecessors, and any entity in which Defendants or their parents have a controlling interest, and those entities' current and former employees, officers, and directors; (2) the Judge to whom this case is assigned and the Judge's immediate family; (3) any person who executes and files a timely request for exclusion from the Tax Fraud Class; (4) any persons who have had their claims in this matter finally adjudicated and/or otherwise released; and (5) the legal representatives, successors and assigns of any such excluded person. Plaintiff hereby reserves the right to amend the above class definition based on discovery and the proofs at trial.

218. *Numerosity.* The Tax Fraud Class is so numerous that joinder of all members is impracticable. Plaintiff estimates that the Tax Fraud Class, including both current and former employees over the time period relevant to this action, will include hundreds of members. This is based on the fact that Defendants operated approximately twenty (20) bars and restaurants during the time period applicable to this action, and each bar and restaurant employed about fifty (50) Servers at any given time. The precise number of Tax Fraud Class members should be readily available from Defendants' personnel, scheduling, time, and payroll records maintained in accordance with 29 U.S.C. § 211(c).

219. *Commonality and Predominance.* There are questions of fact or law common to the Tax Fraud Class, which predominate over any questions affecting only individual members including, *inter alia*, the following:

> a.  Whether Plaintiff's and Tax Fraud Class members' Paystubs and W-2s accurately reflected the amount of Take Home Cash that Plaintiff and Tax Fraud Class members were given by Defendants in connection with the

FILED DATE: 7/19/2018 1:42 PM    2018CH09060

tips that Defendants' customers bestowed upon Plaintiff and Tax Fraud Class members;

b.    Whether Defendants engaged in fraud by overstating the amount of compensation Defendants paid to Plaintiff and Tax Fraud Class members on Plaintiff's and Tax Fraud Class members' Paystubs and W-2s;

c.    Whether Defendants willfully filed fraudulent W-2s with the United States government that overstated the amount of compensation Defendants paid to Plaintiff and Tax Fraud Class members;

d.    Whether Plaintiff and the members of the Tax Fraud Class have sustained damages and, if so, what is the proper measure of their damages; and

e.    Whether Plaintiff and the members of the Tax Fraud Class are entitled to the relief sought, including attorney's fees.

220.    *Adequacy*.  Plaintiff will fairly and adequately protect the interests of the Tax Fraud Class. Plaintiff has retained the undersigned class counsel, who are competent and experienced in the prosecution of complex and class action litigation.  The interests of Plaintiff are aligned with, and not antagonistic to, those of the Tax Fraud Class.

221.    *Appropriateness*.  A class action is an appropriate method for the fair and efficient adjudication of this controversy.  The common questions of law and fact enumerated above predominate over questions affecting only individual members of the Tax Fraud Class.  Also, the likelihood that individual members of the Tax Fraud Class will prosecute separate actions is remote due to the extensive time and considerable expense necessary to conduct such litigation, especially in view of the relatively modest amount of monetary relief at issue for individual Tax Fraud Class members.

### *Substantive Allegations*

222.    Pursuant to the IRC Statute, "if any person willfully files a fraudulent information return with respect to payments purported to be made to any other person, such other person may bring a civil action for damages against the person so filing such return."  26 U.S.C. § 7434(a).

FILED DATE: 7/19/2018 1:42 PM   2018CH09060

223.   As the employers of Plaintiff and Tax Fraud Class members, Defendants issued W-2s to Plaintiff and Tax Fraud Class members on an annual basis.

224.   The particular Defendant that issued a W-2 to Plaintiff and each of the Tax Fraud Class members depended upon which Defendant was responsible for tax reporting relative to Plaintiff and each Tax Fraud Class member.  Relative to Plaintiff, Defendant Wells Holdings, LLC d/b/a Benchmark Bar and Grill issued Plaintiff's W-2s.

225.   The W-2s issued to Plaintiff and Tax Fraud Class members by Defendants are "information returns" as defined by 26 U.S.C. § 7434(f).  26 U.S.C. § 6724(d)(1)(A); 26 CFR § 31.6051-2(a).  The W-2s issued to Plaintiff and Tax Fraud Class members by Defendants are also "payee statements," as defined by 26 U.S.C. § 6724(d)(2).

226.   For purposes of the W-2s issued by Defendants to Plaintiff and Tax Fraud Class members, the hourly compensation that Defendants paid to Plaintiff and Tax Fraud Class members, as well as the tips that Defendants' customers bestowed upon Plaintiff and Tax Fraud Class members, constituted "wages."  26 U.S.C. § 3121(a); 26 U.S.C. § 3401(a) & (f).

227.   Defendants calculated the "wages" on Plaintiff's and Tax Fraud Class members' W-2s using the information on Plaintiff's and Tax Fraud Class members' Paystubs from the applicable calendar year.   Put another way, the "wages" reflected on the W-2s that Defendants issued to Plaintiff and Tax Fraud Class members were derived by adding the amount of hourly compensation that Plaintiff and Tax Fraud Class members earned during the prior calendar year—as reflected Plaintiff's and Tax Fraud Class members' Paystubs—to the amount of "Cash Tips" stated on Plaintiff's and Tax Fraud Class members' Paystubs from the prior calendar year.

228.   However, the "Cash Tips" stated on Plaintiff's and Tax Fraud Class members' Paystubs *inaccurately* reflected the amount of Take Home Cash that Plaintiff and Tax Fraud

FILED DATE: 7/19/2018 1:42 PM   2018CH09060

Class members were given by Defendants in connection with tips bestowed upon Plaintiff and Tax Fraud Class members by Defendants' customers during their respective shifts.  In actuality, Plaintiff and Tax Fraud Class members received a *lesser* amount in Take Home Cash in connection with tips bestowed upon them by Defendants' customers than the amount of "Cash Tips" stated on their Paystubs.

229.    As such, the W-2s issued by Defendants to Plaintiff and Tax Fraud Class members *overstated* the amount of "wages" that Plaintiff and Tax Fraud Class members earned during the prior calendar year.

230.    Defendants filed the W-2s issued that they to Plaintiff and Tax Fraud Class members with the United States government, as required by 26 CFR § 31.6051-2(a).

231.    Defendants knew the information on the W-2s that they issued to Plaintiff and Tax Fraud Class members was false because Plaintiff and Tax Fraud Class members accurately declared in Defendants' POS system the amount of tips bestowed upon them by Defendants' customers—as required by 26 U.S.C. § 6053(a) and 26 CFR § 31.6053-1(a)—and Defendants had a duty to keep accurate records relative to the amount of tips declared by Plaintiff and Tax Fraud Class members in Defendants' POS system—as required by 26 CFR § 31.6001-1(a).

232.    Plaintiff and Tax Fraud Class members reasonably believed that the information in the W-2s issued by Defendants was accurate, and relied upon that information, because Defendants had a duty to file correct information returns with the United States government— pursuant to 26 U.S.C. § 6721(a)(2)(B) and 26 CFR 301.6721-1—and to furnish Plaintiff and Tax Fraud Class members with correct payee statements—pursuant to 26 U.S.C. § 6722(a)(2)(B) and 26 CFR 301.6722-1.  Plaintiff and Tax Fraud Class members also reasonably believed that the information in the W-2s and Paystubs issued by Defendants was accurate, and relied upon that

FILED DATE: 7/19/2018 1:42 PM   2018CH09060

information, because Defendants had a duty to keep accurate records relative to the amount of tips declared by Plaintiff and Tax Fraud Class members in Defendants' POS system—pursuant to 26 CFR § 31.6001-1(a). Indeed, unlike Defendants, there is no mandatory recordkeeping requirement imposed on Plaintiff and Tax Fraud Class members. 26 CFR § 31.6001-1(d). Moreover, "the fact that the [W-2s were] filed for public record amounts to…a guarantee" that the W-2s were accurate. *Lehmann v. Arnold*, 137 Ill.App.3d 412, 421 (4th Dist. 1985).

233.    For the same reasons, Defendants knew and intended that Plaintiff and Tax Fraud Class members would rely on the information in the W-2s and Paystubs issued by Defendants.

234.    Accordingly, in filing the W-2s issued by Defendants to Plaintiff and Tax Fraud Class members—which contained incorrect information as to the amount of "wages" Plaintiff and Tax Fraud Class members earned—Defendants filed fraudulent information returns with the United States government in violation of 26 U.S.C. § 7434(a).

235.    The particular Defendant that filed a fraudulent W-2 issued to Plaintiff and each of the Tax Fraud Class members depended upon which Defendant was responsible for tax reporting relative to Plaintiff and each Tax Fraud Class member. Relative to Plaintiff, Defendant Wells Holdings, LLC d/b/a Benchmark Bar and Grill filed the fraudulent W-2s.

236.    On information and belief, Defendants' filing of the fraudulent W-2s that they issued to Plaintiff and Tax Fraud Class members was part of a willful scheme to shift the burden of paying taxes to Plaintiff and Tax Fraud Class members so that Defendants could covertly retain income without paying taxes, or avoid paying the minimum hourly rate of pay under applicable minimum wage laws.

