# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| ERIK LUNA, individually, and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 18-cv-05165 |
| 4C KINZIE INVESTOR LLC, *et al.* | ) ) | |
| Defendants. | ) ) | |

---

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

---

Date: September 11, 2018

Respectfully submitted,

Defendants 4C Kinzie Investor LLC, *et al.*,

By: /s/ Matthew M. Showel

One of their attorneys

Daniel W. Tarpey
David G. Wix
Matthew M. Showel
TARPEY WIX LLC
225 West Wacker Drive, Suite 1515
Chicago, IL 60606
(312) 948-9090
dtarpey@tarpeywix.com
dwix@tarpeywix.com
mshowel@tarpeywix.com

By: /s/ Noah A. Finkel

One of their attorneys

Noah A. Finkel
Cheryl A. Luce
SEYFARTH SHAW LLP
233 South Wacker Drive, Suite 8000
Chicago, Illinois 60606-6448
(312) 460-5000
nfinkel@seyfarth.com
cluce@seyfarth.com

## TABLE OF CONTENTS

TABLE OF AUTHORITIES……………………………………………...………....iii

I.      INTRODUCTION………………………………………………………..1

II.     SUMMARY OF ALLEGED FACTS……………………………..…..…2

III.    LUNA FAILS TO PLEAD THAT BENCHMARK RETAINED
        CUSTOMER TIPS AND VIOLATED THE FLSA, IMWL, CMWO.
        OR IWPCA (COUNTS I – IV)……………………………………………4

IV.     LUNA'S ALLEGATIONS DEFEAT HIS CLAIM FOR CONVERSION (COUNT
        V)…………………………………………………………………………7

V.      LUNA'S TAX CODE CLAIM FAILS (COUNT VI)……………………8

VI.     LUNA'S RICO CLAIM IS WOEFULLY INSUFFICIENT (COUNT VII)………..11

        A.   Luna Does Not Allege the "Conduct" Element……………………11

        B.   The Complaint Fails to Plausibly Allege the Existence of a
             Criminal "Enterprise."……………………………………………12

        C.   The Allegations of Racketeering Activity Are Insufficient
             Under Rule 9(b)……………………………………………………13

             1.  Luna Failed to Plead the Fraudulent Communications with Particularity…14

             2.  The Alleged Communications Were Not Made "In Furtherance"
                 of the Fraud………………………………………………......14

        D.   There is No "Pattern" of Racketeering Activity…………………15

VII.    DEFENDANTS ARE LEGALLY INCAPABLE OF CONSPIRING WITH
        EACH OTHER (COUNT VIII)………………………………………......16

VIII.   LUNA CANNOT STATE A CLAIM FOR FRAUD (COUNT IX)…………………18

VIII.   LUNA'S NEGLIGENT MISREPRESENTATION CLAIM FAILS
        (COUNT X)……………………………………… …………………......19

CONCLUSION………………………………………………………................20

# <u>TABLE OF AUTHORITIES</u>

**Cases**

*Adcock v. Brakegate, Ltd.*, 164 Ill. 2d 54, 62-63 (1994) .............................................................. 16

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) .................................................................................. 5

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ............................................................ 5

*Bolling v. PP&G Inc.*, 2015 WL 9255330, at *6 (D. Md. Dec. 17, 2015) .................................... 9

*Bonanno v. La Salle & Bureau County R.R. Co.*, 87 Ill. App. 3d 988, 995 (3rd Dist. 1980) ........ 17

*Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502, 507 (7th Cir. 2007) ............................... 9

*Buckner v. Atlantic Plant Maintenance, Inc.*, 182 Ill. 2d 12, 18-19 (1998) .................................. 17

*Carbone v. Zen 333 Inc.*, No. 2:16-CV-0108-DCN, 2016 WL 7383920, at *7–8 (D.S.C. Dec. 21, 2016) ............................................................................................................................................ 9, 11

*Cohen v. American Security Insurance Co.*, 735 F.3d 601, 613 (7th Cir. 2013) ......................... 18

*Dargo v. Clear Channel Communs., Inc.,* No. 07 C 5026, 2008 U.S. Dist. LEXIS 42117, at *11 (N.D. Ill. May 28, 2008) ........................................................................................................... 20

*Dean v. 1715 Northside Drive, Inc.*, 224 F. Supp.3d 1302, 1310 (N.D. Ga. 2016) ..................... 9

*Dougherty v. Akzo Nobel Salt, Inc.*, 47 F. Supp. 2d 989, 992 (N.D. Ill. 1999) ............................ 20

*Fidelity National Title Insurance Co. v. Intercounty National Title Insurance Co.*, 412 F.3d 745, 749 (7th Cir. 2005) .................................................................................................................... 13

*Flextronics Intl. P.A., Inc. v. Copas*, 327 F.Supp. 2d 934, 936 (N.D. Ill. 2004) ......................... 16

*Goren v. New Vision Int'l, Inc.*, 156 F.3d 721, 726 (7th Cir. 1988) ..................................... 11, 13

*Green v. Morningstar, Inc.*, 2018 U.S. Dist. LEXIS 43245, at *28-30 ........................................ 15

*Guaranteed Rate, Inc. v. Barr*, 912 F. Supp.2d 671, 686-87 (N.D. Ill. 2012) ............................ 12

*Henry v. Synchrony Bank*, No. CV 3:16-5999, 2016 WL 6871269, at *2 (S.D. W.Va. Nov. 21, 2016) ........................................................................................................................................... 9

*Hoover v. Country Mutual Insurance Co.*, 2012 IL App (1st) 110939, ¶ 45 ................................ 20

*Jennings v. Auto Meter Prods.*, 495 F.3d 466, 472-73 (7th Cir. 2007) ................................ 15, 16

*Katzman v. Essex Waterfront Owners LLC*, 660 F.3d 565, 569 (2d Cir. 2011) ............................ 9

*Kennedy v. Venrock Associates*, 348 F.3d 584, 592 (7th Cir. 2003) ........................................... 19

*Knorr Brake Corp. v. Harbil, Inc.*, 738 F.2d 223, 230 n.10 (7th Cir. 1984) ............................... 17

*Leon v. Tapas & Tintos, Inc.*, 51 F. Supp.3d 1290, 1297–98 (S.D. Fla. 2014) ........................... 9

