**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| ERIK LUNA, individually, and on behalf of all others similarly situated, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Case No. 18-cv-05165 |
| 4C KINZIE INVESTOR LLC, *et al.* | ) ) ) |
| Defendants. | ) |

**REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**


Date: November 30, 2018            Respectfully submitted,

                                                            Defendants 4C Kinzie Investor LLC, *et al.*,

By: /s/ Matthew M. Showel             By: /s/ Noah A. Finkel
      One of their attorneys                   One of their attorneys

      Daniel W. Tarpey                          Noah A. Finkel
      David G. Wix                               Cheryl A. Luce
      Matthew M. Showel                    SEYFARTH SHAW LLP
      TARPEY WIX LLC                       233 South Wacker Drive, Suite 8000
      225 West Wacker Drive, Suite 1515      Chicago, Illinois 60606-6448
      Chicago, Illinois 60606                  (312) 460-5000
      (312) 948-9090                          nfinkel@seyfarth.com
      dtarpey@tarpeywix.com               cluce@seyfarth.com
      dwix@tarpeywix.com
      mshowel@tarpeywix.com

In their opening brief, Defendants explained that Luna, openly, does not know the facts that entitle him to the relief he asks for in the Complaint. Specifically, he does not know why the amount of tips that he declared in Benchmark's POS system does not equal the amount of tips Benchmark imputed to him on his pay and tax statements—facts that are essential to his ability to recover on any one of his claims. And yet Luna has filed a class action against Benchmark, along with 32 other corporate defendants and two individual defendants, accusing them of ten separate counts of serious wrongdoing that include fraud, conspiracy, and wage-hour law violations. Luna does not argue in his opposition to Defendants' motion to dismiss that he somehow pleaded the facts that are necessary to succeed on these claims. Nor can he; in fact, he repeats again and again in his Complaint that the reason for the discrepancy "is unknown at this time." (Cmplt. ¶¶ 83,99.) Rather, the primary argument that Luna advances in opposition to Defendants' motion to dismiss is that he is allowed under Rule 8(d) to assert claims "alternatively or hypothetically," and so he is somehow saved from the "threshold requirement of Rule 8(a)(2) that the plain statement [of the claim] possess enough heft to show that the pleader is entitled to relief." *Bell Atlantic v. Twombly*, 550 U.S. 544, 557 (2007).

Luna asks the Court to take Rule 8(d) too far. True, Rule 8(d) allows a plaintiff to assert claims that rely on inconsistent legal theories (for example, a breach of contract claim that requires proof of an agreement and a quasicontractual claim that requires proof that there was no agreement). In such cases, the facts could show that the parties entered a legal contract, and so the plaintiff can succeed on the contract claim; but if the facts ultimately show that there was no legal contract, the plaintiff can still succeed on a quasicontractual claim. *See, e.g.*, *DeGeer v. Gillis*, 707 F. Supp. 2d 784, 797 (N.D. Ill. 2010). A plaintiff can assert both theories in the alternative so long as the facts that form the bases of the claims are be consistent within the

complaint. But even the cases Luna cites clarify that "complaints that premised on directly opposing *facts*" (as opposed to inconsistent legal theories) fail federal pleading standards. *Dikcis v. Indopco, Inc.*, No. 96 C 5526, 1997 WL 211218, at *11 (N.D. Ill. Apr. 18, 1997) (emphasis added, cited by Luna at p. 4). While inconsistent legal theories are permitted, "our pleading rules do not tolerate factual inconsistencies in a complaint." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1086 (7th Cir. 2008). Even where inconsistent allegations are pleaded in different counts, "the court cannot ignore the allegations." *Carmona v. Professionals, Inc.*, No. 15 C 8362, 2017 WL 1365590, at *3 (N.D. Ill. Apr. 14, 2017) (dismissing wage-hour claims pleaded alternatively in different counts because they were based on inconsistent facts). In other words, Luna may be entitled to offer alterative theories, but he can't rely on "alternative facts."

