```
            IN THE UNITED STATES DISTRICT COURT
           FOR THE NORTHERN DISTRICT OF ILLINOIS
                       EASTERN DIVISION
```

| | |
|---|---|
| **ERIK LUNA, individually, and on behalf of all others similarly situated,** | |
| Plaintiff, | Case No. 18 C 5165 |
| v. | Judge Harry D. Leinenweber |
| **4C KINZIE INVESTOR LLC,** *et al.*, | |
| Defendants. | |

### MEMORANDUM OPINION AND ORDER

### I.  BACKGROUND

This case was filed as a Collective and Class Action Complaint against fifteen separate bars and restaurants located in Chicago (the "15") by Erik Luna ("Luna"), a server of food and drinks to customers at one of the establishments, Wells Holdings LLC, d/b/a Benchmark Bar and Grill. According to the Complaint, each of the 15, including Benchmark, are a part of a collection of bars and restaurants which operate under the name Four Corners Enterprise, which is alleged to be a voluntary unincorporated association of the entities operating the 15 bars and grills. The Complaint consists of ten (10) counts:  the first four (Counts I, II, III, and IV) for violation of the Fair Labor Standards Act ("FLSA"), the Illinois Minimum Wage Law ("IMWL"), the Chicago Minimum Wage Law ("CMWL"), and the Illinois Wage Payment and

Collection Act ("IWPCA"); Count V, Conversion; Count VI, the Internal Revenue Code (Section 7434); Count VII, RICO; Count VII, Civil Conspiracy; Count IX, Fraud; and Count X, Negligent Misrepresentation. The Defendants have moved to dismiss all counts.

## II. DISCUSSION

### A. Counts I - IV - Minimum Wage Counts

The parties agree that the four minimum wage counts (Counts I to IV) are all analyzed under the FLSA standard. FLSA allows employers to pay tipped employees a reduced minimum wage. 29 U.S.C. § 203(m). The difference between the standard minimum wage and the reduced minimum wage paid to a tipped employee is known as the "tip credit." To receive the tip credit the employee must retain all the tips. In addition, under current law (as of March 23, 2018), an employer is prohibited from retaining any portion of an employee's tips regardless of whether the employer takes a tip credit. 29 U.S.C. § 203(m).

Luna does not dispute that the hourly wage he received from his employer was equal to or greater than the tipped employee minimum hourly wage required by FLSA. In addition to his hourly wage, Luna received tips from the customers he served. Under the Benchmark's tip-out system (and presumably under each of the Co-Defendants tip-out system), Luna declared his tips in the Benchmark

point-of-sale system at the end of his shift daily.  He received and took home all tips that he declared.  He does not dispute that he received all the tip income that he declared on the point-of-sale system.

Luna's dispute is that the pay stubs he received from his employer, upon which his W-2 is based, stated that he received more tip income than he reported on the Benchmark point-of-sale system, which formed the basis of the total tip income he received from his employer.  For example, for the pay period of March 22 to April 4, 2017, Luna reported receiving $2,437.00 in tips, but his pay stub reported that he received $2,850.00 in tips.  In his Complaint he alleged that he received all the tips that he declared and does not know why the pay stub report is higher than what he claimed and what he was paid.  As Luna explains it, either the servers were not given all their bestowed tips or servers' paystubs overstated their cash tips, thus shifting a portion of the employer's tax burden onto the employee.

Benchmark argues, first, that the Complaint should be dismissed because Counts I through IV rely upon Plaintiff's theory that he did not receive all the tip income he was entitled to, while the remaining Counts rely on the theory that Defendant, by over stating Luna's tip income, increased his tax liability while decreasing Benchmark's by increasing its deduction for the cost of

employees' salaries.  Luna responds that FED. R. CIV. P. RULE 8(d) permits parties to plead different theories of a defendant's wrongdoing.  Benchmark argues that Rule 8(d) allows alternative theories but not when the separate theories rely on inconsistent facts, citing the allegation that Luna received more tip income than he was paid (Counts I through IV) and that he did not receive more tip income than he was paid (the balance of the Complaint).

