**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | |
|---|---|
| ERIK LUNA, individually, and on behalf of all others similarly situated, )<br>)<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>4C KINZIE INVESTOR LLC, *et al.* )<br>)<br>Defendants. ) | Case No. 18-cv-05165 |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**

Defendants submit the following memorandum of law in support of their motion to dismiss Plaintiffs' claims in Counts IV, V, VI, and VII of the First Amended Complaint ("FAC"). Plaintiffs' claims for common-law and tax fraud and for racketeering under the Racketeer Influenced and Corrupt Organizations Act ("RICO") should be dismissed because they fail to meet the heightened and particularized pleading requirements of Federal Rule of Civil Procedure 9(b). The Court previously dismissed these claims for failing to allege a coherent theory of fraud that contains particularized "what" and "how" allegations or a fraudulent scheme beyond a normal commercial relationship. Dkt. 48. The FAC fails to cure these deficiencies.

Additionally, Plaintiffs' claim in Count IV for unpaid wages under the Illinois Wage Payment and Collection Act ("IWPCA") should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) because Plaintiffs' claims depend entirely upon the minimum wage violations and fail to plead that Defendants violated any agreement for payment of wages.

Given that Plaintiffs had two chances to plead these claims yet failed to cure their defects, Counts V, VI, and VII should be dismissed with prejudice. It is clear that Plaintiffs cannot articulate a fraud theory that meets Rule 9(b)'s heightened standard, and where a plaintiff cannot

cure the defects in a complaint, dismissal with prejudice is appropriate. *Strong v. David*, 297 F.3d 646, 648 (7th Cir. 2002).

I. **SUMMARY OF FACTS ALLEGED IN THE FIRST AMENDED COMPLAINT**

As Servers at restaurants operated by Defendant Four Corners Tavern Group, Inc. ("Four Corners"), Plaintiffs were paid through a combination of hourly wages and tips they received from customers. FAC ¶ 56. Four Corners took a tip credit toward its minimum wage obligation for Plaintiffs and paid them a lower hourly wage according to the tip-credit provisions of the Fair Labor Standards Act ("FLSA"), Illinois Minimum Wage Law ("IMWL"), and Chicago Minimum Wage Ordinance ("CMWO"). *Id.* ¶¶ 89-99. Under Four Corners' tip-out system, Plaintiffs were directly tipped in cash by customers and declared those cash tips in Four Corners' point-of-sale ("POS") system at the end of their shift on a daily basis. *Id.* ¶ 59. Plaintiffs admit that they took home all of the cash tips that they declared. *Id.* ¶¶ 60-61.

All of Plaintiffs' claims derive from their observation that the amount of tipped income that Four Corners imputed to them for tax purposes is greater than the amount of tips that they declared in Four Corners' POS system (and took home at the end of their shifts). Plaintiffs insist that the cash tips they declared and took home represent 12% of the total food and beverage cash sales, but that Defendants imputed between 16% and 20% of food and beverage sales in tipped income on their pay statements and W-2s for tax reporting purposes. *Id.* ¶¶ 72-74. But like the original complaint filed by Plaintiff Erik Luna ("Luna"), the claims in Plaintiffs' FAC turn on inconsistent sets of assumptions that arise out of these observations. Plaintiffs assume that Four Corners retained customer tips from their pay for the purposes of their FLSA, IMWL, CMWO, and IWPCA claims in Counts I-IV of the FAC. *Id.* ¶¶ 93-94. But for the purposes of their RICO and fraud claims, Plaintiffs assume that Defendants over-reported the amount of tips that they received and forced them to pay tax on income that they did not actually receive. *Id.* ¶¶ 110-111.

In support of these claims, Plaintiffs allege that one of Defendants' managers told them that Defendants impute "16% to 20% of Defendants' sales to calculate Servers' Assumed Tip Income *precisely because it would diminish the possibility of an IRS audit*." *Id*. ¶ 111 (emphasis added). Notwithstanding Plaintiffs' admission that the discrepancy between Plaintiffs' declared cash tips and imputed cash tips was for tax compliance purposes, Plaintiffs speculate that Defendants issued fraudulent W-2s "as part of a willful scheme to shift the burden of paying taxes to Plaintiffs and Tax Fraud Class members so that Defendants could covertly retain income without paying taxes, diminish their labor costs, and avoid paying the minimum hourly rate of pay under applicable minimum wage laws." *Id*. ¶ 329.