237.    For example, by overstating the amount of tip income that Defendants gave to Plaintiff and Tax Fraud Class members from Defendants' gross receipts, Defendants can

concomitantly understate the amount of net income Defendants generated after those amounts are deducted. To demonstrate, if one of Defendants' customers was charged $100 for a meal, and left an additional $20 as a tip for his/her Server, Defendants' gross income would be $120, and Defendants' net income would be $100 for that customer. However, if Defendants report that the customer's Server received a $40 tip from the customer, Defendants can report net income of $80, while still reporting gross income of $120. In this scenario, the Server would be required to pay taxes on $40 of income, even though he/she only received $20, whereas Defendants would only be required to pay taxes on $80 of net income, even though they would have actually received $100.[6]

238.  As another example, by overstating the amount of money that Defendants gave to Plaintiff and Tax Fraud Class members, Defendants can ensure that they can always avail themselves of a tip credit with respect to the compensation paid to Plaintiff and Tax Fraud Class members, and do not have to pay Plaintiff and Tax Fraud Class members for any shortfall in the hourly rate of pay. In doing so, Defendants reduce their operating costs, and can therefore retain a greater portion of their gross income for their own benefit.

239.  Although the precise mechanism by which Defendants benefitted from these practices is unknown, it can be proven through discovery after a review of Defendants' internal records and financial statements.

240.  Because the amount of "wages" stated on the W-2s issued by Defendants to Plaintiff and Tax Fraud Class members *overstated* the amount of "wages" that Plaintiff and Tax Fraud Class members actually earned during the prior calendar year, Plaintiff and Tax Fraud Class members were required to pay income tax on income that they did not actually receive.

---

[6] The fact that Four Corners is composed of over 20 different, interconnected entities would also facilitate Defendants' concealing the precise amount of net income they received in a calendar year.

FILED DATE: 7/19/2018 1:42 PM    2018CH09060

FILED DATE: 7/19/2018 1:42 PM    2018CH09060

241.     As a direct and proximate result of the foregoing, Plaintiff and Tax Fraud Class members were harmed by Defendants' conduct described herein because they were required to pay a greater amount in income tax than they otherwise should have been, had their W-2s been accurate.

242.     Pursuant to 26 U.S.C. § 7434(b), Plaintiff and Tax Fraud Class members are each entitled to the greater of: (1) statutory damages of $5,000; or (2) the sum of their actual damages, the costs of this action, and reasonable attorneys' fees and costs.

WHEREFORE, Plaintiff, individually, and on behalf of the Tax Fraud Class, prays for an Order as follows:

A.     Finding that this action satisfies the prerequisites for maintenance as a Class Action, as set forth by 735 ILCS 5/2-801, and certifying the Tax Fraud Class defined herein;

B.     Designating Plaintiff as representative of the Tax Fraud Class and his undersigned counsel as Tax Fraud Class Counsel;

C.     Entering judgment in favor of Plaintiff and the Tax Fraud Class and against Defendants;

D.     Awarding Plaintiff and the Tax Fraud Class the greater of: (1) statutory damages of $5,000; or (2) the sum of their actual damages, the costs of this action, and reasonable attorneys' fees and costs, as provided for by 26 U.S.C. § 7434(b);

E.     Awarding Plaintiff and the Tax Fraud Class reasonable attorneys' fees and costs; and

F.     Granting all such further and other relief as the Court deems just and appropriate.

FILED DATE: 7/19/2018 1:42 PM    2018CH09060

## COUNT VII
### Violation of the Racketeer Influenced and Corrupt Organizations Act
### (18 U.S.C. §§ 1961, *et seq.*)
### (On Behalf of Plaintiff and the RICO Class)
### (In the Alternative to Counts I through V)

243.    Plaintiff repeats and realleges the allegations in Paragraphs 1-67 and 98-107 with the same force and effect as though fully set forth herein.

244.    Plaintiff brings this Count in the alternative to Counts I through V set forth above.

### *Class Action Allegations*

245.    Plaintiff brings this Count as a Class Action on behalf of himself and the RICO Class of similarly situation employees, pursuant to 735 ILCS 5/2-801.

246.    **RICO Class Definition:** Plaintiff pursues the requested relief on behalf of the following RICO Class:

> All individuals who (1) currently work, or have worked, for Defendants as Servers, or any other position with similar job duties, during the applicable statute of limitations period, and (2) received a W-2 from at least one Defendant which (a) stated that they received a greater amount in wage income from Defendants and tips bestowed upon them by Defendants' customers than they actually received in hourly compensation and Take Home Cash, and (b) was filed by said Defendant with the United States government on or after July 19, 2014.

Excluded from the RICO Class are: (1) Defendants, Defendants' agents, subsidiaries, parents, successors, predecessors, and any entity in which Defendants or their parents have a controlling interest, and those entities' current and former employees, officers, and directors; (2) the Judge to whom this case is assigned and the Judge's immediate family; (3) any person who executes and files a timely request for exclusion from the RICO Class; (4) any persons who have had their claims in this matter finally adjudicated and/or otherwise released; and (5) the legal representatives, successors and assigns of any such excluded person.  Plaintiff hereby reserves the right to amend the above class definition based on discovery and the proofs at trial.

247.    *Numerosity.*  The RICO Class is so numerous that joinder of all members is impracticable.  Plaintiff estimates that the RICO Class, including both current and former employees over the time period relevant to this action, will include hundreds of members.  This is based on the fact that Defendants operated approximately twenty (20) bars and restaurants

FILED DATE: 7/19/2018 1:42 PM   2018CH09060

during the time period applicable to this action, and each bar and restaurant employed about fifty (50) Servers at any given time.  The precise number of RICO Class members should be readily available from Defendants' personnel, scheduling, time, and payroll records maintained in accordance with 29 U.S.C. § 211(c).

248.     *Commonality and Predominance*.  There are questions of fact or law common to the RICO Class, which predominate over any questions affecting only individual members including, *inter alia*, the following:

    a.    Whether Plaintiff's and RICO Class members' Paystubs and W-2s accurately reflected the amount of Take Home Cash that Plaintiff and RICO Class members were given by Defendants in connection with the tips that Defendants' customers bestowed upon Plaintiff and RICO Class members;

    b.    Whether Defendants engaged in fraud by overstating the amount of compensation Defendants paid to Plaintiff and RICO Class members on Plaintiff's and RICO Class members' Paystubs and W-2s;

    c.    Whether Defendants willfully filed fraudulent W-2s with the United States government that overstated the amount of compensation Defendants paid to Plaintiff and RICO Class members through the mail or by wire transmission;

    d.    Whether Defendants are part of an enterprise that engaged in a pattern of racketeering activity;

    e.    Whether Plaintiff and the members of the RICO Class have sustained damages and, if so, what is the proper measure of their damages; and

    f.    Whether Plaintiff and the members of the RICO Class are entitled to the relief sought, including attorney's fees.

249.     *Adequacy*.  Plaintiff will fairly and adequately protect the interests of the RICO Class. Plaintiff has retained the undersigned class counsel, who are competent and experienced in the prosecution of complex and class action litigation.  The interests of Plaintiff are aligned with, and not antagonistic to, those of the RICO Class.

FILED DATE: 7/19/2018 1:42 PM   2018CH09060

250.    *Appropriateness*.  A class action is an appropriate method for the fair and efficient adjudication of this controversy.  The common questions of law and fact enumerated above predominate over questions affecting only individual members of the RICO Class.  Also, the likelihood that individual members of the RICO Class will prosecute separate actions is remote due to the extensive time and considerable expense necessary to conduct such litigation, especially in view of the relatively modest amount of monetary relief at issue for individual RICO Class members.

### Substantive Allegations

251.    Pursuant to the RICO statute, "any person injured in his business or property by reason of a violation of [18 U.S.C. § 1962] may sue therefor…and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee…"  18 U.S.C. § 1964(c).[7]

252.    At all relevant times, 18 U.S.C. § 1962 stated, in pertinent part:

> (a) It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity…to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce…

> (b) It shall be unlawful for any person through a pattern of racketeering activity…to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

> (c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity…

---

[7] Although 18 U.S.C. § 1964(c) states that a person may file suit "in any appropriate United States district court," the United States Supreme Court has definitively held that civil RICO claims may also be brought in state court.  *Tafflin v. Levitt*, 493 U.S. 455, 467 (1990).

FILED DATE: 7/19/2018 1:42 PM   2018CH09060

(d) It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section.

253. 18 U.S.C. § 1961(5) defines "pattern of racketeering activity" as requiring "at least two acts of racketeering activity, one of which occurred after the effective date of this chapter and the last of which occurred within ten years…after the commission of a prior act of racketeering activity."

254. Relevant here, 18 U.S.C. § 1961(1) defines "racketeering activity" as "any act which is indictable under" 18 U.S.C. § 1341 (mail fraud) or 18 U.S.C. § 1343 (wire fraud). 18 U.S.C. § 1961(1)(B).

255. At all relevant times, 18 U.S.C. § 1341 made it unlawful for persons to use the United States mail to defraud persons of money or property.

256. At all relevant times, 18 U.S.C. § 1343 made it unlawful for persons to use the wires of interstate commerce to defraud persons of money or property.

257. All Defendants, except for the unincorporated Defendant Four Corners, are "persons," as defined by 18 U.S.C. § 1961(3). Each of these "persons" participated in the scheme defined herein as part of the "enterprise"—as defined by 18 U.S.C. § 1961(4)—known as Four Corners.

258. As the employers of Plaintiff and RICO Class members, Defendants issued W-2s to Plaintiff and RICO Class members on an annual basis.

259. The particular Defendant that issued a W-2 to Plaintiff and each of the RICO Class members depended upon which Defendant was responsible for tax reporting relative to Plaintiff and each RICO Class member. Relative to Plaintiff, Defendant Wells Holdings, LLC d/b/a Benchmark Bar and Grill issued Plaintiff's W-2s.

FILED DATE: 7/19/2018 1:42 PM   2018CH09060

260.    The W-2s issued to Plaintiff and RICO Class members by Defendants are "information returns" as defined by 26 U.S.C. § 7434(f).  26 U.S.C. § 6724(d)(1)(A); 26 CFR § 31.6051-2(a).  The W-2s issued to Plaintiff and RICO Class members by Defendants are also "payee statements," as defined by 26 U.S.C. § 6724(d)(2).