*Lundy v. Catholic Health Sys. of Long Island, Inc.*, 711 F.3d 106, 119 (2nd Cir. 2013) ....... 14, 15

*McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) ................................................. 5

*Midwest Grinding Co. v. Spitz*, 976 F.2d 1016, 1022 (7th Cir. 1992) .......................................... 15

*Moorman Mfg. Co. v. National Tank Co.* 91 Ill.2d 69, 435 N.E.2d 443 (1982) ........................... 20

*Mould v. NJG Food Serv. Inc.*, 37 F. Supp. 3d 762 (D. Md. 2014) ............................................. 10

*Nakahata v. New York-Presbyterian Healthcare Sys.*, 723 F.3d 192, 204 (2nd Cir. 2013) ......... 14

*Nassis v. LaSalle Exec. Search, Inc.*, No. 16-CV-9445, 2018 WL 2009502, at *9 (N.D. Ill. Apr. 30, 2018) ..................................................................................................................................... 4

*Pirelli Armstrong Tire Corp. Retiree Medical Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 442 (7th Cir. 2011) ...................................................................................................................... 14, 19

*Pizzo v. Bekin Van Lines Co.*, 258 F.3d 629, 633 (7th Cir. 2001) ............................................... 16

*Podany v. Robertson Stephens, Inc.*, 250 F. Supp.2d 375, 378 (S.D.N.Y. 2004) ........................ 6

*Roberts v. Apple Sauce, Inc.*, 945 F. Supp.2d 995, 999 (N.D. Ind. 2013) .................................. 4

*Roderick Dev. Inv. Co., Inc. v. Cmty. Bank of Edgewater*, 282 Ill.App.3d 1052, 1057 (1st Dist. 1996) ............................................................................................................................................ 7

*Roppo v. Travelers Commer. Ins. Co.*, 869 F.3d 568, 588-89 (7th Cir. 2017) .............................. 11

*Saleh v. Merchant*, 2018 U.S. Dist. LEXIS 1704, at *15 (N.D. Ill. Jan. 4, 2018) ........................ 12

*U.S. v. Fior D'Italia, Inc.*, 536 U.S. 238, 243-51 (2002) ...................................................................... 7

*United Food & Comm. Worker Unions & Emplrs. Midwest Health Ben. Fund v. Walgreen Co.*,
    719 F.3d 849, 854 (7th Cir. 2013) ......................................................................................... 12

*University of Chicago Hosp. v. United Parcel Service*, 231 Ill. App. 3d 602, 605 (1st Dist. 1992)
    ................................................................................................................................................... 20

*Van Winkle v. Owens-Corning Fiberglas Corp.*, 291 Ill. App. 3d 165, 173 (4th Dist. 1997) ....... 17

*Vicom, Inc. v. Harbridge Merchant Servs.*, 20 F.3d 771, 777 (7th Cir. 1994) ................. 13, 14, 16

*Villareal v. El Chile, Inc.*, 776 F. Supp.2d 778, 784 (N.D. Ill. 2011) ............................................. 4

*Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 573 (7th Cir. 2012) ........................................ 19

*Williams v. Affinion Group, LLC*, 889 F.3d 116, 124 (2d Cir. 2018) .................................... 13, 14

**Statutes**

18 U.S.C. § 1341 and § 1343 .............................................................................................................. 13

18 U.S.C. 1962(c) ................................................................................................................................ 11

26 C.F.R. § 31.6205−1(c)(4) ................................................................................................................ 6

26 U.S.C. § 3102(c) ............................................................................................................................... 7

26 U.S.C. § 3402(k) ............................................................................................................................... 7

26 U.S.C. § 6001 ................................................................................................................................... 6

26 U.S.C. § 7434 ...................................................................................................................... 8, 10, 11

26 U.S.C. §§ 3121(q), 3401(f) .............................................................................................................. 6

29 U.S.C. § 203(m) ................................................................................................................................ 4

29 U.S.C. §203(r)(1) ............................................................................................................................ 17

**Rules**

Federal Rule of Civil Procedure 8(a) ................................................................................................. 13

Federal Rule of Civil Procedure.9(b) ......................................................... 9, 10, 11, 13, 14, 18, 19

Federal Rule of Civil Procedure 12(b)(6) ........................................................................................ 1, 2

Defendants move to dismiss Plaintiff's minimum wage law and tip income claims under the Fair Labor Standards Act ("FLSA"), Illinois Minimum Wage Law ("IMWL"), Illinois Wage Payment and Collection Act ("IWPCA"), and Chicago Minimum Wage Ordinance ("CMWO"). Racketeer Influenced and Corrupt Organizations Act ("RICO") and the Illinois common law of civil conspiracy, fraud, and negligent misrepresentation pursuant to Federal Rule of Civil Procedure 12(b)(6) because Plaintiff asserts only speculative allegations supporting his various theories for relief and fails to state a claim upon which relief may be granted.

## I.  INTRODUCTION

Defendant Four Corners currently owns and operates 15 restaurants and bars in Chicago, one of which is Defendant Wells Holdings, LLC, d/b/a Benchmark Bar and Grill. Cmplt. ¶¶ 13, 26, 47. Plaintiff Erik Luna was a bartender at Benchmark, *id.* ¶ 57, who claims that Benchmark violated the FLSA and state and local wage-hour laws that require employers to pay a minimum hourly wage and to pay tipped employees all tips that they receive. Critically, Luna admits that he was paid the tipped employee minimum hourly wage and that he received the amount of tips he declared receiving from customers. Because Luna fails to state facts that in any way suggest that Benchmark withheld tips, failed to pay him minimum wage, or otherwise violated the FLSA or Illinois law, the Complaint should be dismissed.