But even setting aside their factual inconsistencies, Luna's claims fail because taken on their own, they individually fall short of the essential pleading requirements of Rule 8(a). "[T]hat a party may assert inconsistent claims or defenses does not license disregard of the requisite pleading standards." *Weddle v. Smith & Nephew, Inc.*, No. 14 C 09549, 2016 WL 1407634, at *4 (N.D. Ill. Apr. 11, 2016) (citing cases). Luna's admission that the essential facts supporting his claims are "unknown" to him at this time forecloses his ability to a bring them. They are based on nothing more than hypothetical assumptions, and "purely hypothetical claims [must] be dismissed." *Sprague Farms, Inc. v. Providian Corp.*, 929 F. Supp. 1125 (C.D. Ill. 1996). It is fundamental that claims must be supported by "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The absence of factual content dooms them.

Construed in their best light, Luna's allegations suggest that, hypothetically, two sets of facts are conceivable: first, that Benchmark received more customer tips than were paid to Luna,

and that explains the discrepancy on his pay statements, and so he can succeed on his wage-hour claims; and second, that Benchmark never received those additional customer tips received and thus committed tax fraud when it overstated customer tips on Luna's tax forms. But even if these claims are conceivable, they must be dismissed because Luna "must allege facts that rise beyond mere conceivability or possibility." *Somers v. Apple, Inc*., 729 F.3d 953, 965 (9th Cir. 2013). "Although [Luna's] complaint leaves open the possibility that [he] might later establish some set of undisclosed facts supporting [his] injury, that is not enough to permit the [Complaint] to survive a Rule 12(b)(6) motion to dismiss." *Id.* at 966. Rather, the facts that make Luna's claims plausible must be pleaded in the Complaint, and his admissions that they are unknown to him plead him out of asking the Court to allow them to go forward. Otherwise, they are not "enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

Luna's argument that "discovery is the proper tool to test the validity of the allegations and Defendants' proffered explanation for the [d]iscrepancy" between the tips he received and the tips Benchmark reported for tax purposes is misguided. (Luna's Br. at 4-5.) Citing *Huon v. Denton*, 841 F.3d 733, 742 (7th Cir. 2016), Luna argues that the allegations present enough of a reasonable expectation that the discrepancy "is the result of Defendants' malfeasance." But *Huon* does not stand for the proposition that speculative allegations alone are sufficient for claims to proceed into discovery. The plaintiff in *Huon*, unlike Luna, pleaded factual allegations to support the alleged wrongdoing: that web-based media platform Gawker employed individuals to author comments beneath an online article for the purposes of defaming the plaintiff. *Id.* The district court found those allegations to be improbable (rather than implausible) and improperly dismissed the complaint. *Id.* The Seventh Circuit noted that even if the allegations were improbable, they were pleaded and so Huon should have the opportunity to test them through

3

discovery, while also noting that to the extent they are outlandish and unfounded, they are safeguarded by Rule 11 and not Rule 8. *Id.* at 742-43. Luna does not even assert the facts supporting his claims because, admittedly, he doesn't know if they are true or not. Thus, he attempts to skirt around the safeguards of Rules 8 and 11 that prevent litigation of claims that have no supporting factual content. Such an attempt should not be allowed, and Luna's claims should not proceed into discovery for the purposes of helping him articulate what they even are.

Further, the importance of pleading facts that make his claims plausible is amplified for Luna's claims that sound in fraud because they must be based on particular and specific facts. Fed. R. Civ. P. 9(b). One of the purposes of the particularity and specificity requirements of Rule 9(b) is "to force the plaintiff to do more than the usual investigation before filing his complaint." *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 737 (7th Cir. 2014). The hypothetical nature of Luna's claims are completely incompatible with Rule 9(b) standards, and Luna, admittedly, has failed to perform the fact investigation that is a prerequisite to asserting harmful claims that sound in fraud. Cases cited by Luna reiterate that Rule 9(b) particularity and specificity requirements protect litigants against the precise risk presented here: "fishing expeditions" and accusations of fraud "that can seriously harm a business." *Vicom, Inc. v. Harbridge Merch. Servs., Inc.*, 20 F.3d 771, 777 (7th Cir. 1994) (cited by Luna at pp. 7, 10, and 17 and noting that the purposes of Rule 9(b) include protecting a defendant's reputation from harm and minimizing fishing expeditions); *Uni\*Quality, Inc. v. Infotronx, Inc.*, 974 F.2d 918, 924 (7th Cir. 1992) (cited by Luna at p. 10 and holding, "Rule 9(b)'s particularity requirement serves an important purpose. Accusations of fraud can seriously harm a business.").