It appears to the Court that Plaintiff has the better of the argument at the motion to dismiss stage.  As Rule 8(d)(2) and (3) provide "a party may set out 2 or more statements of a claim . . . alternatively or hypothetically . . . If the party makes alternative statements, the pleading is sufficient if any one of them is sufficient" and "a party may state as many claims . . . as it has, regardless of consistency."  What a party cannot do is allege factual inconsistencies in the complaint that establish "an impenetrable defense to its claims."  *Tamayo v. Blagojevich,* 526 F.3d 1074, 1086 (7th Cir. 2008).  That is, a party cannot plead as a fact something that constitutes a complete defense to one of the claims.  This argument was made in the *Tamayo* case which was a Title VII Case and a First Amendment retaliation case.  The defense maintained that the First Amendment claim, which alleged plaintiff's firing was a result of political retaliation, made the Title VII claim untenable because politics is not a basis for a

Title VII claim. However, the court in *Tamayo* held that while the facts pled in the First Amendment claim made success less likely on the Title VII claim, nevertheless both could proceed because they were not mutually exclusive, *i.e.,* one could be discriminated against for both sexual and political reasons. *Tamayo*, 526 F.3d at 1086. In our case Luna merely supposes that one or the other factual allegations may be true, that he did not know. In other words, he did not rule out one or the other claims by his pleading. The allegation that he inputted the total amount of his tip income makes it more difficult for him to prove his FSLA claim. But it certainly does not hurt the false statement allegation on his W-2 forms, which forms the basis of the remaining counts. Possible scenarios could include that Luna incorrectly added his tips so as to come up with a lower number than his employer did so Luna would be entitled to the higher number; that his employer inflated his tip income as Luna argues in Counts V through X to reduce its income tax liability; or, as Defendant implies in its briefs, that Benchmark for unstated reasons believed that Luna under reported his tips and, in order to protect itself from tax liability, imputed additional tip income to Luna.

In any event, this case is before the Court on a Motion to Dismiss, and the Court is to be guided by the "plausibility standard" which is not the same as a probability requirement and

may precede "even if it strikes a savvy judge that actual proof of those facts is improbable." *Alam v. Miller Brewing Co.,* 709 F.3d 662, 666 (7th Cir. 2013). The Motion to Dismiss Counts I through IV is denied.

### B. Count V - Conversion

Benchmark seeks dismissal of Count V, conversion, arguing that Luna only demands that he be paid all the tips he declared in the Benchmark Point of Sale System, which is what he received. Luna now argues, when Benchmark declared to the IRS that he earned additional tip income, that he should have been paid this amount. However, Luna fails to allege where these so-called additional tips came from and to whom they were paid. So, the source and the recipient are matters of speculation. To state a claim for conversion a plaintiff must at a minimum allege that the defendant exercised unauthorized control over plaintiff's personal property to which he had an unconditional right. *Roderick Dev. Inv. Co., Inc. v. Community Bank of Edgewater,* 282 Ill. App. 3d 1053, 1057 (Ill. App. Ct. 1996). Luna failed to do so. Count V is dismissed without prejudice.

### C. Count VI - Tax Code Claim

Luna claims in Count VI that, in over reporting his tip income to the IRS, Benchmark violated 26 U.S.C. § 7434, which authorizes a private suit for damages against an individual "who willfully

filed a fraudulent information return." Since fraud is an essential element of this claim, the heightened pleading requirements of Rule 9(b) must be met. These are the who, what, when, where, and how of the fraud. *Viacom, Inc. v. Harbridge Merchandise Services, Inc.,* 20 F.3d 771, 777 (7th Cir. 1994). Luna's Complaint runs afoul of the "what" and "how" of the fraud allegations. Luna alleges that he was paid all the tip income he had coming, and he does not know where or how the extra income was derived. What works for the wage and hour counts does not necessarily work for the fraud counts. Luna admits that he does not know of what his claim consists. He alleges he was paid all the tip income he received and has no idea why the W-2 amount is higher. As stated previously, Luna's Complaint can be read to imply that Benchmark collected more tip income on Luna's behalf than Luna reported, Benchmark overstated the amount of tip income to increase its deduction for wages paid, or Benchmark increased the amount of estimated tip income because it suspected Luna of taking undeclared tip income. It was incumbent upon Luna to plead a single theory to comply with the where and how of the alleged fraud. Count VI is dismissed without prejudice.

### D. Count VII - RICO

To establish a Section 1962(c) claim under RICO, a plaintiff must, with Rule 9(b)'s specificity, allege that defendant (1)

conducted (2) an enterprise (3) through a pattern (4) of racketeering activity. *Goren v. New Vision International, Inc.*, 156 F.3d 721 (7th Cir. 1998). According to his Complaint, Luna is relying on mail and wire fraud for the acts of racketeering activity to support his RICO claim. For the reasons stated previously, Luna failed to allege fraud with the required specificity, so the RICO Count fails for this reason.