## II. PLAINTIFFS FAIL TO PLEAD AN IWPCA CLAIM (COUNT IV).

Plaintiffs' IWPCA claim must be dismissed because Plaintiffs fail to plead that Defendants failed to pay them their agreed wages. "The IWPCA provides employees with a cause of action against employers for the failure to timely and completely pay their earned wages." *Enger v. Chicago Carriage Cab Corp*., 812 F.3d 565, 569 (7th Cir. 2016) (citing 820 ILCS 115/3). "The IWPCA defines 'wages' narrowly—a wage is 'compensation owed an employee by an employer <u>pursuant to an employment contract or agreement</u> between the two parties.'" *Id*. (emphasis added, quoting 820 ILCS 115/2). As such, to state a claim to relief against Four Corners under the IWPCA, Plaintiffs must demonstrate that they are owed compensation from Four Corners pursuant to contract or agreement between Plaintiffs and Four Corners. *Id*. (noting that "the IWPCA exists to hold the employer to his promise under the employment agreement" not to force "the judiciary to graft new terms into an employment contract without the employer's consent"); *see, e.g., Brand v. Comcast Corp*., 2013 WL 1499008, at *2 (N.D. Ill. Apr. 11, 2013) ("to state a claim under the IWPCA, [plaintiff] must allege that [defendant] owed him the unpaid wages pursuant to an employment contract or

3

agreement"); *Dominguez v. Micro Ctr. Sales Corp.*, 2012 WL 1719793, at *1 (N.D. Ill. May 15, 2012) ("[T]he IWPCA mandates overtime pay or any other specific kind of wage only to the extent the parties' contract or agreement requires such pay."). The FAC does not allege the requisite agreement or contract.

Plaintiffs insist that Defendants violated the IWPCA because "Defendants agreed to compensate Plaintiffs and Servers at an hourly rate that complied with the applicable minimum wage, and to allow Plaintiffs and Servers to retain all tips that were bestowed upon Plaintiffs and Servers by Defendants' customers." FAC ¶ 96. Thus, Plaintiffs' IWPCA claim is entirely derivative of their minimum wage claims. A violation of the FLSA or the IMWL alone, without a corresponding violation of an employment contract or agreement, therefore, cannot establish a violation of the IWPCA. *See Palmer v. Great Dane Trailers*, No. 05 C 1410, 2005 WL 1528255, at *4 (N.D. Ill. June 28, 2005) (dismissing the plaintiff's IWPCA claim because she failed to allege that an agreement required her employer to pay overtime and, thus, "the correct route for [plaintiff] to obtain earned pay, including potential overtime pay, [was] through timely FLSA and IMWL claims," not the IWPCA). "Instead, to survive dismissal, [Plaintiffs] must point to an agreement supporting the IWPCA claim that is more than an allegation that the employer is bound by existing overtime laws." *Barlett v. City of Chicago*, No. 14 C 7225, 2015 WL 135286, at *2 (N.D. Ill. Jan. 9, 2015).

Beyond the fact that Plaintiffs' IWPCA claim is entirely derivative of their minimum wage claims, the allegations in the FAC, which state that Defendants' manager informed Plaintiffs that Defendants imputed additional tip income to them to avoid a tax audit, disclaims any existence of an agreement to pay them more tips than they declared. Accordingly, Plaintiffs' IWPCA claim fails to state a claim for relief and should be dismissed.