261.    For purposes of the W-2s issued by Defendants to Plaintiff and RICO Class members, the hourly compensation that Defendants paid to Plaintiff and RICO Class members, as well as the tips that Defendants' customers bestowed upon Plaintiff and RICO Class members, constituted "wages."  26 U.S.C. § 3121(a); 26 U.S.C. § 3401(a) & (f).

262.    Defendants calculated the "wages" on Plaintiff's and RICO Class members' W-2s using the information on Plaintiff's and RICO Class members' Paystubs from the applicable calendar year.   Put another way, the "wages" reflected on the W-2s that Defendants issued to Plaintiff and RICO Class members were derived by adding the amount of hourly compensation that Plaintiff and RICO Class members earned during the prior calendar year—as reflected Plaintiff's and RICO Class members' Paystubs—to the amount of "Cash Tips" stated on Plaintiff's and RICO Class members' Paystubs from the prior calendar year.

263.    However, the "Cash Tips" stated on Plaintiff's and RICO Class members' Paystubs *inaccurately* reflected the amount of Take Home Cash that Plaintiff and RICO Class members were given by Defendants in connection with tips bestowed upon Plaintiff and RICO Class members by Defendants' customers during their respective shifts.   In actuality, Plaintiff and RICO Class members received a *lesser* amount in Take Home Cash in connection with tips bestowed upon them by Defendants' customers than the amount of "Cash Tips" stated on their Paystubs.

FILED DATE: 7/19/2018 1:42 PM   2018CH09060

264.   As such, the W-2s issued by Defendants to Plaintiff and RICO Class members *overstated* the amount of "wages" that Plaintiff and RICO Class members earned during the prior calendar year.

265.   Defendants filed the W-2s that they issued to Plaintiff and RICO Class members with the United States government, as required by 26 CFR § 31.6051-2(a).  Defendants (1) sent the W-2s issued to Plaintiff and RICO Class members to the United States government by using the United States mail, or a private or commercial interstate carrier, and/or (2) electronically transmitted the W-2s that they issued to Plaintiff and RICO Class members to the United States government through wire transmissions in interstate commerce.

266.   Defendants knew the information on the W-2s that they issued to Plaintiff and RICO Class members was false because Plaintiff and RICO Class members accurately declared in Defendants' POS system the amount of tips bestowed upon them by Defendants' customers— as required by 26 U.S.C. § 6053(a) and 26 CFR § 31.6053-1(a)—and Defendants had a duty to keep accurate records relative to the amount of tips declared by Plaintiff and RICO Class members in Defendants' POS system—as required by 26 CFR § 31.6001-1(a).

267.   Plaintiff and RICO Class members reasonably believed that the information in the W-2s issued by Defendants was accurate, and relied upon that information, because Defendants had a duty to file correct information returns with the United States government—pursuant to 26 U.S.C. § 6721(a)(2)(B) and 26 CFR 301.6721-1—and to furnish Plaintiff and RICO Class members with correct payee statements—pursuant to 26 U.S.C. § 6722(a)(2)(B) and 26 CFR 301.6722-1.  Plaintiff and RICO Class members also reasonably believed that the information in the W-2s and Paystubs issued by Defendants was accurate, and relied upon that information, because Defendants had a duty to keep accurate records relative to the amount of tips declared by

FILED DATE: 7/19/2018 1:42 PM   2018CH09060

Plaintiff and RICO Class members in Defendants' POS system—pursuant to 26 CFR § 31.6001-1(a). Indeed, unlike Defendants, there is no mandatory recordkeeping requirement imposed on Plaintiff and RICO Class members. 26 CFR § 31.6001-1(d). Moreover, "the fact that the [W-2s were] filed for public record amounts to…a guarantee" that the W-2s were accurate. *Lehmann*, 137 Ill.App.3d at 421.

268. For the same reasons, Defendants knew and intended that Plaintiff and RICO Class members would rely on the information in the W-2s and Paystubs issued by Defendants.

269. Accordingly, in filing the W-2s issued by Defendants to Plaintiff and RICO Class members—which contained incorrect information as to the amount of "wages" Plaintiff and RICO Class members earned—Defendants filed fraudulent information returns with the United States government through the mail or by wire transmission.

270. The particular Defendant that filed a fraudulent W-2 issued to Plaintiff and each of the RICO Class members depended upon which Defendant was responsible for tax reporting relative to Plaintiff and each RICO Class member. Relative to Plaintiff, Defendant Wells Holdings, LLC d/b/a Benchmark Bar and Grill filed the fraudulent W-2s with the United States government through the mail or by wire transmission.

271. On information and belief, Defendants' filing of the fraudulent W-2s that they issued to Plaintiff and RICO Class members was part of a willful scheme to shift the burden of paying taxes to Plaintiff and RICO Class members so that Defendants could covertly retain income without paying taxes, or avoid paying the minimum hourly rate of pay under applicable minimum wage laws.

272. For example, by overstating the amount of tip income that Defendants gave to Plaintiff and RICO Class members from Defendants' gross receipts, Defendants can

concomitantly understate the amount of net income Defendants generated after those amounts are deducted. To demonstrate, if one of Defendants' customers was charged $100 for a meal, and left an additional $20 as a tip for his/her Server, Defendants' gross income would be $120, and Defendants' net income would be $100 for that customer. However, if Defendants report that the customer's Server received a $40 tip from the customer, Defendants can report net income of $80, while still reporting gross income of $120. In this scenario, the Server would be required to pay taxes on $40 of income, even though he/she only received $20, whereas Defendants would only be required to pay taxes on $80 of net income, even though they would have actually received $100.[8]

273. As another example, by overstating the amount of money that Defendants gave to Plaintiff and RICO Class members, Defendants can ensure that they can always avail themselves of a tip credit with respect to the compensation paid to Plaintiff and RICO Class members, and do not have to pay Plaintiff and RICO Class members for any shortfall in the hourly rate of pay. In doing so, Defendants reduce their operating costs, and can therefore retain a greater portion of their gross income for their own benefit.

274. Although the precise mechanism by which Defendants benefitted from these practices is unknown, it can be proven through discovery after a review of Defendants' internal records and financial statements.

275. In light of the foregoing, Defendants committed mail fraud as defined in 18 U.S.C. § 1341 and/or wire fraud as defined in 18 U.S.C. § 1343 by engaging in a scheme to file fraudulent W-2s issued by Defendants to Plaintiff and RICO Class members with the United States government through the mail or by wire transmission in order to covertly retain income

---

[8] The fact that Four Corners is composed of over 20 different, interconnected entities would also facilitate Defendants' concealing the precise amount of net income they received in a calendar year.

FILED DATE: 7/19/2018 1:42 PM    2018CH09060

FILED DATE: 7/19/2018 1:42 PM    2018CH09060

without paying taxes, or avoid paying the minimum hourly rate of pay under applicable minimum wage laws.

276.   Defendants plotted and conspired to work together to defraud Plaintiff and RICO Class members (and potentially the United States government), and used the money illegally obtained in their scheme to continue their businesses and operations.

277.   Because the amount of "wages" stated on the W-2s issued by Defendants to Plaintiff and RICO Class members *overstated* the amount of "wages" that Plaintiff and RICO Class members actually earned during the prior calendar year, Plaintiff and RICO Class members were required to pay income tax on income that they did not actually receive.

278.   As a direct and proximate result of the foregoing, Plaintiff and RICO Class members were harmed by Defendants' conduct described herein because they were required to pay a greater amount in income tax than they otherwise should have been, had their W-2s been accurate.

279.   Pursuant to 18 U.S.C. § 1964(c), Plaintiff and RICO Class members are entitled to three times the damages they sustained as a result of Defendants' illegal conduct described herein.

280.   Plaintiff and RICO Class members are also entitled to reasonable attorneys' fees and costs, pursuant to 18 U.S.C. § 1964(c).

WHEREFORE, Plaintiff, individually, and on behalf of the RICO Class, prays for an Order as follows:

A.   Finding that this action satisfies the prerequisites for maintenance as a Class Action, as set forth by 735 ILCS 5/2-801, and certifying the RICO Class defined herein;

75

FILED DATE: 7/19/2018 1:42 PM   2018CH09060

B.     Designating Plaintiff as representative of the RICO Class and his undersigned counsel as RICO Class Counsel;

C.     Entering judgment in favor of Plaintiff and the RICO Class and against Defendants;

D.     Awarding Plaintiff and the RICO Class an amount equal to three times the damages they sustained as a result of Defendants' illegal conduct;

E.     Awarding Plaintiff and the RICO Class reasonable attorneys' fees and costs; and

F.     Granting all such further and other relief as the Court deems just and appropriate.

### COUNT VIII
### Civil Conspiracy
### (On Behalf of Plaintiff and the Conspiracy Class)
### (In the Alternative to Counts I through V)

281.    Plaintiff repeats and realleges the allegations in Paragraphs 1-67 and 98-107 with the same force and effect as though fully set forth herein.

282.    Plaintiff brings this Count in the alternative to Counts I through V set forth above.

### *Class Action Allegations*

283.    Plaintiff brings this Count as a Class Action on behalf of himself and the Conspiracy Class of similarly situation employees, pursuant to 735 ILCS 5/2-801.