Luna bases his theory for relief on his observation that the tips Benchmark reported on his IRS W-2 form were greater than the tips that he received. Luna admits two facts—repeatedly—that doom his claims. First, he admits that tips he received at the end of his shifts at Benchmark were equal to all the tips he declared. Cmplt. ¶¶ 50, 60. Second, Luna admits that he does not understand why the tips Benchmark reported for him on his W-2 were greater than what he received. He states, "The precise reason for the discrepancy between the amount of [reported tips] and the amount of Take Home Cash that Plaintiff and Servers were actually given and

1

allowed to keep *is unknown at this time*."(Cmplt. ¶ 83, emphasis added) Yet Luna asks the Court

to assume (only for the purposes of his wage-hour claims) that Benchmark violated the FLSA

and state and local law by failing to pay him tips, even though he admits that he received all tips

he reported. Luna pleads no facts to support his claims that Benchmark failed to pay him

customer tips. Rather, those claims are unabashedly hypothetical and ask the Court to reach the

conclusion that Benchmark must have been keeping customer tips based on Luna's own

assumptions after reviewing his paystubs and not on any known or pleaded facts. Luna's

speculative theory of liability must be rejected pursuant to Rule 12(b)(6). As the paystubs

attached to his Complaint demonstrate, Benchmark imputed undeclared tip income to Luna for a

lawful and important reason: taxes. Luna's FLSA and state and local wage-and-hour claims

therefore fail not only because he admits he lacks knowledge of facts supporting them, but also

because the evidence he attaches to his Complaint demonstrate that the difference is attributable

to Benchmark's tax reporting and is not actionable.

Luna also asserts claims under the Racketeer Influenced and Corrupt Organizations Act

("RICO"), the tax code, and the Illinois common law of civil conspiracy, fraud, and negligent

misrepresentation based on an entirely opposite assumption than the one that forms the basis of

his wage-hour claims: that the amount of tips reported on his pay and tax statements was

inaccurate and Benchmark overstated the amount of taxable income that he received. These

claims, too, are openly speculative and insufficient under federal pleading standards.

## II. SUMMARY OF ALLEGED FACTS

As a bartender at Benchmark, Luna was paid through a combination of hourly wages and

tips he received from customers. Cmplt. ¶ 48. Benchmark took a tip credit toward its minimum

wage obligation for Luna and paid him a lower hourly wage according to the tip credit provisions

of the FLSA, IMWL, and CMWO. *Id.* ¶¶ 80-81. Luna does not dispute that the hourly wages he

received were equal to or greater than the tipped employee minimum hourly wage required by those statutes. The paystubs he attaches to his Complaint show that his hourly rate was equal to the minimum wage for tipped employees at the time. Nor does Luna plead any other facts indicating that Benchmark was not entitled to take the tip credit. *Id.* ¶ 67, Ex. 2.

In addition to his hourly wages, Luna received tips from the customers he served. Under Benchmark's tip-out system, Luna was directly tipped in cash by customers and declared those cash tips in Benchmark's point-of-sale ("POS") system at the end of his shift on a daily basis. *Id.* ¶ 49. Luna took home all of the cash tips that he declared. *Id.* ¶¶ 50, 60.

As the paystubs and allegations in the Complaint show, Benchmark imputed additional cash tip income to Luna for tax purposes. *Id.* ¶ 56, noting that the amount of tip income reported on Luna's W-2 statements reflects the amount of tip income reported on his paystubs. For the pay period of March 22 to April 4, 2017, Luna reported receiving $2,437.00 in tips that he declared, but on his paystubs, Benchmark reported that Luna received $2,850.00 in tips and Benchmark withheld taxes from his pay according to the greater imputed amount. *Id.* ¶ 67, Ex. 2.

Luna asserts that though he was paid all tips he reported, *id.* ¶¶ 50, 60, and that he does not know why the amount of tips that he declared in Benchmark's POS system does not equal the amount of tips Benchmark imputed to him on his pay and tax statements, Luna assumes that Benchmark retained customer tips from his pay for the purposes of his FLSA, IMWL, CMWO, and IWPCA claims in Counts I-IV of the Complaint. *Id.* ¶¶ 83-86. But for the purposes of his claims that Benchmark violated RICO and the Illinois common law of civil conspiracy, fraud, and negligent misrepresentation, Luna assumes the opposite: that Benchmark did not illegally retain customer tips from his pay but instead over-reported the amount of tips that he received and forced him to pay tax on income that he did not actually received. *Id.* ¶¶ 100-101.

## III. LUNA FAILS TO PLEAD THAT BENCHMARK RETAINED CUSTOMER TIPS AND VIOLATED THE FLSA, IMWL, CMWO. OR IWPCA (COUNTS I – IV).

To state a claim under the FLSA, Luna must plead facts showing that there was at least one workweek in which he received the tipped employee minimum wage but that Benchmark failed to comply with the tip provisions of the FLSA. *Roberts v. Apple Sauce, Inc*., 945 F. Supp.2d 995, 999 (N.D. Ind. 2013). For purposes of this motion, Luna's IMWL and CMWO claims follow the same analysis as his FLSA claim. *See Villareal v. El Chile, Inc*., 776 F. Supp.2d 778, 784 (N.D. Ill. 2011) (same analysis applies to IMWL and FLSA claims because they are parallel); *Nassis v. LaSalle Exec. Search, Inc*., No. 16-CV-9445, 2018 WL 2009502, at *9 (N.D. Ill. Apr. 30, 2018) (claim under CMWO follows the same analysis as FLSA and IMWL claims). Additionally, because Luna's IWPCA claim is based on Benchmark's alleged agreement to compensate him "at an hourly rate that complied with the applicable minimum wage," Cmplt. ¶ 181, his IWPCA claim is derivative of his minimum wage claim and rises and falls with it. All claims fail because Luna fails to plead that Benchmark violated the minimum wage provisions.

The FLSA allows employers to pay tipped employees a reduced minimum wage. 29 U.S.C. § 203(m). The difference between the standard minimum wage and the reduced minimum wage paid to tipped employees is known as the tip credit. In order to take the tip credit under the FLSA, all tips received by the employee must be retained by the employee. *Id.* Additionally, as of March 23, 2018, the FLSA now prohibits employers from retaining any portion of employees' tips, regardless of whether or not the employer takes a tip credit. *Id.*

Luna's Complaint contains no allegations that Benchmark *actually* retained any customer tips or failed to pay him at least minimum wage. Indeed, Luna admits on multiple occasions that he received all tips that the reported. Cmplt. ¶¶ 50, 60. The gravamen of Luna's wage-hour claims in Counts I, II, III, and IV is that Benchmark reported for tax purposes that his tips were

4

greater than Luna declared he received. Luna does *not* claim that Benchmark retained any tips that he reported; rather, Luna rests his claim for relief on the theory that, because the tips Benchmark reported for him were more than the tips he reported and received, Benchmark must have kept some of the tips or subjected him to higher taxation. Neither theory states a claim.