For these reasons, Luna's claims collectively and individually fail to meet the basic pleading standards and should be dismissed.

## I. LUNA'S WAGE-HOUR CLAIMS FAIL (COUNTS I - IV).

Luna's wage-hour claims in Counts I through IV fail because they are not based on well-pleaded plausible facts. Making matters worse, they are foreclosed by Luna's admissions that he was paid all the customer tips that he received and declared.[1] As shown in Defendants' opening brief, Luna's complaint contains no allegations that Benchmark actually retained customer tips or failed to pay him at least minimum wage. Indeed, he admits that he received all the tips that he reported and thus cannot recover for the alleged minimum wage violations under the FLSA, IMWL, CMWO and IWPCA. In his opposition, Luna argues that, hypothetically, Benchmark retained additional customer tips that were never paid to him because for tax reporting and pay statement purposes, Benchmark imputed additional tip income to him. Luna points to no facts that he was aware of any customer tips that were not "bestowed" upon him and cannot escape his allegations that he was responsible for personally tipping out of Benchmark's POS system at the end of his shift, declaring the tips he received, and taking those tips home. It is implausible that there were tips received by Benchmark that were not paid to Luna based on the allegations in the complaint, and Luna's speculation for the purposes of his wage-hour claims that the discrepancy on his pay statements and tax forms was because of unremitted tips cannot be supported.

Rather, the facts pleaded in the complaint demonstrate that Benchmark imputed customer tip income to Luna above what Luna self-reported in Benchmark's POS system. Benchmark's decision to do so is consistent with its obligations under the tax code, which require employers and employees alike to accurately estimate customer tips, which are treated as wages for the purposes of federal income and FICA taxes. 26 U.S.C. §§ 3121(q), 3401(f). Benchmark could

---

[1] Luna does not dispute that he was paid at least the tipped employee minimum wage, so his wage-hour claims turn on whether Benchmark failed to pay Luna all the customer tips that he received, which is a prerequisite to Benchmark's ability to pay Luna the tipped employee minimum wage.

5

even be liable for the employer's share of FICA tax liability for Luna's undeclared tips in the event of an IRS audit. *U.S. v. Fior D'Italia, Inc.*, 536 U.S. 238, 243-51 (2002).[2] To the extent that Luna attempts to state minimum wage violations based on Benchmark's decision to impute additional customer tip income to Luna for tax purposes, such claims are not cognizable. The Department of Labor's ("DOL") Field Operations Handbook ("FOH") states, "Where an employer withholds taxes from a tipped employee based upon a percentage of sales, rather than on reported tips, a reduction in an employee's net may result, but this is not an FLSA violation."[3] DOL FOH § 30d08, *available at* https://www.dol.gov/whd/FOH/ FOH_Ch30.pdf. Luna insists that the cited provision in the DOL FOH is inapplicable to this case because it only pertains to the wage implications of "allocated tips" pursuant to 26 U.S.C. § 6053(c)(A) (Luna's Br. at 6), but he pulls this assertion out of thin air. There is no reference to "allocated tips" or 26 U.S.C. § 6053(c)(A) in the applicable text of the DOL FOH,[4] nor does Luna supply any authority for his claim that the DOL FOH § 30d08 should not apply to the most plausible explanation for any difference between Luna's declared tips and his reported tips.