In addition, the predicate acts relied upon are all the same, consisting of the employer's preparation of the allegedly fraudulent W-2s. A W-2 is a report made to the IRS by the individual employer of an employee, here Benchmark and Luna. To constitute a criminal enterprise under RICO, the entity must have three features: a common purpose; relationships among the defendants, *i.e.,* those entities associated with it; and longevity. *United Food & Commercial Workers Unions & Employers Midwest Health Benefits Fund v. Walgreen Co.*, 719 F.3d 849, 854 (7th Cir. 2013). Here the most that can be said is that each of the Defendants employed servers, and each of the Defendants paid their servers their tip income, and each of the Defendants filed W-2s on behalf of their individual employees. The Complaint does not state how the respective Defendants had interests in the alleged fraudulent scheme beyond their own self-interest and their interest in maintaining a normal commercial relationship.

*Walgreen Co.,* 719 F.3d at 854-55. Count VII is dismissed without prejudice.

### E. Count VIII - Civil Conspiracy

Luna in his Complaint alleges that the corporate Defendants are "interconnected entities" that are part of the "Four Corners" enterprise. It further alleges that individual defendants, Matthew Menna and Andrew Gloor, are the "managers and/or officers of the business entities... [who] exercise significant control, oversight, and authority relative to the entities within the Four Corners enterprise, and the Four Corners enterprise itself." (Compl., Ex. A to Dkt. No. 1.) The Complaint fails to allege a combination of separate persons, which is the *sine qua non* of a conspiracy. An agent and principal relationship cannot form the basis of a civil conspiracy. It seems that what Luna is trying to allege is a "hub and spoke" conspiracy involving Menna and Gloor as the main agents who conspire through the spokes of the wheel to the defendant entities. *United States v. Bustamante,* 493 F. 3d 879 (7th Cir. 2007). Under the facts as alleged, Menna and Gloor are conspiring with the corporations that employ them which means that they are conspiring with their principals. Under Illinois law, a civil conspiracy cannot exist between a corporation's own officers or employees. *Van Winkle v. Owens-Corning Fiberglas*

- 9 -

*Corp.,* 683 N.E.2d 985, 991 (Ill. App. Ct. 1997). Count VIII is dismissed without prejudice.

### F. COUNT IX - Fraud

For the reasons previously stated, Luna cannot allege fraud with the particularity as required by Rule 9(b). Count IX is dismissed without prejudice.

### G. COUNT X - Negligent Misrepresentation

Luna contends that Defendants committed the tort of negligent misrepresentation in filing incorrect W-2s with the IRS. Illinois law is clear that there is a tort of negligent representation only where there is a personal injury resulting from the negligent act or where the defendant is in the business of supplying information. *Univ. of Chicago Hosp. v. United Parcel Serv.,* 596 N.E.2d 688, 690 (Ill. App. Ct. 1992). Neither of these apply here. Luna cites two case he says show that where there is no contract between the parties, the doctrine does not apply. However, in the two case he cites, *Nixon v. United States,* 916 F. Supp. 2d 861 (N.D. Ill. 2013) and *Golf v. Henderson,* 876 N.E.2d 105, 113 (Ill. App. Ct. 2007), the duty was created by statute (*Nixon*) and the defendant had a fiduciary relationship with the plaintiff (*Golf*), neither which applies here. In addition, Illinois does not recognize this tort in the employment context. *Dargo v. Clear Channel Commc'ns, Inc.,*

No. 07 C 5026, 2008 WL 2225812, at *4 (N.D. Ill. May 28, 2008). Count X is dismissed with prejudice.

### III. CONCLUSION

For the reasons stated herein, Defendants' Motions to Dismiss Counts I through IV is denied. The Motions to Dismiss Counts V, VI, VII, VIII, and IX are granted without prejudice, and Count X is dismissed with prejudice. If Plaintiff wishes to amend his Complaint to correct the deficiencies in Counts V-IX, he may do so by April 22, 2019. Failure to do so will convert the Court's Order from one without prejudice to one with prejudice.

**IT IS SO ORDERED.**

                                  Harry D. Leinenweber, Judge
                                  United States District Court

Dated: 3/18/2019