**III.     LUNA FAILS TO PLEAD A TAX FRAUD CLAIM (COUNT V).**

Plaintiffs allege that Defendants committed fraud by over-reporting their tip income to the IRS and seeks a private suit pursuant to 26 U.S.C. § 7434, which provides that "[i]f any person willfully files a fraudulent information return with respect to payments purported to be made to any other person, such other person may bring a civil action for damages against the person so filing such return." This section was enacted to address the fact that "[s]ome taxpayers may suffer significant personal loss and inconvenience as the result of the IRS receiving fraudulent information returns, which have been filed by persons intent on either defrauding the IRS or harassing taxpayers.'" *Katzman v. Essex Waterfront Owners LLC*, 660 F.3d 565, 569 (2d Cir. 2011) (quoting H.R. Rep. 104–506, at 37). To establish a claim for tax fraud under Section 7434, Plaintiffs must establish: (1) Defendants issued an information return; (2) the information return was fraudulent; and (3) Defendants willfully issued a fraudulent information return. *Leon v. Tapas & Tintos, Inc.*, 51 F. Supp.3d 1290, 1297-98 (S.D. Fla. 2014) (dismissing § 7434 claim). Courts have interpreted "willfully" as requiring "proof of deceitfulness or bad faith in connection with filing an information return." *Dean v. 1715 Northside Drive, Inc.*, 224 F. Supp.3d 1302, 1310 (N.D. Ga. 2016). As the Court previously noted, Rule 9(b)'s heightened standard applies to § 7434 fraud claims. In dismissing Luna's tax claim in the previous complaint, the Court held that Luna failed to meet this standard, which requires factual allegations describing the who, what, when, where, and how of the fraud." (Dkt. 48 at 7., citing *Viacom, Inc. v. Harbridge Merchandise Services, Inc.*, 20 F.3d 771, 777 (7th Cir. 1994)). Specifically, the Court held that Luna's complaint failed to plead what fraud occurred and how it occurred. *Id.*

Plaintiffs' tax fraud claim in the FAC must be dismissed because their amended allegations do not contain particular facts showing that Defendants filed tax returns in bad faith

5

or with a willful intent to deceive Plaintiffs or the IRS. Plaintiffs insist that the "Cash Tips" on Servers' paystubs and W-2s inaccurately reflected the amount of tips that they received because Defendants impute 16-20% of total sales as tip income. FAC ¶ 72. Plaintiffs insist that this assumption is too high because they actually receive "approximately 12% of Defendants' sales" in tip income. FAC ¶ 74. The only facts supporting Plaintiffs' tax fraud claims are their observations that their declared cash tips are lower than the amount that Four Corners imputed to them, and that a manager told Plaintiffs that this discrepancy was attributable to the fact that "it would diminish the possibility of an IRS audit." FAC ¶ 111.

Plaintiffs allege in conclusory fashion that Defendants committed tax fraud to retain income and avoid paying minimum wage to Plaintiffs. FAC ¶ 329. Plaintiffs provide no factual support for these accusations. Specifically, they provide no facts showing how Defendants' decision to impute 16-20% in tip income to them somehow permitted Defendants to retain additional income or avoid paying them minimum wage. Indeed, as a practical matter, if Defendants assume that Plaintiffs took home more tips than the low figure of 12% they declared, such an assumption in no way enriches Defendants or reduces Defendants' obligation to pay Plaintiffs the tipped employee minimum wage under Illinois and federal law. Rather, the assumption that Plaintiffs took home 16-20% of cash sales in tips rather than the 12% they declared only means that a greater amount was withheld from their hourly wages for tax purposes and remitted to the state and federal government. The most logical and obvious conclusion that can be drawn from Plaintiffs' allegations is not that Defendants were committing tax fraud; rather, Defendants were trying to do the opposite by accurately reporting Plaintiffs' income for tax purposes and to avoid a tax audit of both Defendants and Plaintiffs. Far from

showing willful tax fraud with particularity, Plaintiffs' FAC shows Defendants' efforts to remain compliant with its tax reporting obligations.

Grasping for some coherent willful fraud theory, Plaintiffs conjure that Defendants taxed them at higher rates in order to tax other employees at lower rates so that other employees could be paid lower wages, allowing "Defendants to covertly depress their labor costs without detection." FAC ¶ 109. Plaintiffs fail to plead any facts supporting this theory, which is based on rank speculation and does not "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). Rather, the only particular circumstances that Plaintiffs do plead is that, "according to one of Defendants' managers, Defendants chose to use 16% to 20% of Defendants' sales to calculate Servers' Assumed Tip Income precisely because it would diminish the possibility of an IRS audit." *Id.* ¶ 111. This does not support Plaintiffs' far-fetched (and unsupported) labor cost theory, which must be rejected under Rule 9(b).