284.    **Conspiracy Class Definition:** Plaintiff pursues the requested relief on behalf of the following Conspiracy Class:

> All individuals who (1) currently work, or have worked, for Defendants as Servers, or any other position with similar job duties, during the applicable statute of limitations period, and (2) received a W-2 from at least one Defendant which (a) stated that they received a greater amount in wage income from Defendants and tips bestowed upon them by Defendants' customers than they actually received in hourly compensation and Take Home Cash, and (b) was filed by said Defendant with the United States government on or after July 19, 2013.

FILED DATE: 7/19/2018 1:42 PM    2018CH09060

Excluded from the Conspiracy Class are: (1) Defendants, Defendants' agents, subsidiaries, parents, successors, predecessors, and any entity in which Defendants or their parents have a controlling interest, and those entities' current and former employees, officers, and directors; (2) the Judge to whom this case is assigned and the Judge's immediate family; (3) any person who executes and files a timely request for exclusion from the Conspiracy Class; (4) any persons who have had their claims in this matter finally adjudicated and/or otherwise released; and (5) the legal representatives, successors and assigns of any such excluded person. Plaintiff hereby reserves the right to amend the above class definition based on discovery and the proofs at trial.

285. *Numerosity*. The Conspiracy Class is so numerous that joinder of all members is impracticable. Plaintiff estimates that the Conspiracy Class, including both current and former employees over the time period relevant to this action, will include hundreds of members. This is based on the fact that Defendants operated approximately twenty (20) bars and restaurants during the time period applicable to this action, and each bar and restaurant employed about fifty (50) Servers at any given time. The precise number of Conspiracy Class members should be readily available from Defendants' personnel, scheduling, time, and payroll records maintained in accordance with 29 U.S.C. § 211(c).

286. *Commonality and Predominance*. There are questions of fact or law common to the Conspiracy Class, which predominate over any questions affecting only individual members including, *inter alia*, the following:

a.  Whether Plaintiff's and Conspiracy Class members' Paystubs and W-2s accurately reflected the amount of Take Home Cash that Plaintiff and Conspiracy Class members were given by Defendants in connection with the tips that Defendants' customers bestowed upon Plaintiff and Conspiracy Class members;

b.  Whether Defendants engaged in fraud by overstating the amount of compensation Defendants paid to Plaintiff and Conspiracy Class members on Plaintiff's and Conspiracy Class members' Paystubs and W-2s;

c.  Whether Defendants willfully filed fraudulent W-2s with the United States government that overstated the amount of compensation Defendants paid to Plaintiff and Conspiracy Class members;

FILED DATE: 7/19/2018 1:42 PM   2018CH09060

      d.      Whether Defendants conspired to covertly retain income without paying taxes, or avoid paying the minimum hourly rate of pay under applicable minimum wage laws;

      e.      Whether Plaintiff and the members of the Conspiracy Class have sustained damages and, if so, what is the proper measure of their damages; and

      f.      Whether Plaintiff and the members of the Conspiracy Class are entitled to the relief sought, including attorney's fees.

287.    *Adequacy*.  Plaintiff will fairly and adequately protect the interests of the Conspiracy Class. Plaintiff has retained the undersigned class counsel, who are competent and experienced in the prosecution of complex and class action litigation.  The interests of Plaintiff are aligned with, and not antagonistic to, those of the Conspiracy Class.

288.    *Appropriateness*.  A class action is an appropriate method for the fair and efficient adjudication of this controversy.  The common questions of law and fact enumerated above predominate over questions affecting only individual members of the Conspiracy Class.  Also, the likelihood that individual members of the Conspiracy Class will prosecute separate actions is remote due to the extensive time and considerable expense necessary to conduct such litigation, especially in view of the relatively modest amount of monetary relief at issue for individual Conspiracy Class members.

### *Substantive Allegations*

289.    "The elements of a civil conspiracy are: (1) a combination of two or more persons, (2) for the purpose of accomplishing by some concerted action either an unlawful purpose or a lawful purpose by unlawful means, (3) in the furtherance of which one of the conspirators committed an overt tortious or unlawful act."  *E.g.*, *Fritz v. Johnston*, 209 Ill.2d 302, 317 (2004).

FILED DATE: 7/19/2018 1:42 PM    2018CH09060

290.    As the employers of Plaintiff and Conspiracy Class members, Defendants issued W-2s to Plaintiff and Conspiracy Class members on an annual basis.

291.    The particular Defendant that issued a W-2 to Plaintiff and each of the Conspiracy Class members depended upon which Defendant was responsible for tax reporting relative to Plaintiff and each Conspiracy Class member.  Relative to Plaintiff, Defendant Wells Holdings, LLC d/b/a Benchmark Bar and Grill issued Plaintiff's W-2s.

292.    The W-2s issued to Plaintiff and Conspiracy Class members by Defendants are "information returns" as defined by 26 U.S.C. § 7434(f).  26 U.S.C. § 6724(d)(1)(A); 26 CFR § 31.6051-2(a).  The W-2s issued to Plaintiff and Conspiracy Class members by Defendants are also "payee statements," as defined by 26 U.S.C. § 6724(d)(2).

293.    For purposes of the W-2s issued by Defendants to Plaintiff and Conspiracy Class members, the hourly compensation that Defendants paid to Plaintiff and Conspiracy Class members, as well as the tips that Defendants' customers bestowed upon Plaintiff and Conspiracy Class members, constituted "wages."  26 U.S.C. § 3121(a); 26 U.S.C. § 3401(a) & (f).

294.    Defendants calculated the "wages" on Plaintiff's and Conspiracy Class members' W-2s using the information on Plaintiff's and Conspiracy Class members' Paystubs from the applicable calendar year.   Put another way, the "wages" reflected on the W-2s that Defendants issued to Plaintiff and Conspiracy Class members were derived by adding the amount of hourly compensation that Plaintiff and Conspiracy Class members earned during the prior calendar year—as reflected Plaintiff's and Conspiracy Class members' Paystubs—to the amount of "Cash Tips" stated on Plaintiff's and Conspiracy Class members' Paystubs from the prior calendar year.

295.    However, the "Cash Tips" stated on Plaintiff's and Conspiracy Class members' Paystubs *inaccurately* reflected the amount of Take Home Cash that Plaintiff and Conspiracy

79

FILED DATE: 7/19/2018 1:42 PM   2018CH09060

Class members were given by Defendants in connection with tips bestowed upon Plaintiff and Conspiracy Class members by Defendants' customers during their respective shifts. In actuality, Plaintiff and Conspiracy Class members received a *lesser* amount in Take Home Cash in connection with tips bestowed upon them by Defendants' customers than the amount of "Cash Tips" stated on their Paystubs.

296.    As such, the W-2s issued by Defendants to Plaintiff and Conspiracy Class members *overstated* the amount of "wages" that Plaintiff and Conspiracy Class members earned during the prior calendar year.

297.    Defendants filed the W-2s that they issued to Plaintiff and Conspiracy Class members with the United States government, as required by 26 CFR § 31.6051-2(a).

298.    Defendants knew the information on the W-2s that they issued to Plaintiff and Conspiracy Class members was false because Plaintiff and Conspiracy Class members accurately declared in Defendants' POS system the amount of tips bestowed upon them by Defendants' customers—as required by 26 U.S.C. § 6053(a) and 26 CFR § 31.6053-1(a)—and Defendants had a duty to keep accurate records relative to the amount of tips declared by Plaintiff and Conspiracy Class members in Defendants' POS system—as required by 26 CFR § 31.6001-1(a).

299.    Plaintiff and Conspiracy Class members reasonably believed that the information in the W-2s issued by Defendants was accurate, and relied upon that information, because Defendants had a duty to file correct information returns with the United States government—pursuant to 26 U.S.C. § 6721(a)(2)(B) and 26 CFR 301.6721-1—and to furnish Plaintiff and Conspiracy Class members with correct payee statements—pursuant to 26 U.S.C. § 6722(a)(2)(B) and 26 CFR 301.6722-1. Plaintiff and Conspiracy Class members also reasonably believed that the information in the W-2s and Paystubs issued by Defendants was accurate, and

80

FILED DATE: 7/19/2018 1:42 PM    2018CH09060

relied upon that information, because Defendants had a duty to keep accurate records relative to the amount of tips declared by Plaintiff and Conspiracy Class members in Defendants' POS system—pursuant to 26 CFR § 31.6001-1(a).  Indeed, unlike Defendants, there is no mandatory recordkeeping requirement imposed on Plaintiff and Conspiracy Class members.  26 CFR § 31.6001-1(d).  Moreover, "the fact that the [W-2s were] filed for public record amounts to…a guarantee" that the W-2s were accurate. *Lehmann*, 137 Ill.App.3d at 421.

300.    For the same reasons, Defendants knew and intended that Plaintiff and Conspiracy Class members would rely on the information in the W-2s and Paystubs issued by Defendants.

301.    Accordingly, in filing the W-2s issued by Defendants to Plaintiff and Conspiracy Class members—which contained incorrect information as to the amount of "wages" Plaintiff and Conspiracy Class members earned—Defendants filed fraudulent information returns with the United States government in violation of 26 U.S.C. § 7434(a).

302.    The particular Defendant that filed a fraudulent W-2 issued to Plaintiff and each of the Conspiracy Class members depended upon which Defendant was responsible for tax reporting relative to Plaintiff and each Conspiracy Class member.  Relative to Plaintiff, Defendant Wells Holdings, LLC d/b/a Benchmark Bar and Grill filed the fraudulent W-2s with the United States government.

303.    On information and belief, Defendants' filing of the fraudulent W-2s issued to Plaintiff and Conspiracy Class members was part of a willful scheme to shift the burden of paying taxes to Plaintiff and Conspiracy Class members so that Defendants could covertly retain income without paying taxes, or avoid paying the minimum hourly rate of pay under applicable minimum wage laws.