To the extent Luna claims that Benchmark must have retained some of his tips, Luna's claim is not plausible because he admits repeatedly that he took home all the tips he reported. *Id.* In the face of this damning admission, all Luna can offer is naked speculation that the difference between the amount of tips he took home and the amount of tips reported for tax purposes is attributable to Luna being given more tips than he actually received. Allegations in a complaint "must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A viable complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations omitted). To survive dismissal pursuant to Rule 12(b)(6), plaintiff must include "specific facts to support the legal claims asserted in the complaint." *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011).

Describing the difference between the cash tips that he declared and the tips that were reported on his pay statement, Luna states that the reason for the discrepancy "is unknown at this time." Cmplt. ¶ 83. Luna then asks the Court to make the assumption that the amount of tips reported on his pay statement was the correct amount and that his declared tips somehow failed to account for all of the customer deficient. *Id.* (asking Court to assume that amount of tips on paystubs was "*accurate*," (emphasis in original)). Amazingly, for the purposes of his tax-related claims, Luna then asks the Court to assume that the amount of tips reported on his paystubs was "*inaccurate*" for the purposes of his business tort claims. *Id.* ¶ 100. Luna openly does not know

5

whether he received all of his customer tips and has filed this lawsuit as a way of discovering what happened. Allowing this would be improper. "Discovery is authorized solely for parties to develop the facts in a lawsuit in which a plaintiff has stated a legally cognizable claim, not in order to permit a plaintiff to find out whether he has such a claim." *Podany v. Robertson Stephens, Inc.*, 250 F. Supp.2d 375, 378 (S.D.N.Y. 2004).

To the extent that Luna claims that Benchmark over-reported his income and over-withheld income taxes on tips that Benchmark imputed to him but that he did not declare, Luna fails to state a claim for a wage-hour violation. Withholding taxes from tipped employees beyond what they actually report to their employer is simply not a violation of the minimum wage requirements. "Where an employer withholds taxes from a tipped employee based upon a percentage of sales, rather than on reported tips, a reduction in an employee's net pay may result, but this is not an FLSA violation." Department of Labor Field Operations Handbook § 30d08, *available at* https://www.dol.gov/whd/FOH/FOH_Ch30.pdf.

Benchmark has good reason to ensure that it accurately reports income and withholds taxes from its tipped employees who receive tips via a combination of credit cards and cash. Tips received by employees are treated as wages for the purposes of federal income and Federal Income Contributions Act ("FICA") taxes. 26 U.S.C. §§ 3121(q), 3401(f). The federal tax code contains a set of detailed recordkeeping and income reporting obligations with which all taxpayers—employers and employees alike—are expected to comply. 26 U.S.C. § 6001. For example, employers who determine that they paid "less than the correct amount of tax" are expected to make adjustments to their initially under-reported tax liability and then collect the under-withheld income tax from the employee "on or before the last day of such year by deducting such amount from remuneration of the employee." 26 C.F.R. § 31.6205–1(c)(4). For

tipped employees who fail to report all of their tips, employers, such as Benchmark, can be liable for the employer's share of the FICA tax liability on the undeclared tips in the event of an Internal Revenue Service assessment. *U.S. v. Fior D'Italia, Inc.*, 536 U.S. 238, 243-51 (2002).

Luna incorrectly asserts that employers are prohibited from withholding tip income from employees for tax purposes. Citing sections from the income tax and FICA tax provision of the tax code, 26 U.S.C. § 3102(c) and 26 U.S.C. § 3402(k), Luna insists that employers cannot impute undeclared tip income to employees for tax reporting purposes. Cmplt. ¶ 76) Nothing in these sections contains such a prohibition, and under the IRS's enforcement authority that was approved by the U.S. Supreme Court in *Fior D'Italia*, employers are expected to be liable for their share of those under-reported tips. Thus, Benchmark's decision to impute accurate tip income to Luna (including undeclared tips) for tax purposes was consistent with its obligations under the tax code and ensures that both Luna and Benchmark are complying with their obligations to contribute to federal FICA and income taxes.

## IV. LUNA'S ALLEGATIONS DEFEAT HIS CLAIM FOR CONVERSION (COUNT V).

To state a claim for conversion, "a plaintiff must allege (1) the defendant's unauthorized and wrongful assumption of control, dominion or ownership over the plaintiff's personal property, (2) the plaintiff's right in the property, (3) the plaintiff's right to immediate possession of the property, absolutely and unconditionally, and (4) the plaintiff's demand for possession of the property. *Roderick Dev. Inv. Co., Inc. v. Cmty. Bank of Edgewater*, 282 Ill.App.3d 1052, 1057 (1st Dist. 1996).

Luna alleges that at the end of each shift, before he left, he would calculate what he believed to be the accurate amount of tips that were bestowed upon him by Benchmark's customers, and would accurately log and declare that total calculated amount in Benchmark's POS system. Complt. ¶59. He was then given "Take Home Cash" in an amount equal to the total

amount of tips he declared in Defendants' POS system and was allowed to keep that Take Home Cash. *Id.* at ¶¶50, 60. These admissions are fatal to Luna's conversion claim because he admits that Benchmark provided him with all the tips he declared. Luna's sole basis for his conversion claim is his purely speculative allegation, without any factual support (and which is at odds with other allegations in the Complaint), that Benchmark received additional tips that were not paid to him. But Luna admits he does not know this and the Complaint is devoid of any legally sufficient allegations that Benchmark received additional tips rightfully belonging to Luna. As explained above, this speculative allegation is not enough to support the necessary elements of conversion that Benchmark assumed unauthorized or wrongful possession of Luna's tips or even that Luna had a right to possession of those tips (as opposed to for tax purposes) if they existed.

Moreover, Luna's allegations that he demanded payment of these alleged additional tips, which is a necessary element of conversion, is insufficient to support his conversion claim. Although Luna alleges that he made a demand for his tips at the end of his shift, that demand related to his Take Home Cash, which he readily admits he received, but Luna fails to allege that after receiving his paystubs, he made a demand for the difference between what he received in Take Home Cash and the amount stated on the pay stub.