Finally, Luna insists that "Defendants' alternative explanation as to the Discrepancy (i.e., Benchmark imputed additional tip income to Luna) is precluded by the allegations in the

---

[2] In a footnote, Luna states that Defendants mischaracterized the allegations in the complaint that wrongly conclude that "employers are not permitted to withhold tip income from employees for tax purposes." (Luna's Br. at p. 6, n. 8.) Defendants accurately summarized the obligations contained in 26 U.S.C. § 3102(c) and 26 U.S.C. § 3402(K), which merely require that, at minimum, employers deduct all reported tips and all allocated tips taken pursuant 26 U.S.C. § 6053(c)(A). These standards set a floor and not a ceiling on the tips that can be imputed for tax purposes, and the tax code nowhere prohibits employers from imputing additional tip income to employees for tax withholding purposes. Rather, as Luna notes, Benchmark has a duty to file correct W-2s with the IRS, and if Benchmark believed Luna underreported its tips, it has an obligation to impute the additional tips to him for accuracy purposes. (Luna's Br. at 8, citing 26 C.F.R. § 31.6001-1(a), 26 U.S.C. § 6721(a)(2)(B), and 26 C.F.R. § 6721-1.)

[3] The same analysis applies to Luna's IMWL or CMWO claims because the minimum wage requirements in all of the statutes are parallel, and Luna's IWPCA claim is entirely derivative of his minimum wage claims. (Def.'s Br. at 4.)

[4] The heading of the applicable FOH section reads "IRS tip allocation rules" but the text does not mention that word and does not limit the guidance based on what box is used to report tip income.

complaint." (Luna's Br. at 6.) This point must be rejected; in fact, it forms the core basis of Luna's tax fraud claim, in which Luna speculates that Benchmark illegally inflated his wages on his W-2 forms by imputing more tip income to him than he received. If true, Luna still has not pleaded a minimum wage violation because the Complaint contains no facts that show Benchmark retained customer tips. Rather, Luna just does not know what happened to cause the discrepancy, and such a hypothetical, speculative claim fails federal pleading standards.

## II.     LUNA'S CONVERSION CLAIM FAILS (COUNT V).

Luna's opposition confirms that his claim for conversion only seeks to recover the tips that were imputed to him on his pay statements and W-2 forms. Luna does not dispute that he was paid all of the tips that he declared, and indeed, he admits in his Complaint that the tips that he calculated and declared at the end of his shift were paid to him. (Cmplt. ¶¶ 50, 60.) His conversion claim thus fails for two reasons. First, Luna fails to make factual allegations from which the Court plausibly may infer that Benchmark unlawfully retained tips that were the property of Luna. As discussed above, Luna has no actual knowledge of where these imputed tips came from or whether they were accurately reported on his pay statements and W-2 forms. Second, Luna fails to allege that he ever demanded any imputed tips. Luna only demanded the tips that he personally declared at the end of his shift in Benchmark's POS system and was paid those tips. For these reasons, Luna fails to plead an Illinois common law conversion claim.

## III.    LUNA'S TAX CLAIM FAILS (COUNT VI).

Luna's tax fraud claim must be dismissed because Luna fails to plead with specificity and particularly that Benchmark willfully issued a fraudulent W-2. Luna does not even know if the W-2s that Benchmark filed for his wages accurately reported the customer tips that Benchmark received. Although Luna correctly states that under Rule 9(b), a defendant's malice, intent, knowledge or other condition of mind may be averred generally in the complaint, Luna must still

advance allegations that support a plausible inference that Benchmark filed a fraudulent return and the circumstances surrounding the fraud. "[V]ague and unsubstantiated accusations of fraud" that "lead to costly discovery and public obloquy" fail to meet Rule 9(b) pleading standards. *U.S. ex rel. Lusby v. Rolls-Royce Corp.*, 570 F.3d 849, 854-55 (7th Cir. 2009). Luna points to no case that excuses the fraud pleading standard to such an extent that a plaintiff can survive a motion to dismiss where the plaintiff admits he is not sure, one way or the other, if fraud was committed; where he alleges no specific actors or actions that advanced the fraud (particular actors from all of the 36 Defendants, many of whom have no apparent connection to Benchmark or Luna's employment); and where he only speculates about their hypothetical motives.