Further, as the Court noted in its order dismissing this claim several months ago, although inconsistent theories of relief may be acceptable for the purposes of Plaintiffs' wage and hour claims, fraud claims require more. "What works for the wage and hour counts does not necessarily work for the fraud counts." (Dkt. 48 at 7.) Although inconsistent theories of relief are permissible for Plaintiffs' wage and hour claims, "it [is] incumbent upon [Plaintiffs] to plead a single theory to comply with the where and how of the alleged fraud." *Id.*; *see also Schiffels v. Kemper Fin. Servs., Inc.*, 978 F.2d 344, 352 (7th Cir.1992) (quoting *Bankers Trust Co. v. Old Republic Ins. Co.*, 959 F.2d 677, 683 (7th Cir.1992) (to survive dismissal, "the identity of the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated"). Because the FAC is devoid of particularized allegations to state a tax fraud claim, Count V should be dismissed with prejudice.

7

### IV. THE RICO CLAIM REMAINS INSUFFICIENT (COUNT VI).

As in the prior complaint, Plaintiffs' attempt to plead a claim under § 1962(c) based on the filing of inaccurate W-2s. Dkt. 57, ¶ 354. To state a claim under § 1962(c), Plaintiff must show (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity. 18 U.S.C. 1962(c); *Roppo v. Travelers Commer. Ins. Co.*, 869 F.3d 568, 588-89 (7th Cir. 2017). Allegations of fraud in a RICO complaint are subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b). *Goren v. New Vision Int'l, Inc.*, 156 F.3d 721, 726 (7th Cir. 1988).

In dismissing the prior RICO claim, the Court identified three fatal defects. First, Luna did not plead the predicate acts of mail and wire fraud with sufficient particularity. Dkt. 48, p. 8. Second, Luna did not allege a "pattern" of racketeering activity because "the predicate acts relied on are all the same." *Id.* Third, Luna failed to allege a RICO enterprise because he did not allege that the "respective Defendants had interests in the alleged fraudulent scheme beyond their own self-interest and their interest in maintaining a normal commercial relationship." *Id.* Plaintiffs have not cured these defects and they still require dismissal. Numerous other flaws also require dismissal of Count VI.

#### A. The Allegations of Racketeering Activity Are Insufficient Under Rule 9(b).

Plaintiffs predicate the RICO claim on allegations of mail and wire fraud under 18 U.S.C. § 1341 and § 1343, respectively. FAC ¶ 358. Plaintiffs allege that Defendants committed mail and wire fraud by filing W-2s that misstated his tip income. *Id.* To establish the predicate mail or wire fraud, Plaintiffs must allege (i) a scheme to defraud (ii) to get money or property (iii) furthered by the use of interstate mail or wires. *Williams v. Affinion Group, LLC*, 889 F.3d 116, 124 (2d Cir. 2018). Moreover, "in a multiple defendant case, Rule 9(b) requires a RICO plaintiff to plead sufficient facts to notify *each defendant* of his alleged participation in the scheme."

8

*Goren*, 156 F.3d at 726 (emphasis added). The allegations of mail and wire fraud fall well short of the heightened pleading standards of Rule 9(b). *Goren*, 156 F.3d at 726; *Vicom, Inc. v. Harbridge Merchant Servs.*, 20 F.3d 771, 777 (7th Cir. 1994).

1. *The Allegations Are Insufficient to Establish a Fraudulent Scheme.*

As the Court previously held (Dkt. 48, p. 8), and as discussed below with respect to Count VII (for common law fraud), Plaintiffs have failed to allege fraud with the particularity required by Rule 9(b) and therefore there are no predicate acts to support Plaintiffs' RICO claim.

2. *The Alleged Communications Were Not Made "In Furtherance" of the Fraud.*

As a matter of law, the W-2s and paystubs are insufficient to state a claim for mail or wire fraud because they explicitly <u>revealed</u>—rather than concealed—Defendants' alleged scheme. The paystubs and W-2s clearly showed Plaintiffs that Defendants supposedly overstated their tip income. On similar facts to this case, the Second Circuit has held that paystubs that reveal, rather than conceal, an alleged wage-and-hour scheme do not "further" a fraudulent scheme. *Lundy v. Catholic Health Sys. of Long Island, Inc.*, 711 F.3d 106, 119 (2nd Cir. 2013); *Nakahata v. New York-Presbyterian Healthcare Sys.*, 723 F.3d 192, 204 (2nd Cir. 2013).