FILED DATE: 7/19/2018 1:42 PM 2018CH09060

304.    For example, by overstating the amount of tip income that Defendants gave to Plaintiff and Conspiracy Class members from Defendants' gross receipts, Defendants can concomitantly understate the amount of net income Defendants generated after those amounts are deducted.  To demonstrate, if one of Defendants' customers was charged $100 for a meal, and left an additional $20 as a tip for his/her Server, Defendants' gross income would be $120, and Defendants' net income would be $100 for that customer.  However, if Defendants report that the customer's Server received a $40 tip from the customer, Defendants can report net income of $80, while still reporting gross income of $120.  In this scenario, the Server would be required to pay taxes on $40 of income, even though he/she only received $20, whereas Defendants would only be required to pay taxes on $80 of net income, even though they would have actually received $100.[9]

305.    As another example, by overstating the amount of money that Defendants gave to Plaintiff and Conspiracy Class members, Defendants can ensure that they can always avail themselves of a tip credit with respect to the compensation paid to Plaintiff and Conspiracy Class members, and do not have to pay Plaintiff and Conspiracy Class members for any shortfall in the hourly rate of pay.  In doing so, Defendants reduce their operating costs, and can therefore retain a greater portion of their gross income for their own benefit.

306.    Although the precise mechanism by which Defendants benefitted from these practices is unknown, it can be proven through discovery after a review of Defendants' internal records and financial statements.

---

[9] The fact that Four Corners is composed of over 20 different, interconnected entities would also facilitate Defendants' concealing the precise amount of net income they received in a calendar year.

FILED DATE: 7/19/2018 1:42 PM    2018CH09060

307.    Defendants plotted and conspired to work together to defraud Plaintiff and Conspiracy Class members (and potentially the United States government), and used the money illegally obtained in their scheme to continue their businesses and operations.

308.    Because the amount of "wages" stated on the W-2s issued by Defendants to Plaintiff and Conspiracy Class members *overstated* the amount of "wages" that Plaintiff and Conspiracy Class members actually earned during the prior calendar year, Plaintiff and Conspiracy Class members were required to pay income tax on income that they did not actually receive.

309.    As a direct and proximate result of the foregoing, Plaintiff and Conspiracy Class members were harmed by Defendants' conduct described herein because they were required to pay a greater amount in income tax than they otherwise should have been, had their W-2s been accurate.

310.    Accordingly, Plaintiff, individually, and on behalf of the Conspiracy Class, seeks damages arising from Defendants' conduct described herein.

WHEREFORE, Plaintiff, individually, and on behalf of the Conspiracy Class, prays for an Order as follows:

A.    Finding that this action satisfies the prerequisites for maintenance as a Class Action, as set forth by 735 ILCS 5/2-801, and certifying the Conspiracy Class defined herein;

B.    Designating Plaintiff as representative of the Conspiracy Class and his undersigned counsel as Conspiracy Class Counsel;

C.    Entering judgment in favor of Plaintiff and the Conspiracy Class and against Defendants;

D.    Awarding Plaintiff and the Conspiracy Class an amount equal to the damages they sustained as a result of Defendants' illegal conduct;

FILED DATE: 7/19/2018 1:42 PM   2018CH09060

E.    Awarding Plaintiff and the Conspiracy Class reasonable attorneys' fees and costs; and

F.    Granting all such further and other relief as the Court deems just and appropriate.

**COUNT IX**
**Fraud**
**(On Behalf of Plaintiff and the Fraud Class)**
**(In the Alternative to Counts I through V)**

311.    Plaintiff repeats and realleges the allegations in Paragraphs 1-67 and 98-107 with the same force and effect as though fully set forth herein.

312.    Plaintiff brings this Count in the alternative to Counts I through V set forth above.

***Class Action Allegations***

313.    Plaintiff brings this Count as a Class Action on behalf of himself and the Fraud Class of similarly situation employees, pursuant to 735 ILCS 5/2-801.

314.    **Fraud Class Definition:** Plaintiff pursues the requested relief on behalf of the following Fraud Class:

> All individuals who (1) currently work, or have worked, for Defendants as Servers, or any other position with similar job duties, during the applicable statute of limitations period, and (2) received a W-2 from at least one Defendant which (a) stated that they received a greater amount in wage income from Defendants and tips bestowed upon them by Defendants' customers than they actually received in hourly compensation and Take Home Cash, and (b) was filed by said Defendant with the United States government on or after July 19, 2013.

Excluded from the Fraud Class are: (1) Defendants, Defendants' agents, subsidiaries, parents, successors, predecessors, and any entity in which Defendants or their parents have a controlling interest, and those entities' current and former employees, officers, and directors; (2) the Judge to whom this case is assigned and the Judge's immediate family; (3) any person who executes and files a timely request for exclusion from the Fraud Class; (4) any persons who have had their claims in this matter finally adjudicated and/or otherwise released; and (5) the legal representatives, successors and assigns of any such excluded person.  Plaintiff hereby reserves the right to amend the above class definition based on discovery and the proofs at trial.

315.  *Numerosity*.  The Fraud Class is so numerous that joinder of all members is impracticable.  Plaintiff estimates that the Fraud Class, including both current and former employees over the time period relevant to this action, will include hundreds of members.  This is based on the fact that Defendants operated approximately twenty (20) bars and restaurants during the time period applicable to this action, and each bar and restaurant employed about fifty (50) Servers at any given time.  The precise number of Fraud Class members should be readily available from Defendants' personnel, scheduling, time, and payroll records maintained in accordance with 29 U.S.C. § 211(c).

316.  *Commonality and Predominance*.  There are questions of fact or law common to the Fraud Class, which predominate over any questions affecting only individual members including, *inter alia*, the following:

a.  Whether Plaintiff's and Fraud Class members' Paystubs and W-2s accurately reflected the amount of Take Home Cash that Plaintiff and Fraud Class members were given by Defendants in connection with the tips that Defendants' customers bestowed upon Plaintiff and Fraud Class members;

b.  Whether Defendants knew that the amounts stated on Plaintiff's and Fraud Class members' Paystubs and W-2s inaccurately reflected the amount of compensation Defendants paid to Plaintiff and Fraud Class members;

c.  Whether Defendants knew and intended that Plaintiff and Fraud Class members would rely on the amounts stated on Plaintiff's and Fraud Class members' Paystubs and W-2s;

d.  Whether Plaintiff and Fraud Class members relied on the amounts stated on Plaintiff's and Fraud Class members' Paystubs and W-2s;

e.  Whether Plaintiff and the members of the Fraud Class have sustained damages and, if so, what is the proper measure of their damages; and

f.  Whether Plaintiff and the members of the Fraud Class are entitled to the relief sought, including attorney's fees.

FILED DATE: 7/19/2018 1:42 PM  2018CH09060

FILED DATE: 7/19/2018 1:42 PM    2018CH09060

317.    *Adequacy*.  Plaintiff will fairly and adequately protect the interests of the Fraud Class. Plaintiff has retained the undersigned class counsel, who are competent and experienced in the prosecution of complex and class action litigation.  The interests of Plaintiff are aligned with, and not antagonistic to, those of the Fraud Class.

318.    *Appropriateness*.  A class action is an appropriate method for the fair and efficient adjudication of this controversy.  The common questions of law and fact enumerated above predominate over questions affecting only individual members of the Fraud Class.  Also, the likelihood that individual members of the Fraud Class will prosecute separate actions is remote due to the extensive time and considerable expense necessary to conduct such litigation, especially in view of the relatively modest amount of monetary relief at issue for individual Fraud Class members.

### *Substantive Allegations*

319.    "The elements of common law fraud are: (1) a false statement of material fact; (2) defendant's knowledge that the statement was false; (3) defendant's intent that the statement induce the plaintiff to act; (4) plaintiff's reliance upon the truth of the statement; and (5) plaintiff's damages resulting from reliance on the statement."  *E.g.*, *Connick v. Suzuki Motor Co., Ltd.*, 174 Ill.2d 482, 496 (1996).

320.    As the employers of Plaintiff and Fraud Class members, Defendants issued W-2s to Plaintiff and Fraud Class members on an annual basis.

321.    The particular Defendant that issued a W-2 to Plaintiff and each of the Fraud Class members depended upon which Defendant was responsible for tax reporting relative to Plaintiff and each Fraud Class member.  Relative to Plaintiff, Defendant Wells Holdings, LLC d/b/a Benchmark Bar and Grill issued Plaintiff's W-2s.

FILED DATE: 7/19/2018 1:42 PM   2018CH09060

322.    The W-2s issued to Plaintiff and Fraud Class members by Defendants are "information returns" as defined by 26 U.S.C. § 7434(f).  26 U.S.C. § 6724(d)(1)(A); 26 CFR § 31.6051-2(a).  The W-2s issued to Plaintiff and Fraud Class members by Defendants are also "payee statements," as defined by 26 U.S.C. § 6724(d)(2).

323.    For purposes of the W-2s issued by Defendants to Plaintiff and Fraud Class members, the hourly compensation that Defendants paid to Plaintiff and Fraud Class members, as well as the tips that Defendants' customers bestowed upon Plaintiff and Fraud Class members, constituted "wages."  26 U.S.C. § 3121(a); 26 U.S.C. § 3401(a) & (f).