## V. LUNA'S TAX CODE CLAIM FAILS (COUNT VI).

Luna claims that Benchmark committed fraud by over-reporting his tip income to the IRS and seeks a private suit pursuant to 26 U.S.C. § 7434, which provides that "[i]f any person willfully files a fraudulent information return with respect to payments purported to be made to any other person, such other person may bring a civil action for damages against the person so filing such return." This section was enacted to address the fact that "[s]ome taxpayers may suffer significant personal loss and inconvenience as the result of the IRS receiving fraudulent information returns, which have been filed by persons intent on either defrauding the IRS or

harassing taxpayers.'" *Katzman v. Essex Waterfront Owners LLC*, 660 F.3d 565, 569 (2d Cir. 2011) (quoting H.R. Rep. 104–506, at 37). To establish a claim for tax fraud under Section 7434, Luna must establish: (1) Benchmark issued an information return; (2) the information return was fraudulent; and (3) Benchmark willfully issued a fraudulent information return. *Leon v. Tapas & Tintos, Inc*., 51 F. Supp.3d 1290, 1297–98 (S.D. Fla. 2014) (dismissing § 7434 claim). Courts have interpreted the term "willfully" as requiring "proof of deceitfulness or bad faith in connection with filing an information return." *Dean v. 1715 Northside Drive, Inc*., 224 F. Supp.3d 1302, 1310 (N.D. Ga. 2016). Luna's tax fraud claim must be dismissed because (1) he failed to plead fraudulent conduct with particularity as required by Fed. R. Civ. P. 9(b); and (2) he failed to plead facts showing that Benchmark had an "intent to deceive."

Rule 9(b)'s heightened pleading standard applies to § 7434 fraud claims so Luna "must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b); *Carbone v. Zen 333 Inc*., No. 2:16-CV-0108-DCN, 2016 WL 7383920, at *7–8 (D.S.C. Dec. 21, 2016) (applying Rule 9(b) heightened pleading standard to  § 7434 claim); *Henry v. Synchrony Bank*, No. CV 3:16-5999, 2016 WL 6871269, at *2 (S.D. W.Va. Nov. 21, 2016) (same); *Bolling v. PP&G Inc*., 2015 WL 9255330, at *6 (D. Md. Dec. 17, 2015) (same). "This heightened pleading requirement is a response to the great harm to the reputation of a business firm or other enterprise a fraud claim can do." *Borsellino v. Goldman Sachs Grp., Inc*., 477 F.3d 502, 507 (7th Cir. 2007) "Thus, a plaintiff claiming fraud or mistake must do more pre-complaint investigation to assure that the claim is responsible and supported, rather than defamatory and extortionate." *Id*. "A complaint alleging fraud must provide the who, what, when, where, and how." *Id*.

Luna does not clearly allege that Benchmark committed fraud when it reported Luna's income in W-2 statements, let alone provide the requisite "who, what, when, where, and how."

9

As discussed above, Luna admits he does not know if the amounts Benchmark reported were accurate and, in support of his wage-hour claims, conjectures that they were "accurate" but that Benchmark failed to remit customer tips to Luna. Cmplt. ¶ 83. Taking a 180-degree turn in Counts VI through X, Luna assumes (without knowing) that his W-2 statements were "inaccurate" and "overstated" the wages he earned. *Id.* ¶¶ 228-229. Luna's admitted lack of knowledge about which set of facts is correct (that the W-2s were accurate or inaccurate) precludes him from meeting the heightened pleading standard. It is implausible to infer from the bare facts asserted in the Complaint that Benchmark engaged in tax fraud. On the contrary, the most obvious and plausible conclusion to be drawn from the evidence attached to the Complaint of Luna's self-reported tip-outs, compared with the income reported on Luna's paystubs, is that Benchmark imputed tip income to Luna because he was taking home cash tips without declaring them. The allegations and evidence incorporated into Luna's Complaint do not paint a picture of fraudulent activity, but rather Benchmark's attempts to report Luna's income truthfully and accurately. Reporting estimated tip income on tax statements for employees who are suspected to have taken home undeclared cash tips is not tantamount to tax fraud. *Mould v. NJG Food Serv. Inc.*, 37 F. Supp. 3d 762 (D. Md. 2014) (defendants' approximation of plaintiff's income from tips for tax purposes as 10% of cash sales was not actionable 26 U.S.C. § 7434).

Even assuming that Luna pleaded facts showing that Benchmark overstated his income on his tax statements (which he does not), the Complaint is devoid of any specific facts showing that Benchmark acted with any intent to deceive the IRS by allegedly overstating Luna's tip income. "In the tax context, fraud requires 'intentional wrongdoing' and an 'intent to deceive.'" *Mould*, 37 F. Supp. 3d at 777. "It is true that the second sentence of Rule 9(b) allows conclusory allegations of defendant's intent to deceive, but the Rule nevertheless requires [Luna] to allege

with particularity what [Benchmark] obtained through [its] fraudulent statements." *Carbone*

2016 WL 7383920, at *8 (dismissing claim that defendants engaged in a fraudulent scheme

under 26 U.S.C. § 7434 where the complaint did not indicate why defendants over-reported

plaintiffs' tip earnings). Luna's Complaint does not provide any indication of why Benchmark

overstated Luna's tip earnings. Again, Luna speculates as to why Benchmark may have

defrauded the IRS, but *explicitly* admits that he does not know what Benchmark obtained from

overstating his tip earnings. In Paragraph 239 of his Complaint, Luna states:

> ***Although the precise mechanism by which Defendants benefitted from these practices is unknown, it can be proven through discovery after a review of Defendants' internal records and financial statements.***

Luna improperly uses this lawsuit to find out whether Benchmark intended to defraud the IRS.

Falling far short of pleading his tax fraud claim with particularity, the claim should be dismissed.

## VI. LUNA'S RICO CLAIM IS WOEFULLY INSUFFICIENT (COUNT VII).

The Complaint does not establish a RICO claim. Luna asserts his RICO claim under §

1962(c). Complt. ¶ 251; 18 U.S.C. 1962(c). To state a claim under § 1962(c), Plaintiff must show

(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity. *Roppo v.

Travelers Commer. Ins. Co*., 869 F.3d 568, 588-89 (7th Cir. 2017). Allegations of fraud in a

RICO complaint are subject to the heightened pleading requirements of Federal Rule of Civil

Procedure 9(b). *Goren v. New Vision Int'l, Inc.*, 156 F.3d 721, 726 (7th Cir. 1988).