In light of Benchmark's obligations to accurately report Luna's income for tax purposes, allowing Luna to jump to the conclusion that Defendants committed fraud just because Luna's reported customer tips are higher than what he declared in Benchmark's POS system would eviscerate Rule 9(b)'s requirements that fraud claims be pleaded with particularity and specificity. Luna's purely hypothetical speculations about why customer tips were overreported and how Defendants benefitted from such overreporting lack any concrete facts that could support a tax fraud claim. Indeed, he has clearly failed to discover facts prior to this lawsuit that would support such a claim. Luna's claim thus differs from the claim that survived dismissal in *Bolling v. PP&G Inc.*, No. WDQ-15-911, 2015 WL 9255330, at *7 (D. Md. Dec. 17, 2015), where the plaintiff alleged (rather than hypothesized) why the employer fraudulently overreported her income on her W-2s and thus satisfied the Court that she "has substantial prediscovery evidence of" the facts supporting her claim that the defendants committed fraud.

Although Luna insists that he pleads the facts supporting his tax fraud claim by asserting Defendants' motives "on information and belief," all of his claims are based on hypothetical

8

speculation. Further, as a general rule, allegations of fraud made "on information and belief" are insufficient under Rule 9(b). *Cathedral Trading, LLC v. Chi. Bd. Options Exch.*, 199 F. Supp. 2d 851, 858 (N.D. Ill. 2002) (citing *Uni\*Quality, Inc.*, 974 F.2d at 924 (7th Cir.1992)). When fraud is pleaded based on information and belief, a plaintiff is required to state the grounds for his suspicions. *Id.* Luna does not attempt to do this, instead engaging in a series of "what if?" allegations that fail to satisfy Rule 9(b). Luna pleads no facts to support his speculation that Defendants attempted to shift the tax burden or understate the portions of bills attributable to the cost of food and beverage items versus the tips paid by customers as alleged in Complaint Paragraphs 236 through 238. For these reasons, Plaintiff's tax fraud claim should be dismissed.

**IV.     LUNA'S RICO CLAIM FAILS (COUNT VII).**

      **A.     Luna Does Not Allege that Benchmark Managed the Enterprise**

Luna's RICO claim must be dismissed because it does not satisfy the conduct element under Section 1962(c) that each defendant "operated or managed" the enterprise's affairs, "not just their own affairs." *Reves v. Ernst & Young*, 507 U.S. 170, 185 (1993). While liability is not limited to "upper management" of the enterprise, "mere participation in the activities of the enterprise is insufficient; the defendant must participate in the operation or management of the enterprise." *Goren v. New Vision International*, 156 F.3d 721, 727 (7th Cir. 1998).

The Complaint does not contain any allegation that all Defendants operated or managed the "Four Corners Enterprise," as opposed to their own affairs. Recognizing this failure, Luna argues that *each* Defendant, including Benchmark, participated in the management of the "Four Corners Enterprise" merely by issuing W-2s to its own employees. (Dkt. 32, p. 13-14.) This establishes nothing more than each Defendant conducting its own affairs, as opposed to those of

9

the enterprise.[5] Similar allegations have consistently been held *not* to satisfy the conduct element. *Reves*, 507 U.S. at 185; *Goren*, 156 F.3d at 727; *United Food & Commer. Worker Unions & Emplrs. Midwest Health Bens. Fund v. Walgreen Co.*, 719 F.3d 849, 854-55 (7th Cir. 2013) (allegations did not show defendant "improperly hijack[ed]" the enterprise).

### B. The Complaint Does Not Properly Allege a RICO Enterprise

Luna's RICO claim must be dismissed also because he has not sufficiently alleged that the Defendants coordinated their activities for the common purpose of perpetrating the alleged scheme. At most, Luna alleges a policy among the Four Corners entities that he believes is unlawful. That does not support a plausible inference of a "shadow enterprise" bent on stealing a fraction of its employees' tips. *Walgreen Co.*, 719 F.3d at 854-55. Moreover, the Seventh Circuit has held many times that "normal commercial relationship[s]" among related companies are insufficient to create a RICO enterprise. *Walgreen Co.*, 719 F.3d at 854. A RICO enterprise must be "more than a group of associated businesses that are operated in concert under the control of one family." *Richmond v. Nationwide Cassel L.P.*, 52 F.3d 640, 645 (7th Cir. 1994).[6] That is the most that Luna has alleged in this case.