In *Lundy,* 711 F.3d at 118, and *Nakahata*, 723 F.3d at 204, the Second Circuit affirmed dismissal of employment-related RICO claims. The plaintiffs alleged that the defendants violated the mail fraud statute by mailing paychecks that misleadingly stated that that the plaintiffs had been fully compensated for their work. *Id.* The court stated that "the mailing of paystubs cannot further the fraudulent scheme because the paystubs would have revealed (not concealed) that Plaintiffs were not paid for all of their alleged compensable overtime." *Lundy*, 711 F.3d at 119. "Mailings that thus increase the probability that the mailer would be detected and apprehended do not constitute mail fraud." *Id.* (internal quotes omitted).

9

The reasoning applies equally in this case. The W-2s and paystubs did not mislead Plaintiffs. They plainly disclosed Defendants' supposed scheme to overstate Plaintiffs' tip income. The W-2s and paystubs thus exposed the alleged fraud, rather than perpetuating it. Therefore, the W-2s and paystubs did not "further" the alleged fraud and Plaintiffs cannot establish the mail or wire fraud predicates for his RICO claim.

### 3. *The FAC Only Alleges a Scheme by Three Defendants.*

Finally, to the extent the FAC successfully alleged wire or mail fraud by any Defendant, it only does so with respect to Kirkwood, Benchmark and Federales—the bars where the Plaintiffs worked. It does not establish the scheme with respect to the other Defendants, or contain any allegations about the other Defendants, and they should all be dismissed.

### B. There is No "Pattern" of Racketeering Activity.

Even if the allegations of mail and wire fraud are assumed to be sufficient, the Complaint does not establish a "pattern" of racketeering activity. A "pattern" of racketeering activity requires a minimum of two predicate acts which demonstrate both "relatedness" and "continuity." *Jennings v. Auto Meter Prods.*, 495 F.3d 466, 472-73 (7th Cir. 2007). "[C]ourts carefully scrutinize the pattern requirement." *Id.*, 472; *Midwest Grinding Co. v. Spitz*, 976 F.2d 1016, 1022 (7th Cir. 1992).

Courts in this Circuit have repeatedly held that a single scheme does not establish the requisite continuity to state a claim under RICO. *Pizzo v. Bekin Van Lines Co.*, 258 F.3d 629, 633 (7th Cir. 2001); *Vicom*, 20 F. 3d at 781; *Flextronics Intl. P.A., Inc. v. Copas*, 327 F.Supp. 2d 934, 936 (N.D. Ill. 2004). A single scheme is insufficient even where it consists of numerous alleged acts of wire or mail fraud. *Id.* The Seventh Circuit has "repeatedly rejected RICO claims that rely… heavily on mail and wire fraud allegations to establish a pattern." *Jennings*, 495 F.3d

10

at 475. Courts look to whether the enterprise engaged in a "variety" of predicate acts. *Id.* at 475; *Vicom*, 20 F. 3d at 781. Likewise, unspecified harm to unknown third parties is not sufficient to establish a pattern of racketeering activity at the pleading stage. *Jennings*, 495 F.3d at 475.

As this Court has already recognized, the predicate acts in this case "are all the same" and therefore do not establish a "pattern." Dkt. 48, p. 8. All of the predicate conduct—alleged mailing of inaccurate W-2s—was part of a single scheme. Under well-settled precedent, the single alleged scheme does not establish a "pattern" of racketeering activity. The Complaint therefore fails to establish the third element of a RICO claim.

Moreover, Plaintiffs must establish that *each* RICO defendant committed two predicate acts. *Green v. Morningstar, Inc.*, 2018 U.S. Dist. LEXIS 43245, *29-30 (March 16, 2018). There are no allegations of predicate acts by any of the Defendants other than Benchmark, Federales, and Kirkwood. "[A] plaintiff's conclusory allegations that 'defendants' also defrauded unidentified 'others' are not enough to plead the requisite pattern." *Goren*, 156 F.3d at 729. Thus, to the extent the FAC establishes any pattern of racketeering activity, it only does so with respect to those three Defendants and the other Defendants should be dismissed.