324.    Defendants calculated the "wages" on Plaintiff's and Fraud Class members' W-2s using the information on Plaintiff's and Fraud Class members' Paystubs from the applicable calendar year.   Put another way, the "wages" reflected on the W-2s that Defendants issued to Plaintiff and Fraud Class members were derived by adding the amount of hourly compensation that Plaintiff and Fraud Class members earned during the prior calendar year—as reflected Plaintiff's and Fraud Class members' Paystubs—to the amount of "Cash Tips" stated on Plaintiff's and Fraud Class members' Paystubs from the prior calendar year.

325.    However, the "Cash Tips" stated on Plaintiff's and Fraud Class members' Paystubs *inaccurately* reflected the amount of Take Home Cash that Plaintiff and Fraud Class members were given by Defendants in connection with tips bestowed upon Plaintiff and Fraud Class members by Defendants' customers during their respective shifts.   In actuality, Plaintiff and Fraud Class members received a *lesser* amount in Take Home Cash in connection with tips bestowed upon them by Defendants' customers than the amount of "Cash Tips" stated on their Paystubs.

326.    As such, the W-2s issued by Defendants to Plaintiff and Fraud Class members *overstated* the amount of "wages" that Plaintiff and Fraud Class members earned during the prior calendar year.

327.    Defendants filed the W-2s that they issued to Plaintiff and Fraud Class members with the United States government, as required by 26 CFR § 31.6051-2(a).

328.    Defendants knew the information on the W-2s that they issued to Plaintiff and Fraud Class members was false because Plaintiff and Fraud Class members accurately declared in Defendants' POS system the amount of tips bestowed upon them by Defendants' customers— as required by 26 U.S.C. § 6053(a) and 26 CFR § 31.6053-1(a)—and Defendants had a duty to keep accurate records relative to the amount of tips declared by Plaintiff and Fraud Class members in Defendants' POS system—as required by 26 CFR § 31.6001-1(a).

329.    Plaintiff and Fraud Class members reasonably believed that the information in the W-2s issued by Defendants was accurate, and relied upon that information, because Defendants had a duty to file correct information returns with the United States government—pursuant to 26 U.S.C. § 6721(a)(2)(B) and 26 CFR 301.6721-1—and to furnish Plaintiff and Fraud Class members with correct payee statements—pursuant to 26 U.S.C. § 6722(a)(2)(B) and 26 CFR 301.6722-1.  Plaintiff and Fraud Class members also reasonably believed that the information in the W-2s and Paystubs issued by Defendants was accurate, and relied upon that information, because Defendants had a duty to keep accurate records relative to the amount of tips declared by Plaintiff and Fraud Class members in Defendants' POS system—pursuant to 26 CFR § 31.6001-1(a).  Indeed, unlike Defendants, there is no mandatory recordkeeping requirement imposed on Plaintiff and Fraud Class members.  26 CFR § 31.6001-1(d).  Moreover, "the fact that the [W-2s

FILED DATE: 7/19/2018 1:42 PM   2018CH09060

FILED DATE: 7/19/2018 1:42 PM   2018CH09060

were] filed for public record amounts to…a guarantee" that the W-2s were accurate. *Lehmann*, 137 Ill.App.3d at 421.

330.    For the same reasons, Defendants knew and intended that Plaintiff and Fraud Class members would rely on the information in the W-2s and Paystubs issued by Defendants.

331.    Accordingly, in filing the W-2s issued by Defendants to Plaintiff and Fraud Class members—which contained incorrect information as to the amount of "wages" Plaintiff and Fraud Class members earned—Defendants filed fraudulent information returns with the United States government in violation of 26 U.S.C. § 7434(a).

332.    The particular Defendant that filed a fraudulent W-2 issued to Plaintiff and each of the Fraud Class members depended upon which Defendant was responsible for tax reporting relative to Plaintiff and each Fraud Class member.   Relative to Plaintiff, Defendant Wells Holdings, LLC d/b/a Benchmark Bar and Grill filed the fraudulent W-2s with the United States government.

333.    On information and belief, Defendants' filing of the fraudulent W-2s that they issued to Plaintiff and Fraud Class members was part of a willful scheme to shift the burden of paying taxes to Plaintiff and Fraud Class members so that Defendants could covertly retain income without paying taxes, or avoid paying the minimum hourly rate of pay under applicable minimum wage laws.

334.    For example, by overstating the amount of tip income that Defendants gave to Plaintiff and Fraud Class members from Defendants' gross receipts, Defendants can concomitantly understate the amount of net income Defendants generated after those amounts are deducted.  To demonstrate, if one of Defendants' customers was charged $100 for a meal, and left an additional $20 as a tip for his/her Server, Defendants' gross income would be $120, and

Defendants' net income would be $100 for that customer. However, if Defendants report that the customer's Server received a $40 tip from the customer, Defendants can report net income of $80, while still reporting gross income of $120. In this scenario, the Server would be required to pay taxes on $40 of income, even though he/she only received $20, whereas Defendants would only be required to pay taxes on $80 of net income, even though they would have actually received $100.[10]

335.    As another example, by overstating the amount of money that Defendants gave to Plaintiff and Fraud Class members, Defendants can ensure that they can always avail themselves of a tip credit with respect to the compensation paid to Plaintiff and Fraud Class members, and do not have to pay Plaintiff and Fraud Class members for any shortfall in the hourly rate of pay. In doing so, Defendants reduce their operating costs, and can therefore retain a greater portion of their gross income for their own benefit.

336.    Although the precise mechanism by which Defendants benefitted from these practices is unknown, it can be proven through discovery after a review of Defendants' internal records and financial statements.

337.    Because the amount of "wages" stated on the W-2s issued by Defendants to Plaintiff and Fraud Class members *overstated* the amount of "wages" that Plaintiff and Fraud Class members actually earned during the prior calendar year, Plaintiff and Fraud Class members were required to pay income tax on income that they did not actually receive. Accordingly, Defendants' misrepresentations on the W-2s that they issued to Plaintiff and Fraud Class members were material.

---

[10] The fact that Four Corners is composed of over 20 different, interconnected entities would also facilitate Defendants' concealing the precise amount of net income they received in a calendar year.

FILED DATE: 7/19/2018 1:42 PM    2018CH09060

338.  As a direct and proximate result of the foregoing, Plaintiff and Fraud Class members were harmed by Defendants' conduct described herein because they were required to pay a greater amount in income tax than they otherwise should have been, had their W-2s been accurate.

339.  Accordingly, Plaintiff, individually, and on behalf of the Fraud Class, seeks damages arising from Defendants' conduct described herein.

WHEREFORE, Plaintiff, individually, and on behalf of the Fraud Class, prays for an Order as follows:

A.  Finding that this action satisfies the prerequisites for maintenance as a Class Action, as set forth by 735 ILCS 5/2-801, and certifying the Fraud Class defined herein;

B.  Designating Plaintiff as representative of the Fraud Class and his undersigned counsel as Fraud Class Counsel;

C.  Entering judgment in favor of Plaintiff and the Fraud Class and against Defendants;

D.  Awarding Plaintiff and the Fraud Class an amount equal to the damages they sustained as a result of Defendants' fraudulent conduct, plus punitive damages;

E.  Awarding Plaintiff and the Fraud Class reasonable attorneys' fees and costs; and

F.  Granting all such further and other relief as the Court deems just and appropriate.

## COUNT X
### Negligent Misrepresentation
### (On Behalf of Plaintiff and the Negligent Misrepresentation Class)
### (In the Alternative to Counts I through V)

340.  Plaintiff repeats and realleges the allegations in Paragraphs 1-67 and 98-107 with the same force and effect as though fully set forth herein.

91

FILED DATE: 7/19/2018 1:42 PM   2018CH09060

341.     Plaintiff brings this Count in the alternative to Counts I through V set forth above.

### *Class Action Allegations*

342.     Plaintiff brings this Count as a Class Action on behalf of himself and the Negligent Misrepresentation Class of similarly situation employees, pursuant to 735 ILCS 5/2-801.

343.     **Negligent Misrepresentation Class Definition:** Plaintiff pursues the requested relief on behalf of the following Negligent Misrepresentation Class:

> All individuals who (1) currently work, or have worked, for Defendants as Servers, or any other position with similar job duties, during the applicable statute of limitations period, and (2) received a W-2 from at least one Defendant which (a) stated that they received a greater amount in wage income from Defendants and tips bestowed upon them by Defendants' customers than they actually received in hourly compensation and Take Home Cash, and (b) was filed by said Defendant with the United States government on or after July 19, 2013.

Excluded from the Negligent Misrepresentation Class are: (1) Defendants, Defendants' agents, subsidiaries, parents, successors, predecessors, and any entity in which Defendants or their parents have a controlling interest, and those entities' current and former employees, officers, and directors; (2) the Judge to whom this case is assigned and the Judge's immediate family; (3) any person who executes and files a timely request for exclusion from the Negligent Misrepresentation Class; (4) any persons who have had their claims in this matter finally adjudicated and/or otherwise released; and (5) the legal representatives, successors and assigns of any such excluded person.  Plaintiff hereby reserves the right to amend the above class definition based on discovery and the proofs at trial.

344.     *Numerosity.*  The Negligent Misrepresentation Class is so numerous that joinder of all members is impracticable.  Plaintiff estimates that the Negligent Misrepresentation Class, including both current and former employees over the time period relevant to this action, will include hundreds of members.  This is based on the fact that Defendants operated approximately twenty (20) bars and restaurants during the time period applicable to this action, and each bar and restaurant employed about fifty (50) Servers at any given time.  The precise number of Negligent Misrepresentation Class members should be readily available from Defendants'

FILED DATE: 7/19/2018 1:42 PM 2018CH09060

personnel, scheduling, time, and payroll records maintained in accordance with 29 U.S.C. § 211(c).