### A. Luna Does Not Allege the "Conduct" Element.

To establish the "conduct" element of a claim under § 1962(c), Luna must allege that the

defendant "participate[d] in the operation or management of the enterprise." *Goren*, 156 F. 3d at

727. "[M]ere participation in the activities of the enterprise is insufficient." *Id.* Luna alleges that

Benchmark committed mail and wire fraud by filing W-2s that misstated his tip income and that

all of the named Defendants, together, constitute a RICO enterprise. *Id.* at ¶¶ 257, 259, 275.

The Complaint does not, however, contain any allegations that Benchmark participated in the management of the alleged enterprise. Nor is there any allegation that Benchmark used the alleged enterprise to carry out its scheme. *Saleh v. Merchant*, 2018 U.S. Dist. LEXIS 1704, at *15 (N.D. Ill. Jan. 4, 2018) (complaint does not "permit a plausible inference that the cross defendants used the enterprise itself to carry out the object of their alleged scheme"). Therefore, Count VII fails to establish the first element for a claim under § 1962(c).

**B. The Complaint Fails to Plausibly Allege the Existence of a Criminal "Enterprise."**

Luna's Complaint contains a conclusory allegation that all named Defendants constitute a RICO enterprise, Complt. ¶ 257, but does not establish a massive "shadow enterprise" consisting of more than thirty different entities/individuals. *United Food & Comm. Worker Unions & Emplrs. Midwest Health Ben. Fund v. Walgreen Co*., 719 F.3d 849, 854 (7th Cir. 2013). A RICO enterprise must have three features: a common purpose, relationships among those associated with it, and longevity. *Walgreen Co*., 719 F.3d at 854. The members of the enterprise must have an interest in the alleged scheme beyond their individual interests. *Guaranteed Rate, Inc. v. Barr*, 912 F. Supp.2d 671, 686-87 (N.D. Ill. 2012). A "normal commercial relationship" is insufficient to create a RICO enterprise. *Walgreen Co*., 719 F.3d at 854.

Luna's Complaint has no allegations regarding common purpose or longevity or that all of the thirty-some businesses and individuals "joined together to create a distinct entity *for purposes of*" issuing inaccurate W-2s." *Walgreen Co*., 719 F.3d at 854 (emphasis added). Likewise, there are no allegations that the enterprise as a whole benefited from Benchmark' issuance of W-2s. For example, the complaint does not explain how the other businesses, with separate tax obligations and employees, benefitted from Benchmark' issuing supposedly

inaccurate W-2s. To the contrary, Luna concedes that "the precise mechanism by which Defendants benefitted from these practices is *unknown*." Cmplt. ¶ 336 (emphasis added).

The Complaint does not address the longevity of the enterprise, even in a conclusory manner. The Complaint thus fails to allege "enterprise" and Count VII fails as a matter of law.

### C.  The Allegations of Racketeering Activity Are Insufficient Under Rule 9(b).

Luna predicates his RICO claim on allegations of mail and wire fraud under 18 U.S.C. § 1341 and § 1343, respectively. Complt. ¶¶ 255-56. Luna alleges that Benchmark committed mail and wire fraud by filing W-2s that misstated his tip income. *Id.* at ¶¶ 259, 275. To establish the predicate mail or wire fraud, Luna must allege (i) a scheme to defraud (ii) to get money or property (iii) furthered by the use of interstate mail or wires. *Williams v. Affinion Group, LLC*, 889 F.3d 116, 124 (2d Cir. 2018). Moreover, "in a multiple defendant case, Rule 9(b) requires a RICO plaintiff to plead sufficient facts to notify *each defendant* of his alleged participation in the scheme. *Goren*, 156 F.3d at 726 (emphasis added). The allegations of mail and wire fraud in this case fall well short of the heightened pleading standards of Rule 9(b). *Goren*, 156 F.3d at 726; *Vicom, Inc. v. Harbridge Merchant Servs.*, 20 F.3d 771, 777 (7th Cir. 1994).[1] Moreover, the allegations, even if assumed to be sufficient, do not establish mail or wire fraud.

---

[1] The Seventh Circuit suggested that the plaintiff's 119-page, 385-paragraph complaint may have warranted dismissal with prejudice. *Vicom,* 20 F. 3d at 776. "Vicom's confusing, redundant, and seemingly interminable amended complaint violated the letter and the spirit of Rule 8(a)… the district court should have given more serious consideration to dismissing Vicom's amended complaint with prejudice." *Id.* The same analysis applies to Luna's 100-page, 367-paragraph complaint in this case. Indeed, sections of the Complaint containing multiple paragraphs, spanning more than a page, are repeated in nearly every count. *See also Fidelity National Title Insurance Co. v. Intercounty National Title Insurance Co.*, 412 F.3d 745, 749 (7th Cir. 2005) ("Fidelity's 52-page complaint with its 177 numbered paragraphs is sprawling, confusing, redundant—in short a mess. And a district judge has the authority to dismiss a complaint because it is confusing").

### 1. Luna Failed to Plead the Fraudulent Communications with Particularity.

To establish wire or mail fraud, a plaintiff must state the time, place, speaker, content, and method of the alleged communications constituting the fraud. *Vicom*, 20 F. 3d at 777. "The complaint must detail the specific statements that are false or fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Williams*, 889 F.3d at 124. In this case, Luna does not allege the time, place and content of the alleged communications constituting the fraud. Nor are there any allegations in the Complaint as to how the other Defendants participated in the alleged fraud.

Additionally, "a plaintiff generally cannot satisfy the particularity requirement of Rule 9(b) with a complaint that is filed on information and belief." *Pirelli Armstrong Tire Corp. Retiree Medical Benefits Trust v. Walgreen Co*., 631 F.3d 436, 442 (7th Cir. 2011). Luna alleges fraudulent intent based only on "information and belief." Cmplt. ¶ 271. Luna concedes, however, that "the precise mechanism by which Defendants benefitted from these practices is unknown." *Id.* at ¶ 336. These allegations are insufficient under Rule 9(b), and thus should be dismissed.