Luna relies on *Bible v. United Student Aid Funds, Inc.*, 799 F.3d 633, 655-56 (7th Cir. 2015), in arguing that the Complaint alleges facts sufficient to establish a RICO enterprise. (Dkt. 32, p. 14-15.) In that case, the court distinguished between "a run-of-the-mill commercial

---

[5] *See e.g.*, Cmplt. at ¶ 13. "Wells Holdings, LLC employs, and controls payment of wages to, Servers who serve food and drinks to Benchmark Bar and Grill's customers." While this establishes that Benchmark conducts its own affairs, it does not establish that it participates in management of a larger criminal enterprise.

[6] *See also Stachon v. United Consumers Club, Inc*., 229 F.3d 673, 676 n. 3 (7th Cir. 2000) (plaintiff cannot establish a RICO enterprise by naming corporation's franchises in addition to the corporation); *Bucklew v. Hawkins, Ash, Baptie & Co*., LLP, 329 F.3d 923, 934 (7th Cir. 2003) ("A parent and its wholly owned subsidiaries no more have sufficient distinctness to trigger RICO liability than to trigger liability for conspiring in violation of the Sherman Act."); *Bachman v. Bear, Stearns & Co*., 178 F.3d 930, 932 (7th Cir. 1999) ("A firm and its employees, or a parent and its subsidiaries, are not an enterprise separate from the firm itself"); *Wooley v. Jackson Hewitt, Inc*., 540 F. Supp. 2d 964, 974-75 (N.D.Ill. 2008) ("Jackson Hewitt and the members of its 'corporate family' cannot constitute a RICO enterprise").

relationship… versus a truly joint enterprise where each individual entity acts in concert with the others to pursue a common interest." (*Id.*) The plaintiff alleged facts showing that the defendants "work as a single enterprise" (*Id.*, p. 656) for the "common purpose of maximizing revenue before, during, and after the loan rehabilitation process." (*Id.*, p. 655.) But Luna's Complaint lacks similar allegations. For example, there are no allegations that Defendants coordinated their activities; that they had separate roles in a coordinated scheme; or that one entity's conduct benefitted the other Defendants. The allegations are not sufficient to establish a RICO enterprise.

        **C.**       **The Allegations of Racketeering Activity are Insufficient Under Rule 9(b)**

In addition, Luna has not adequately pled the time, place, speaker or content of the communications constituting the alleged fraud, as required by Rule 9(b). *Vicom*, 20 F.3d at 777. Indeed, he argues that he should not have to. (Dkt. 32, p. 15-16.) The Seventh Circuit, however, does not permit the conclusory pleading in the Complaint and Luna is required to plead his case with "as much specificity as possible." *Rubloff Dev. Group, Inc. v. SuperValu, Inc.*, 863 F. Supp. 2d 732, 746 (N.D. Ill. 2012).

The cases cited by Luna do not support his argument. In *Carbon v. Zen 333, Inc.*, 2016 U.S. Dist. LEXIS 176355, *21 (D.S.C. Dec. 21, 2016), the court held that the plaintiffs adequately pled the time, place, and contents of the communications (but not the speaker) because they pled that their W-2 forms consistently overstated the amount of tips they earned. Conversely, in this case, Luna has not even pled whether the communications accurately stated his tip income or overstated it and Luna pleads two sets of "alternative facts" as to whether the W-2s were accurate. In his Response brief, Luna even suggests a third possible theory. (*Id.*, p. 4 n. 6.) Luna never makes any attempt in the Complaint to identify the other necessary facts—who, what, when, where, etc. This does not come close to the specificity required by Rule 9(b).

*Rubloff*, 863 F. Supp. 2d at 746. Moreover, none of the cases cited by Luna is brought under the wire or mail fraud statutes. 18 U.S.C. §§1341, 1343. Luna must allege facts showing that the scheme involved the use of interstate mail or wires. (*Id.*) Luna cannot do so if he does not state the time, place, speaker, etc. of the alleged communications.