### C. The Complaint Fails to Plausibly Allege the Existence of a Criminal "Enterprise."

The FAC contains a conclusory allegation that all named Defendants constitute a RICO enterprise, FAC ¶ 340, but does not establish a massive "shadow enterprise" consisting of more than thirty different entities/individuals. *United Food & Comm. Worker Unions & Emplrs. Midwest Health Ben. Fund v. Walgreen Co.*, 719 F.3d 849, 854 (7th Cir. 2013). A RICO enterprise must have three features: a common purpose, relationships among those associated with it, and longevity. *Walgreen Co.*, 719 F.3d at 854. The members of the enterprise must have an interest in the alleged scheme beyond their individual interests. *Guaranteed Rate, Inc. v. Barr*,

11

912 F. Supp.2d 671, 686-87 (N.D. Ill. 2012). A "normal commercial relationship" is insufficient to create a RICO enterprise. *Walgreen Co*., 719 F.3d at 854. A RICO enterprise must be "more than a group of associated businesses that are operated in concert under the control of one family." *Richmond v. Nationwide Cassel L.P*., 52 F.3d 640, 645 (7th Cir. 1994).[1]

The FAC has no allegations that all of the thirty-some businesses and individuals "joined together to create a distinct entity *for purposes of*" issuing inaccurate W-2s. *Walgreen Co*., 719 F.3d at 854 (emphasis added). To the contrary, the Defendants were already related and existed for the purpose of operating taverns. Nor does the FAC have any allegations about longevity. Finally, the "enterprise" consists only of a group of related companies and their owners; which is insufficient to establish a RICO enterprise. *Richmond*, 52 F.3d at 645. Each of these defects warrants dismissal and the Court's analysis could stop there.

Plaintiffs have attempted to construct a common purpose by speculating that, by taking a fraction of their servers' tips, the Defendants could have lowered their operating costs and avoided IRS audits. FAC ¶ 108-112. However, Plaintiffs provide no actual facts to support this theory; it is entirely hypothetical. Moreover, Plaintiffs do not provide any explanation or facts showing that one Defendant stealing tips from its servers, could lower the taxes or operating costs of another Defendant. For example, Plaintiffs theorize that by taking a fraction of its servers' tips, a Defendant could somehow reduce the wages it pays to its "Support Staff." FAC ¶ 109. While this theory is difficult to understand in the first instance and is unsupported by any

---

[1] *See also Bucklew v. Hawkins, Ash, Baptie & Co*., LLP, 329 F.3d 923, 934 (7th Cir. 2003) ("A parent and its wholly owned subsidiaries no more have sufficient distinctness to trigger RICO liability than to trigger liability for conspiring in violation of the Sherman Act."); *Stachon v. United Consumers Club, Inc*., 229 F.3d 673, 676 n. 3 (7th Cir. 2000) (plaintiff cannot establish a RICO enterprise by naming corporation's franchises in addition to the corporation); *Bachman v. Bear, Stearns & Co*., 178 F.3d 930, 932 (7th Cir. 1999) ("A firm and its employees, or a parent and its subsidiaries, are not an enterprise separate from the firm itself"); *Wooley v. Jackson Hewitt, Inc*., 540 F. Supp. 2d 964, 974-75 (N.D.Ill. 2008) ("Jackson Hewitt and the members of its 'corporate family' cannot constitute a RICO enterprise").

facts, it also does not have any relationship to any other Defendant. There is no explanation as to how this would benefit any other Defendant. Likewise, Plaintiffs speculate that Defendants saved time by estimating the servers' tips. FAC ¶ 112. Again, this theory is not supported by any facts. And, again, Plaintiffs do not explain how one Defendant, preparing its own servers' W-2s, could save time for any other Defendant. Plaintiffs' attempt to manufacture an "enterprise" falls flat and Count VI should be dismissed.

### D. Plaintiffs Do Not Allege the "Conduct" Element.

To establish the "conduct" element of a claim under § 1962(c), Plaintiffs must allege that each defendant "operated or managed" the enterprise's affairs, "not just their own affairs." *Reves v. Ernst & Young*, 507 U.S. 170, 185 (1993). While liability is not limited to "upper management" of the enterprise, "mere participation in the activities of the enterprise is insufficient; the defendant must participate in the operation or management of the enterprise." *Goren v. New Vision International*, 156 F.3d 721, 727 (7th Cir. 1998). The FAC does not contain any allegations that any Defendant participated in the management of the alleged enterprise. Nor is there any allegation that any Defendant "used" the alleged enterprise to carry out its scheme. *Saleh v. Merchant*, 2018 U.S. Dist. LEXIS 1704, at *15 (N.D. Ill. Jan. 4, 2018) (complaint does not "permit a plausible inference that the cross defendants used the enterprise itself to carry out the object of their alleged scheme"). To the contrary, the FAC merely alleges that certain Defendants issued their employees' W-2s and paystubs. This establishes nothing more than each Defendant managed its own affairs, rather than the enterprise. Therefore, Count VII fails to establish the first element of a RICO claim.