345. *Commonality and Predominance.* There are questions of fact or law common to the Negligent Misrepresentation Class, which predominate over any questions affecting only individual members including, *inter alia*, the following:

a. Whether Plaintiff's and Negligent Misrepresentation Class members' Paystubs and W-2s accurately reflected the amount of Take Home Cash that Plaintiff and Negligent Misrepresentation Class members were given by Defendants in connection with the tips that Defendants' customers bestowed upon Plaintiff and Negligent Misrepresentation Class members;

b. Whether Defendants knew, or should have known, that the amounts stated on Plaintiff's and Negligent Misrepresentation Class members' Paystubs and W-2s inaccurately reflected the amount of compensation Defendants paid to Plaintiff and Negligent Misrepresentation Class members;

c. Whether Defendants knew and intended that Plaintiff and Negligent Misrepresentation Class members would rely on the amounts stated on Plaintiff's and Negligent Misrepresentation Class members' Paystubs and W-2s;

d. Whether Plaintiff and Negligent Misrepresentation Class members relied on the amounts stated on Plaintiff's and Negligent Misrepresentation Class members' Paystubs and W-2s;

e. Whether Plaintiff and the members of the Negligent Misrepresentation Class have sustained damages and, if so, what is the proper measure of their damages; and

f. Whether Plaintiff and the members of the Negligent Misrepresentation Class are entitled to the relief sought, including attorney's fees.

346. *Adequacy.* Plaintiff will fairly and adequately protect the interests of the Negligent Misrepresentation Class. Plaintiff has retained the undersigned class counsel, who are competent and experienced in the prosecution of complex and class action litigation. The interests of Plaintiff are aligned with, and not antagonistic to, those of the Negligent Misrepresentation Class.

93

FILED DATE: 7/19/2018 1:42 PM  2018CH09060

347.    *Appropriateness*.  A class action is an appropriate method for the fair and efficient adjudication of this controversy.  The common questions of law and fact enumerated above predominate over questions affecting only individual members of the Negligent Misrepresentation Class.  Also, the likelihood that individual members of the Negligent Misrepresentation Class will prosecute separate actions is remote due to the extensive time and considerable expense necessary to conduct such litigation, especially in view of the relatively modest amount of monetary relief at issue for individual Negligent Misrepresentation Class members.

### *Substantive Allegations*

348.    "The tort of negligent misrepresentation involves a breach of the duty to use due care in obtaining and communicating information upon which others may reasonably be expected to rely in the conduct of their economic affairs."  *E.g.*, *Lehmann*, 137 Ill.App.3d at 420; *Mid-Am. Nat. Bank of Chicago v. First Sav. & Loan Ass'n of S. Holland*, 161 Ill.App.3d 531, 535 (1st Dist. 1987).  A claim for "negligent misrepresentation has essentially the same elements [as a claim for fraud],[11] except that the defendant's mental state is different.  The defendant need not know that the statement is false.  His own carelessness or negligence in ascertaining its truth will suffice for a cause of action."  *Bd. of Educ. of City of Chicago v. A, C & S, Inc.*, 131 Ill.2d 428, 452 (1989); *Avon Hardware Co. v. Ace Hardware Corp.*, 2013 IL App (1st) 130750, ¶ 15.  In addition, "for negligent misrepresentation, a plaintiff must also allege that the defendant owes a duty to the plaintiff to communicate accurate information."  *A, C & S*, 131 Ill.2d at 452; *Avon Hardware*, 2013 IL App (1st) 130750 at ¶ 15; *Kupper v. Powers*, 2017 IL App (3d) 160141, ¶ 40.

---

[11] As set forth in Paragraph 319, "the elements of common law fraud are: (1) a false statement of material fact; (2) defendant's knowledge that the statement was false; (3) defendant's intent that the statement induce the plaintiff to act; (4) plaintiff's reliance upon the truth of the statement; and (5) plaintiff's damages resulting from reliance on the statement."  *E.g.*, *Connick*, 174 Ill.2d at 496.

FILED DATE: 7/19/2018 1:42 PM    2018CH09060

349.    A duty to communicate accurate information can be created by statute.  *Lehmann*, 137 Ill.App.3d at 421 (Negligent misrepresentation "can result from the failure to provide adequate information when there is a [statutory] duty to provide such information as well as providing information which is false."); *Mid-Am. Nat. Bank*, 161 Ill.App.3d at 535 (same); *Stewart v. Thrasher*, 242 Ill.App.3d 10, 15 (4th Dist. 1993) ("A plaintiff [can] recover economic losses resulting from the negligent misrepresentation of one under a public duty to provide information."); *see also*, *Kupper*, 2017 IL App (3d) 160141 at ¶ 41 (explaining *Lehmann*).

350.    As the employers of Plaintiff and Negligent Misrepresentation Class members, Defendants issued W-2s to Plaintiff and Negligent Misrepresentation Class members on an annual basis.

351.    The particular Defendant that issued a W-2 to Plaintiff and each of the Negligent Misrepresentation Class members depended upon which Defendant was responsible for tax reporting relative to Plaintiff and each Negligent Misrepresentation Class member.  Relative to Plaintiff, Defendant Wells Holdings, LLC d/b/a Benchmark Bar and Grill issued Plaintiff's W-2s.

352.    The W-2s issued to Plaintiff and Negligent Misrepresentation Class members by Defendants are "information returns" as defined by 26 U.S.C. § 7434(f).  26 U.S.C. § 6724(d)(1)(A); 26 CFR § 31.6051-2(a).  The W-2s issued to Plaintiff and Negligent Misrepresentation Class members by Defendants are also "payee statements," as defined by 26 U.S.C. § 6724(d)(2).

353.    For purposes of the W-2s issued by Defendants to Plaintiff and Negligent Misrepresentation Class members, the hourly compensation that Defendants paid to Plaintiff and Negligent Misrepresentation Class members, as well as the tips that Defendants' customers

FILED DATE: 7/19/2018 1:42 PM    2018CH09060

bestowed upon Plaintiff and Negligent Misrepresentation Class members, constituted "wages." 26 U.S.C. § 3121(a); 26 U.S.C. § 3401(a) & (f).

354.    Defendants calculated the "wages" on Plaintiff's and Negligent Misrepresentation Class members' W-2s using the information on Plaintiff's and Negligent Misrepresentation Class members' Paystubs from the applicable calendar year.   Put another way, the "wages" reflected on the W-2s that Defendants issued to Plaintiff and Negligent Misrepresentation Class members were derived by adding the amount of hourly compensation that Plaintiff and Negligent Misrepresentation Class members earned during the prior calendar year—as reflected Plaintiff's and Negligent Misrepresentation Class members' Paystubs—to the amount of "Cash Tips" stated on Plaintiff's and Negligent Misrepresentation Class members' Paystubs from the prior calendar year.

355.    However, the "Cash Tips" stated on Plaintiff's and Negligent Misrepresentation Class members' Paystubs *inaccurately* reflected the amount of Take Home Cash that Plaintiff and Negligent Misrepresentation Class members were given by Defendants in connection with tips bestowed upon Plaintiff and Negligent Misrepresentation Class members by Defendants' customers during their respective shifts.   In actuality, Plaintiff and Negligent Misrepresentation Class members received a *lesser* amount in Take Home Cash in connection with tips bestowed upon them by Defendants' customers than the amount of "Cash Tips" stated on their Paystubs.

356.    As such, the W-2s issued by Defendants to Plaintiff and Negligent Misrepresentation Class members *overstated* the amount of "wages" that Plaintiff and Negligent Misrepresentation Class members earned during the prior calendar year.

FILED DATE: 7/19/2018 1:42 PM   2018CH09060

357.    Defendants filed the W-2s that they issued to Plaintiff and Negligent Misrepresentation Class members with the United States government, as required by 26 CFR § 31.6051-2(a).

358.    Defendants had a duty to file correct information returns with the United States government—pursuant to 26 U.S.C. § 6721(a)(2)(B) and 26 CFR 301.6721-1—and to furnish Plaintiff and Negligent Misrepresentation Class members with correct payee statements— pursuant to 26 U.S.C. § 6722(a)(2)(B) and 26 CFR 301.6722-1.

359.    As such, Defendants had a duty to communicate accurate information in the W-2s that they issued to Plaintiff and Negligent Misrepresentation Class members because "statutes requiring information to be filed for public record…create a duty to members of the public" to provide accurate information.  *Lehmann*, 137 Ill.App.3d at 419; *Stewart*, 242 Ill.App.3d at 15; *Kupper*, 2017 IL App (3d) 160141 at ¶ 41.

360.    Defendants knew, or should have known, that the information on the W-2s that they issued to Plaintiff and Negligent Misrepresentation Class members was false because Plaintiff and Negligent Misrepresentation Class members accurately declared in Defendants' POS system the amount of tips bestowed upon them by Defendants' customers—as required by 26 U.S.C. § 6053(a) and 26 CFR § 31.6053-1(a)—and Defendants had a duty to keep accurate records relative to the amount of tips declared by Plaintiff and Negligent Misrepresentation Class members in Defendants' POS system—as required by 26 CFR § 31.6001-1(a).