### 2. The Alleged Communications Were Not Made "In Furtherance" of the Fraud.

As a matter of law, the W-2s and paystubs are insufficient to state a claim for mail or wire fraud because they explicitly revealed—rather than concealed—Benchmark' alleged scheme. On similar facts to this case, the Second Circuit has held that a document that reveals, rather than conceals, an alleged wage-and-hour scheme does not "further" the scheme. *Lundy v. Catholic Health Sys. of Long Island, Inc.*, 711 F.3d 106, 119 (2nd Cir. 2013); *Nakahata v. New York-Presbyterian Healthcare Sys.*, 723 F.3d 192, 204 (2nd Cir. 2013).

In *Lundy,* 711 F.3d at 118, and *Nakahata*, 723 F.3d at 204, the Second Circuit affirmed dismissal of employment-related RICO claims. The plaintiffs alleged that the defendants violated the mail fraud statute by mailing paychecks that misleadingly stated that that the plaintiffs had

14

been fully compensated for their work. *Id.* The court stated that "the mailing of paystubs cannot further the fraudulent scheme because the paystubs would have revealed (not concealed) that Plaintiffs were not paid for all of their alleged compensable overtime." *Lundy*, 711 F.3d at 119. "Mailings that thus increase the probability that the mailer would be detected and apprehended do not constitute mail fraud." *Id.* (internal quotes omitted).

The reasoning applies equally in this case. The W-2s did not mislead Luna. They plainly disclosed Benchmark' supposed scheme regarding Luna's tip income. Put differently, the W-2s and paystubs exposed the alleged fraud, rather than perpetuating it. Therefore, the W-2s and paystubs did not "further" the alleged fraud and Luna cannot establish the mail or wire fraud predicates for his RICO claim.

### D. There is No "Pattern" of Racketeering Activity.

Even if the allegations of mail and wire fraud are assumed to be sufficient, the Complaint does not establish a "pattern" of racketeering activity. A "pattern" of racketeering activity requires a minimum of two predicate acts which demonstrate both "relatedness" and "continuity." *Jennings v. Auto Meter Prods.*, 495 F.3d 466, 472-73 (7th Cir. 2007). Under § 1961(c), the Complaint must establish that *each* RICO defendant committed two predicate acts. *Green v. Morningstar, Inc*., 2018 U.S. Dist. LEXIS 43245, at *28-30. "[C]ourts carefully scrutinize the pattern requirement." *Jennings*, 495 F.3d at 472. Courts seek to prevent "RICO's use against isolated or sporadic criminal activity, and to prevent RICO from becoming a surrogate for garden-variety fraud actions properly brought under state law. *Midwest Grinding Co. v. Spitz*, 976 F.2d 1016, 1022 (7th Cir. 1992).

Courts in this Circuit have held repeatedly that a single scheme does not establish the requisite continuity to state a claim under RICO. *Pizzo v. Bekin Van Lines Co.*, 258 F.3d 629,

633 (7th Cir. 2001); *Vicom*, 20 F. 3d at 781; *Flextronics Intl. P.A., Inc. v. Copas*, 327 F.Supp. 2d

934, 936 (N.D. Ill. 2004). A single scheme is insufficient even where it consists of numerous

alleged acts of wire or mail fraud. *Id.* The Seventh Circuit has "repeatedly rejected RICO claims

that rely… heavily on mail and wire fraud allegations to establish a pattern." *Jennings*, 495 F.3d

at 475. Courts look to whether the enterprise engaged in a "variety" of predicate acts. *Id.* at 475;

*Vicom*, 20 F. 3d at 781. Likewise, unspecified harm to unknown third parties is not sufficient to

establish a pattern of racketeering activity at the pleading stage. *Jennings*, 495 F.3d at 475.

In this case, the Complaint alleges a single scheme: to lower Benchmark's tax burden by

mailing inaccurate W-2s.  Complt. ¶ 275. The allegations identify a single alleged victim:

Plaintiff, Erik Luna. All of the predicate conduct—alleged mailing of inaccurate W-2s—was part

of this single scheme. There are no allegations of predicate acts by any of the Defendants other

than Benchmark. Under well-settled precedent, the single alleged scheme, by one member of the

enterprise, against one individual, does not establish a "pattern" of racketeering activity. The

Complaint therefore fails to establish the third element of a RICO claim.

## VII.  DEFENDANTS ARE LEGALLY INCAPABLE OF CONSPIRING WITH EACH OTHER (COUNT VIII)

To state a claim for a civil conspiracy under Illinois law, Luna must plead: (1) a

combination of two or more persons, (2) for the purpose of accomplishing by some concerted

action either an unlawful purpose or a lawful purpose by unlawful means, (3) in the furtherance

of which one of the conspirators committed an overt tortious or unlawful act. *Adcock v.*

*Brakegate, Ltd.*, 164 Ill. 2d 54, 62-63 (1994). Luna's attempt to state a civil conspiracy cause of

action against Defendants must fail because Defendants, which Luna alleges are all controlled by

Menna and Gloor as managers/officers and constitute a "joint enterprise," are not legally capable

of conspiring with each other, and thus, a "combination of two or more persons" does not exist.

Illinois courts uniformly have held that a civil conspiracy cannot exist between a corporation and its agents or employees since the acts of an agent are considered to be the acts of the principal. *Buckner v. Atlantic Plant Maintenance, Inc.*, 182 Ill. 2d 12, 18-19 (1998) ("to the extent that the plaintiff seeks to allege a conspiracy between [agent and principal], that claim must fail."); *Bonanno v. La Salle & Bureau County R.R. Co.*, 87 Ill. App. 3d 988, 995 (3rd Dist. 1980) (employees are agents of the corporation and thus their acts are considered to be the acts of the principal – the corporation); *Van Winkle v. Owens-Corning Fiberglas Corp.*, 291 Ill. App. 3d 165, 173 (4th Dist. 1997) (employees of a corporation cannot conspire with one another.); *Knorr Brake Corp. v. Harbil, Inc.*, 738 F.2d 223, 230 n.10 (7th Cir. 1984) (under Illinois law, a civil conspiracy cannot exist among a corporation and its employees).