Luna struggles and fails to distinguish *Lundy* and *Nakahata* from this case. *Lundy v. Catholic Health Sys. of Long Island, Inc.*, 711 F.3d 106, 119 (2nd Cir. 2013); *Nakahata v. New York Presbyterian Healthcare Sys.*, 723 F.3d 192, 204 (2nd Cir. 2013). In those cases, the Second Circuit ruled that, similar to this case, "the mailing of paystubs cannot further the fraudulent scheme because the paystubs would have revealed (not concealed) that Plaintiffs were not paid for all of their alleged compensable overtime." *Lundy*, 711 F.3d at 119. Luna argues that *Lundy* and *Nakahata* are distinguishable because the fraudulent scheme there was "directly revealed by the paychecks that the defendants mailed to the plaintiffs." (Dkt. 32, p. 16 n. 22.)

That, however, is exactly what Luna alleges in this case. He alleges that the paystubs and W-2s included tip income that was greater than the amount of tips that he self-reported. (Dkt. 32, p. 1-2.) Luna also contends that *Lundy* and *Nakahata* are distinguishable because the paystubs in those cases were accurate. (Dkt. 32, p. 16.) But the allegations in that case were materially the same as this case; *i.e.*, that the defendant issued "misleading payroll checks" and "deliberately concealed from its employees that they did not receive compensation for all compensable work that they performed and misled them into believing that they were being paid properly." *Lundy*, 711 F.3d at 119. There is no meaningful difference between *Lundy*, *Nakahata* and this case.

Finally, in a multiple defendant case, Rule 9(b) requires allegations that all defendants participated in the fraud. *Goren*, 156 F.3d at 726. At this point, there is only one named Plaintiff in this case and he worked at only one bar, Benchmark. (*E.g.*, Cmplt. at ¶ 270.) Luna does not

12

claim to have any knowledge of the other Defendants' practices. Therefore, all Defendants other than Benchmark should be dismissed on this ground alone.

        **D.**       **There Is No "Pattern" of Racketeering Activity**

Finally, Luna cannot show the requisite pattern. Luna does not deny that the Complaint only alleges a single course of conduct by one Defendant causing one type of injury, but argues that this is sufficient to establish a "pattern" of racketeering activity. (Dkt. 32, p. 16-17.) Luna's argument contravenes the overwhelming weight of authority in this district.

In examining whether a complaint alleges a "pattern" of racketeering activity, the Seventh Circuit looks at the variety and number of predicate acts and has rejected RICO claims that rely heavily on mail or wire fraud to establish a pattern. *Jennings v. Auto Meter Products*, 495 F.3d 466, 475 (7th Cir. 2007); *Rubloff*, 863 F. Supp. 2d at 746. For example, in *Midwest Grinding Co. v. Spitz*, 976 F.2d 1016, 1024-25 (7th Cir. 1992), the Seventh Circuit held that hundreds of instances of mail fraud did not comprise a "pattern" of racketeering activity because it was part of a single scheme and caused "one type of injury." Accordingly, the allegations are insufficient to establish a "pattern" of racketeering activity.

Furthermore, Luna must allege that *each* Defendant committed two predicate acts. *Green v. Morningstar, Inc.*, 2018 U.S. Dist. LEXIS 43245, at *28 (N.D. Ill. Mar. 16, 2018). The Complaint establishes at most that Benchmark sent a number of W-2s and paystubs to Luna. There are no competent allegations about any other Defendant.

**V.**      **LUNA'S CONSPIRACY CLAIM FAILS (COUNT VIII).**

Luna's argument that Defendants are "separate entities capable of conspiring with each other" is incorrect. First off, Luna once again attempts to disavow himself of the allegations fatal to his conspiracy claim – that Menna and Gloor control all entities within the Four Corners enterprise and that "all Defendants are part of the Four Corners business 'enterprise'." Complt.

13

¶¶ 39-40. Luna cannot ask the Court to simply disregard these allegations when convenient in the face of a motion to dismiss. Under the long-standing authority that a party "cannot conspire with itself," these allegations alone warrant dismissal of the civil conspiracy claim.