### V. PLAINTIFFS CANNOT STATE A CLAIM FOR FRAUD (COUNT VII).

Plaintiffs assert a common-law fraud claim based on the paystubs and W-2s issued by Defendants. FAC ¶ 371-72. The elements of a common-law fraud claim are: (1) a false statement of material fact, (2) defendant's knowledge that the statement was false, (3) defendant's intent that the statement induce the plaintiff to act, (4) plaintiff's reliance upon the truth of the statement, and (5) plaintiff's damages resulting from reliance on the statement. *Cohen v. American Security Insurance Co.*, 735 F.3d 601, 613 (7th Cir. 2013). A common-law fraud claim is subject to the heightened pleading standings of rule 9(b). *Id.*

The FAC does not plausibly allege fraudulent intent. A "critical element" in the Court's Rule 12(b)(6) analysis "is whether the facts alleged in the FAC, and the reasonable inferences taken from those facts, permit the conclusion that" the W-2s and paystubs "were made with the intent to induce" reliance. *Tricontinental Industries v. PricewaterhouseCoopers, LLP*, 475 F.3d 824, 841 (7th Cir. 2007). The FAC does not permit such a conclusion. Plaintiffs admit that the alleged overstatement of tip income was plainly disclosed on the paystubs they received every two weeks and W-2s. Thus, the paystubs and W-2s could not have been made with the intent to mislead Plaintiffs. If Defendants wanted to mislead Plaintiffs, they would not send them W-2s and paystubs that plainly disclose the supposed fraud.

The FAC also does not allege reliance, reasonable or otherwise. Plaintiffs' allegation that they "reasonably believed that the information in the W-2s issued by Defendants was accurate, and relied upon that information" is a conclusion unsupported by any facts. FAC ¶ 375. Thus, the FAC does not establish any reliance.

Moreover, Plaintiffs' reliance would not have been reasonable because Plaintiffs knew that the W-2s and paystubs reflected higher tip income than Plaintiffs self-reported at the end of

14

their shifts. In determining whether Plaintiffs' reliance was justified, the Court must consider all of the facts that Plaintiffs knew, as well as those facts Plaintiffs could have learned through the exercise of ordinary prudence. *Cozzi Iron & Metal, Inc. v. U.S. Office Equipment, Inc*., 250 F.3d 570, 574 (7th Cir. 2001) (dismissing fraud claims). Moreover, "reliance cannot be reasonable when it presupposes a failure to read clear language." *Kennedy v. Venrock Associates*, 348 F.3d 584, 592 (7th Cir. 2003).

The W-2s and paystubs clearly revealed that Defendants were reporting higher tip income than Plaintiffs self-reported. When Plaintiffs received their paystubs and W-2s, Plaintiffs had actual knowledge of the discrepancy in their tip income and could not reasonably rely on the W-2s or paystubs. Plaintiffs never allege that they did not know that the W-2s and paystubs overstated their tip income. Plaintiffs certainly should have discovered the discrepancy in their tip income through "ordinary prudence." Count VII for common law fraud should therefore be dismissed.

## VI. CONCLUSION

For the foregoing reasons, Counts IV, V, VI, and VII fail to state a claim upon which relief may be granted and should be dismissed.

| | |
|---|---|
| Date: July 22, 2019 | Respectfully submitted, |
| | 4C Kinzie Investor LLC, *et al.*, |
| By: /s/ Daniel W. Tarpey | By: /s/ Noah A. Finkel |
| One of their attorneys | One of their attorneys |
| Daniel W. Tarpey<br>David G. Wix<br>Matthew M. Showel<br>TARPEY WIX LLC<br>225 West Wacker Drive, Suite 1515<br>Chicago, IL 60606<br>(312) 948-9090<br>dtarpey@tarpeywix.com<br>dwix@tarpeywix.com<br>mshowel@tarpeywix.com | Noah A. Finkel<br>Cheryl A. Luce<br>SEYFARTH SHAW LLP<br>233 South Wacker Drive, Suite 8000<br>Chicago, Illinois 60606-6448<br>(312) 460-5000<br>nfinkel@seyfarth.com<br>cluce@seyfarth.com |