361.    Plaintiff and Negligent Misrepresentation Class members reasonably believed that the information in the W-2s issued by Defendants was accurate, and relied upon that information, because Defendants had a duty to file correct information returns with the United States government—pursuant to 26 U.S.C. § 6721(a)(2)(B) and 26 CFR 301.6721-1—and to furnish

FILED DATE: 7/19/2018 1:42 PM   2018CH09060

Plaintiff and Negligent Misrepresentation Class members with correct payee statements—pursuant to 26 U.S.C. § 6722(a)(2)(B) and 26 CFR 301.6722-1. Plaintiff and Negligent Misrepresentation Class members also reasonably believed that the information in the W-2s and Paystubs issued by Defendants was accurate, and relied upon that information, because Defendants had a duty to keep accurate records relative to the amount of tips declared by Plaintiff and Negligent Misrepresentation Class members in Defendants' POS system—pursuant to 26 CFR § 31.6001-1(a). Indeed, unlike Defendants, there is no mandatory recordkeeping requirement imposed on Plaintiff and Negligent Misrepresentation Class members. 26 CFR § 31.6001-1(d). Moreover, "the fact that the [W-2s were] filed for public record amounts to…a guarantee" that the W-2s were accurate. *Lehmann*, 137 Ill.App.3d at 421.

362. For the same reasons, Defendants knew and intended that Plaintiff and Negligent Misrepresentation Class members would rely on the information in the W-2s and Paystubs issued by Defendants.

363. Accordingly, in filing the W-2s issued by Defendants to Plaintiff and Negligent Misrepresentation Class members, Defendants negligently misrepresented information—*i.e.*, the amount of "wages" Plaintiff and Negligent Misrepresentation Class members earned—that Defendants had a duty to accurately communicate.

364. The particular Defendant that negligently misrepresented information—*i.e.*, the amount of "wages" Plaintiff and Negligent Misrepresentation Class members earned—to Plaintiff and Negligent Misrepresentation Class members depended upon which Defendant was responsible for tax reporting relative to Plaintiff and each Negligent Misrepresentation Class member. Relative to Plaintiff, Defendant Wells Holdings, LLC d/b/a Benchmark Bar and Grill negligently misrepresented information concerning the amount of "wages" that Plaintiff earned.

FILED DATE: 7/19/2018 1:42 PM    2018CH09060

365.    Because the amount of "wages" stated on the W-2s issued by Defendants to Plaintiff and Negligent Misrepresentation Class members *overstated* the amount of "wages" that Plaintiff and Negligent Misrepresentation Class members actually earned during the prior calendar year, Plaintiff and Negligent Misrepresentation Class members were required to pay income tax on income that they did not actually receive.    Accordingly, Defendants' misrepresentations on the W-2s that they issued to Plaintiff and Negligent Misrepresentation Class members were material.

366.    As a direct and proximate result of the foregoing, Plaintiff and Negligent Misrepresentation Class members were harmed by Defendants' conduct described herein because they were required to pay a greater amount in income tax than they otherwise should have been, had their W-2s been accurate.

367.    Accordingly, Plaintiff, individually, and on behalf of the Negligent Misrepresentation Class, seeks damages arising from Defendants' conduct described herein.

WHEREFORE, Plaintiff, individually, and on behalf of the Negligent Misrepresentation Class, prays for an Order as follows:

A.    Finding that this action satisfies the prerequisites for maintenance as a Class Action, as set forth by 735 ILCS 5/2-801, and certifying the Negligent Misrepresentation Class defined herein;

B.    Designating Plaintiff as representative of the Negligent Misrepresentation Class and his undersigned counsel as Negligent Misrepresentation Class Counsel;

C.    Entering judgment in favor of Plaintiff and the Negligent Misrepresentation Class and against Defendants;

D.    Awarding Plaintiff and the Negligent Misrepresentation Class an amount equal to the damages they sustained as a result of Defendants' negligent conduct;

FILED DATE: 7/19/2018 1:42 PM   2018CH09060

E. Awarding Plaintiff and the Negligent Misrepresentation Class reasonable attorneys' fees and costs; and

F. Granting all such further and other relief as the Court deems just and appropriate.

## <u>JURY DEMAND</u>

Plaintiff demands trial by jury on all issues so triable.

Plaintiff ERIK LUNA, individually, and on behalf of all others similarly situated,

By: /s/ Thomas A. Zimmerman, Jr.
   Thomas A. Zimmerman, Jr.
   *tom@attorneyzim.com*
   Sharon A. Harris
   *sharon@attorneyzim.com*
   Matthew C. De Re
   *matt@attorneyzim.com*
   Nickolas J. Hagman
   *nick@attorneyzim.com*
   **ZIMMERMAN LAW OFFICES, P.C.**
   77 W. Washington Street, Suite 1220
   Chicago, Illinois 60602
   (312) 440-0020 telephone
   (312) 440-4180 facsimile
   Firm I.D. No. 34418

   Counsel for Plaintiff, the putative Collective Group, and the putative Classes

FILED DATE: 7/19/2018 1:42 PM   2018CH09060

```
Employee Clock Out
Unit #  7                        03/26/2017
Erik Luna                         04:26 AM

Job: CLOSER
Time in:              2:38 PM
Time out:             4:26 AM
Hours this shift:     13:48
Hours this week:      24:58
Sales:                $0.00
Tipshare:             $0.00
Carry Over Tips:      $0.00
Declared Tips:        $641.00
Charge Tips:          $0.00
*******************************************
*******************************************
This is verification for hours
worked.
Keep this for your records.
```

```
Employee Clock Out
Unit #  7                        03/18/2017
Erik Luna                         03:18 AM

Job: CLOSER
Time in:              4:00 PM
Time out:             3:18 AM
Hours this shift:     11:10
Hours this week:      11:10
Sales:                $0.00
Tipshare:             $0.00
Carry Over Tips:      $0.00
Declared Tips:        $417.00
Charge Tips:          $0.00
*******************************************
+++++++++++++++++++++++++++++++++++++++++++
This is verification for hours
worked.
Keep this for your records.
```

```
Employee Clock Out
Unit #  7                        04/02/2017
Erik Luna                         05:06 AM

Job: CLOSER
Time in:              3:50 PM
Time out:             5:06 AM
Hours this shift:     13:16
Hours this week:      24:36
Sales:                $0.00
Tipshare:             $0.00
Carry Over Tips:      $0.00
Declared Tips:        $693.00
Charge Tips:          $0.00
*******************************************
+++++++++++++++++++++++++++++++++++++++++++
This is verification for hours
worked.
Keep this for your records.
```

```
Employer Clock Out
Unit #  7                        04/01/2017
Erik Luna                         03:25 AM

Job: CLOSER
Time in:              4:05 PM
Time out:             3:25 AM
Hours this shift:     11:20
Hours this week:      11:20
Sales:                $0.00
Tipshare:             $0.00
Carry Over Tips:      $0.00
Declared Tips:        $506.00
Charge Tips:          $0.00
*******************************************
+++++++++++++++++++++++++++++++++++++++++++
This is verification for hours
worked.
Keep this for your records.
```

```
Employee Clock Out
Unit #  7                        04/02/2017
Erik Luna                         05:50 PM

Job: CLOSER
Time in:              10:05 AM
Time out:             5:50 PM
Hours this shift:     07:45
Hours this week:      32:21
Sales:                $0.00
Tipshare:             $0.00
Carry Over Tips:      $0.00
Declared Tips:        $180.00
Charge Tips:          $0.00
*******************************************
+++++++++++++++++++++++++++++++++++++++++++
```

**EXHIBIT 1**

**WELLS HOLDINGS LLC**
1040 W. RANDOLPH STREET
CHICAGO, IL 60607

Direct Deposit Advice

**Check Date**
April 7, 2017

*paylocity*

Voucher Number
2982

FILED DATE: 7/19/2018 1:42 PM    2018CH09060

| Direct Deposits | Type | | Account | Amount |
|---|---|---|---|---|

DIRECT DEPOSIT VOUCHER

**Total Direct Deposits**



10910

Non Negotiable - This is not a check - Non Negotiable

Erik Luna

**Non Negotiable - This is not a check - Non Negotiable**

### WELLS HOLDINGS LLC

Erik Luna                                                                    **Earnings Statement**

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Employee ID | 81 | Fed Taxable Income | 3,166.60 | Check Date | April 7, 2017 | Voucher Number | 2982 |
| Location | 100 | Fed Filing Status | | Period Beginning | March 22, 2017 | Net Pay | 0.00 |
| Hourly | $5.45 | State Filing Status | | Period Ending | April 4, 2017 | | |

| Earnings | Rate | Hours | Amount | YTD |
|---|---|---|---|---|
| CASH TIP | | 0.00 | 2,850.00 | |
| REGULAR | 5.95 | 53.21 | 316.60 | |
| **Gross Earnings** | | **53.21** | **3,166.60** | |

| Taxes | | | Amount | YTD |
|---|---|---|---|---|
| FITW | | | 74.35 | |
| IL | | | 0.00 | |
| MED | | | 45.92 | |
| SS | | | 196.33 | |
| **Taxes** | | | **316.60** | |

| Deductions | Amount | YTD |
|---|---|---|
| CASH TIPS | 2,850.00 | |
| **Deductions** | **2,850.00** | |

| Direct Deposits Type | Account | Amount |
|---|---|---|
| No Direct Deposits | | |

**EXHIBIT 2**

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**COUNTY DEPARTMENT – CHANCERY DIVISION**

FILED DATE: 7/19/2018 1:42 PM  2018CH09060

| | |
|---|---|
| **ERIK LUNA**, individually, and on behalf of all others similarly situated, | ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) )    No. |
| **4C KINZIE INVESTOR LLC** d/b/a Highline Bar & Lounge, et al., | ) ) ) |
| Defendants. | ) ) ) |

## <u>CONSENT TO BECOME A PARTY PLAINTIFF</u>

I, Erik Luna, formerly an employee of one or more of the above-captioned Defendants,

consent to become a party Plaintiff in the above-captioned action.

Dated: 7/17/18

_____
Signature of Former Employee

**EXHIBIT 3**