Luna has alleged that all Defendants are "interconnected entities" that are part of the Four Corners business "enterprise" pursuant to 29 U.S.C. §203(r)(1) and are jointly and severally liable for the liabilities of the Four Corners enterprise. Complt. ¶¶40, 47, n. 3, 304, n. 9). Luna further alleges that Menna and Gloor are the managers and/or officers of the business entities which comprise the Four Corners enterprise and that Menna and Gloor "exercise significant control, oversight, and authority relative to the entities within the Four Corners enterprise, and the Four Corners enterprise itself." *Id*. at ¶¶37-39. Section 203, in relevant part, defines an "enterprise" as "the related activities performed (either through unified operation or common control) by any person or persons for a common business purpose, and includes all such activities whether performed in one or more establishments or by one or more corporate or other organizational units…." 29 U.S.C. §203(r)(1). As such, Luna alleges that the Defendants, and in particular Menna and Gloor acting as the controlling managers/officers on behalf of the Four Corners enterprise, conspired with each other to defraud Luna and the Conspiracy Class

17

members by filing fraudulent W-2s with the United States government. But because Defendants are alleged to be to have unified operation and/or common control, Plaintiff fails to allege "a combination of two or more persons" for purposes of establishing a properly plead conspiracy cause of action. Accordingly, Count VIII for conspiracy must be dismissed.

## VIII.   LUNA CANNOT STATE A CLAIM FOR FRAUD (COUNT IX).

Luna attempts to plead a common-law fraud claim based on the allegedly inaccurate paystubs and W-2s issued by Benchmark. Complt. ¶¶ 319, 324. The elements of a common-law fraud claim are: (1) a false statement of material fact, (2) defendant's knowledge that the statement was false, (3) defendant's intent that the statement induce the plaintiff to act, (4) plaintiff's reliance upon the truth of the statement, and (5) plaintiff's damages resulting from reliance on the statement. *Cohen v. American Security Insurance Co*., 735 F.3d 601, 613 (7th Cir. 2013). Of course, a common-law fraud claim is subject to the heightened pleading standings of rule 9(b). *Id.* The Complaint does not establish any of the necessary elements.

First, the Complaint fails to plead facts showing that Benchmark made any false statements for the reasons stated in Section IV above. To the contrary, Luna admittedly does not know whether the W-2s and paystubs misrepresented Benchmark's receipt of customer tips payable to Luna. Cmplt. ¶¶ 83 ("The precise reason for the discrepancy between the amount of [reported tips] and the amount of Take Home Cash that Plaintiff and Servers were actually given and allowed to keep is unknown at this time."

Second, there is no allegation that Benchmark believed the information in the W-2s and paystubs to be inaccurate or intended to mislead Luna. To the contrary, there is a vague allegation, "on information and belief," that the W-2s and paystubs, were "part of a willful scheme." Complt. ¶ 333. Luna concedes, however, that "the precise mechanism by which

18

Defendants benefitted from these practices is unknown." *Id.* at ¶ 336. "[A] plaintiff generally cannot satisfy the particularity requirement of Rule 9(b) with a complaint that is filed on information and belief." *Pirelli Armstrong*, 631 F.3d at 442.

Third, it is unclear how Benchmark could have induced Luna to act by sending him W-2s and paystubs and, in any event, there are no such allegations in the Complaint. The Complaint thus fails to establish the second and third elements of a fraud claim.

Fourth, the complaint does not allege reasonable reliance. Luna's conclusory allegations that he "reasonably believed that the information in the W-2s issued by Defendants was accurate, and relied upon that information" fail to plead facts showing that he did in fact rely on the W-2s. Cmplt. ¶ 329. "There is no actionable fraud without reasonable reliance, and reliance cannot be reasonable when it presupposes a failure to read clear language." *Kennedy v. Venrock Associates*, 348 F.3d 584, 592 (7th Cir. 2003). Thus, Count IX should be dismissed.

## IX. LUNA'S NEGLIGENT MISREPRESENTATION CLAIM FAILS (COUNT X).

Like Luna's common-law fraud and RICO claims, his negligent misrepresentation claim is premised on allegedly inaccurate W-2s and paystubs issued by Benchmark. Complt. ¶ 351, 354. "Negligent misrepresentation involves the same elements as fraudulent misrepresentation, except that" the defendant was negligent in failing to ascertain the truth of his statement; and "the defendant must have owed the plaintiff a duty to provide accurate information." *Wigod v. Wells Fargo Bank, N.A*., 673 F.3d 547, 573 (7th Cir. 2012).

Illinois recognizes a duty to communicate accurate information in only two circumstances: first, where the information results in physical injury to a person or harm to property; and, second, "where one is in the business of supplying information for the guidance of others in their business transactions." *Hoover v. Country Mutual Insurance Co*., 2012 IL App

(1st) 110939, ¶ 45. "[N]egligent misrepresentation actions are almost universally limited to situations involving a defendant who… supplies information for the guidance of others in their business relations with third parties." *Id.* Information that is ancillary to the parties' relationship will not support a claim for negligent misrepresentation. *Id.* at ¶ 47.

Luna's negligent misrepresentation claim fails for several reasons. First, the *Moorman* doctrine prohibits negligent misrepresentation claims against an employer for purely economic harm. *University of Chicago Hosp. v. United Parcel Service*, 231 Ill. App. 3d 602, 605 (1st Dist. 1992) (citing *Moorman Mfg. Co. v. National Tank Co.* 91 Ill.2d 69, 435 N.E.2d 443 (1982)). Moreover, "Illinois does not recognize a cause of action for negligent misrepresentation in the employment context." *Dargo v. Clear Channel Communs., Inc.,* No. 07 C 5026, 2008 U.S. Dist. LEXIS 42117, at *11 (N.D. Ill. May 28, 2008). "While other jurisdictions may permit the tort of negligent misrepresentation in employment situations, Illinois does not." *Dougherty v. Akzo Nobel Salt, Inc*., 47 F. Supp. 2d 989, 992 (N.D. Ill. 1999). Additionally, as described with respect to Luna's fraud claims, the Complaint does not and cannot establish any misrepresentation or reasonable reliance. Finally, the Complaint stablishes that Benchmark is not in the basis of providing tax information to Luna for guidance in his business relations with third parties. *Hoover*, 2012 IL App (1st) 110939, ¶ 45. Rather, Benchmark operates a tavern. Complt. ¶ 13.

## CONCLUSION

For the foregoing reasons, Luna's claims fail to state a claim upon which relief may be granted and the Complaint should be dismissed in its entirety, *with prejudice*.