Luna's argument that he is alleging a conspiracy "between separate entities, not within a single entity" likewise fails. The United States Supreme Court has held that a corporation and its subsidiary are incapable of conspiring with each other. *Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752 (1984). In *Copperweld*, the Supreme Court found that although entities may be "separate" for purposes of incorporation or formal title, if they are controlled by a single center of decision-making and they control a single aggregation of economic power, an agreement between them does not constitute a "contract, combination…or, conspiracy." *Copperweld*, 467 U.S., at 769; *see also Bucklew*, 329 F.3d at 934 ("A parent and its wholly owned subsidiaries no more have sufficient distinctness to trigger RICO liability than to trigger liability for conspiring"); *Towers Financial Corp. v. Solomon*, No. 89 C 0913, 1991 U.S. Dist. LEXIS 12906, at *7 (N.D. Ill. Sep. 13, 1991) ("[A] corporation and its subsidiaries are incapable of conspiring…")

Lastly, Luna has not responded to Defendants' motion to dismiss the tort underlying the civil conspiracy claim – common law fraud. As such, the conspiracy claim cannot stand on its own without any actionable tort underlying the alleged conspiracy. *McClure v. Owens Corning Fiberglas Corp.*, 188 Ill. 2d 102, 133 (1999). Thus, the civil conspiracy claim should be dismissed for this additional reason.

## VI. LUNA'S NEGLIGENT MISREPRESENTATION CLAIM FAILS (COUNT X).

Under the *Moorman* doctrine, purely economic loss will not support a cause of action for negligent misrepresentation unless the defendant is in the business of providing information to

14

others for guidance in their business transactions. *University of Chicago Hosp. v. United Parcel Service,* 231 Ill. App. 3d 602, 605 (1st Dist. 1992). Luna does not refute this principle. Instead, he cites two cases that did not involve negligent misrepresentation claims. (Dkt. 32, p. 19, *citing Nixon v. U.S.*, 916 F. Supp. 2d 861 (N.D. Ill. 2013) and *Golf v. Henderson*, 376 Ill. App. 3d 271, 279 (1st Dist, 2007).) As neither of those cases involved negligent misrepresentation claims, they do not refute the long-standing principle of Illinois law that economic harm does not support a negligent misrepresentation claim.[7]

Further, Luna cannot argue that Benchmark is in the business of providing information for the guidance of others in their business relations with third parties. *Hoover v. Country Mutual Insurance Co.*, 2012 IL App (1st) 110939, ¶ 45. Benchmark operates a tavern.

Luna also does not refute the cases holding that negligent misrepresentation does not apply in the employment context. *Dargo v. Clear Channel Communs., Inc.,* 2008 U.S. Dist. LEXIS 42117, *11 (N.D. Ill. May 28, 2008); *Dougherty v. Akzo Nobel Salt, Inc*., 47 F. Supp. 2d 989, 992 (N.D. Ill. 1999). While he personally disagrees with those cases, he cites no authority saying that they are not good law. Accordingly, Count X should be dismissed.[8]

## CONCLUSION

For the foregoing reasons, Luna's Complaint fails to state a claim upon which relief may be granted and should be dismissed.

---

[7] The other cases Luna cites do not support his claim. *Lehmann v. Arnold*, 137 Ill. App. 3d 412, 419 (4th Dist. 1985), discussed whether a statute created a private cause of action. *Stewart v. Thrasher*, 242 Ill. App. 3d 10, 16 (4th Dist. 1993), and *Avon Hardware Co. v. Ace Hardware Corp*., 2013 IL App (1st) 130750, ¶ 21, held that negligent misrepresentation claims were properly dismissed. *Kupper v. Powers*, 2017 IL App (3d) 160141, ¶ 45, and *Mid-America National Bank v. First Savings & Loan Ass'n*, 161 Ill. App. 3d 531, 537 (1st Dist. 1987), held that certain statutes did not support a cause of action for negligent misrepresentation. *Board of Education v. A, C & S, Inc*., 131 Ill. 2d 428, 454 (1989), involved physical injury, not economic harm.

[8] Luna has not responded to Benchmark's argument that he has failed to state claim for common-law fraud (Count IX).

15

**<u>CERTIFICATE OF SERVICE</u>**

I, undersigned attorney, hereby certify that on November 30, 2018, I electronically filed the Defendants' Reply in Support of Motion to Dismiss with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

/s/ Matthew M. Showel
Matthew M. Showel
Tarpey Wix LLC
225 W. Wacker Drive, Suite 1515
Chicago, IL 60606
(312) 948-9090
mshowel@tarpeywix.com
Attorney for Defendants