# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| **ERIK LUNA, individually, and on behalf of all others similarly situated,**<br><br>    **Plaintiff,**<br><br>  v.<br><br>**4C KINZIE INVESTOR, LLC, *et al.*,**<br><br>    **Defendants.** | **Case No. 18 C 5165**<br><br>**Judge Harry D. Leinenweber** |

## MEMORANDUM OPINION AND ORDER

Defendants' Motion to Dismiss (Dkt. No. 65) is granted in part and denied in part.

### I. BACKGROUND

This is a collective and class action against 15 bars and restaurants located in Chicago, brought by a server at one of the establishments. This is the second time the Court has been asked to rule on a Motion to Dismiss. *See Luna v. 4C Kinzie Inv'r LLC*, No. 18 C 5165, 2019 WL 1239770, at *4 (N.D. Ill. Mar. 18, 2019) (granting in part and denying in part Defendants' first motion to dismiss). The initial Complaint consisted of ten counts: Count I-violation of the Fair Labor Standards Act; Count II-violation of the Illinois Minimum Wage Law; Count III-violation of the Chicago Minimum Wage Law; Count IV-violation of the Illinois Wage Payment

and Collection Act (IWPCA); Count V-conversion; Count VI-violation of Section 7434 of the Internal Revenue Code; Count VII-RICO; Count VIII-civil conspiracy; Count IX—common law fraud; and Count X-negligent misrepresentation. The Court denied the first motion to dismiss with respect to Counts I through IV, granted the motion without prejudice as to counts V through XI, and dismissed Count X with prejudice. Plaintiff has now filed an Amended Complaint that includes as Counts I though IV the wage counts which were not dismissed and has repleaded Count VI, the Internal Revenue Code claim as Count V, the RICO count as Count VI, and the fraud count as Count VII. Defendants have again moved to dismiss the three repleaded counts.

## II.  DISCUSSION

### A.  The Fraud Counts

The three repleaded counts all have as a common element the allegation of fraud involving misreported W-2 forms. The Court dismissed these counts previously because these counts ran afoul of Rule 9(b)'s requirement of specificity. Defendants originally moved to dismiss the wage counts because they were based on the allegation that Defendants shorted Plaintiffs' pay based on the difference between what Plaintiffs claim they actually received and what was reported to the IRS on the employee's W-2 form. The fraud counts rely on the W-2s as deliberately overstating the

servers' income to shift the tax burden from Defendants to the servers. The Court denied the Motion with respect to the wage counts on the basis that, theoretically, both the wage and fraud counts could legally coexist. The Court dismissed the fraud counts because, while both theories could coexist on a theorical basis, the Rule 9(b) requirement of specificity prevented Plaintiffs from adopting a position in the fraud counts that was contrary to the allegations in the wage counts without some explanation for the discrepancy. *See* Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.").

Plaintiffs have attempted to overcome this objection by pleading in paragraphs 374 and 375 that Defendants knew the information included on the W-2s was false because the Plaintiffs accurately declared the amount of their tip income and Plaintiffs reasonably believed the W-2s were accurate when they filed their income tax returns. In other words, Plaintiffs received all the tip income that they had coming to them which undercuts the allegations in Counts I through IV. Plaintiffs acknowledge that the W-2s given to them contained a larger amount of tip income than they reported to their employers and when confronted, the employer stated that it was concerned that servers may be underreporting their tip income which could possibly lead to an

IRS audit which it wished to avoid. Thus, the overreporting of the tip income was no secret to the servers. The IRS is very concerned with tip reporting because a certain number of tips are paid in cash rather than by credit card, thus leaving no record other than the self-reporting by the server. The law therefore assumes an average tip rate of 8% and expects employees to report at least 8% of gross food and drink sales as tip income. 26 U.S.C. § 6053(c)(3)(A)(i).

The Amended Complaint states that the Plaintiff servers receive and report, on average, 12% of Defendants' sales in take home cash. (Am. Compl. ¶ 74, Dkt. No. 57.) Plaintiffs further assert that Defendants, in preparing and filing the W-2s, assume that servers receive tip income equal to 16-20% of total sales. (Am. Compl. ¶ 72.) Thus, the servers are saddled with higher income and accordingly are required to pay more tax. Somewhat offsetting this theory is the fact that if an employer over-reports an employee's income, the employer is liable for an increased amount due to the federal government for Social Security and FICA payments. Regardless, the discrepancy between what Defendants report to the IRS and what the servers report as receiving from customers should be easily determined through discovery. Thus, at this stage of the case, the Court will let the fraud counts stand

and await future determination based on a more complete record, perhaps at the summary judgment stage.

The Motion to Dismiss Count V, violation of Section 7434 of the Internal Revenue Code, and Count VII, common law fraud, is denied.

### B. RICO Count

Plaintiffs allege in Count VI that Defendants violated the RICO statute, 18 U.S.C. § 1962(c). To state such a cause of action, a plaintiff "must show (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Vicom, Inc. v. Harbridge Merchant Services, Inc.*, 20 F.3d 771, 778 (7th Cir. 1994). The allegations constituting the alleged racketeering activity—wire and mail fraud—rely on the same scenario as that underlying the two fraud counts that the Court declined to dismiss above. Plaintiffs assert that Defendants issue W-2s to the servers that overstates their tip income so that Defendants obtain an increased deduction for payroll that will decrease their taxes at the expense of increasing the servers' income, thus requiring the servers to pay higher income taxes. The Court now has resolved the issue with respect to the fraud allegations such that Rule 9(b) alone does not compel the dismissal of the RICO count.

However, the Court must still consider whether the Amended Complaint adequately alleges the other elements of a § 1962 claim.

The Seventh Circuit has cautioned the lower courts not to allow RICO plaintiffs to turn "garden variety" fraud claims into federal RICO actions, bearing in mind that Congress enacted RICO in an effort to combat organized, long-term criminal activity. *Jennings v. Auto Meter Products, Inc.*, 495 F.3d 466, 472 (7th Cir. 2007).

Defendants take aim at each of the respective elements of a § 1962(c) claim. However, we need only consider the conduct and enterprise elements. Defendants contend that the Amended Complaint does not allege an enterprise, a pattern, or conduct by a person distinct from the enterprise itself, thus requiring this count be dismissed. The Amended Complaint describes the 15 Defendant bar and restaurant entities as "part of a collection of bars and restaurants located in Chicago, Illinois operating under the common 'Four Corners' enterprise." (Am. Compl. ¶ 26.) "Four Corners" is described as "a voluntary unincorporated association of entities operating the foregoing bars and restaurants located in Chicago, Illinois." (*Id*.) Additionally, the Amended Complaint alleges that other entities, including the Four Corners Tavern Fund LLC; Four Corners Tavern Group Investors, LLC; Four Corners Tavern Partners, LLC; Four Corners Tavern Group Inc.; Four Corners Holding LLC; Four Corners Capital Advisors, LLC; Four Corners Shuttle LLC; 4C Cheval LLC; and 1001 W. Lake LLC, all operating out of the same business address of 1040 West Randolph Street,

Chicago, Illinois, "all control[] the payment of wages to, servers who serve food and drinks to customers at the bars and restaurants with the Four Corners enterprise." (Am. Compl. ¶¶ 22-36.) The Amended Complaint then alleges that Defendants Matthew Menna and Andrew Gloor are "real person[s] and [] manager[s] of the previously described entities, who exercise significant control, oversight, and authority relative to the entities within the Four Corners enterprise." (*Id.* ¶¶ 37-38.)

While it is difficult to discern the exact structure of the conglomeration of entities existing under the moniker Four Corners, it appears that bars and restaurants are managed by one layer of LLCs and corporations, while another layer of entities owns title to the bars and restaurants. Plaintiffs allege that each of the entities "acted in concert with one another in perpetrating the scheme" described in the Complaint. (Am. Compl. ¶ 355.) As for purpose, Plaintiffs contend that Menna and Gloor "have a financial interest in all of the business entity Defendants" so that "each participant in the scheme… acts with a common purpose: enriching Matthew Menna and Andrew Gloor." (*Id.* ¶ 356.) Thus, the Amended Complaint appears to allege what the Court referred to in its previous Order as a hub and spoke conspiracy, with Menna and Gloor in the hub controlling the whole Four Corners enterprise as spokes.

One factor stands out as determinative of the nonviability Plaintiffs' § 1962(c) claim: the Amended Complaint fails to allege a separation between Menna and Gloor and the enterprise itself. To be liable under Section 1962(c), a person, distinct from the enterprise itself, must directly or indirectly conduct the affairs of the enterprise. *Richmond v. Nationwide Cassel L.P.,* 52 F3d. 640, 646 (7th Cir. 1995). To be liable under § 1962(c), that person "must be separate and distinct from the enterprise… liability depends on showing that the defendants conducted or participated in the conduct of the *enterprise's* affairs, not just their *own* affairs." *Id*. While the Amended Complaint's description of the legal set up of the Four Corners enterprise is confusing to say the least, the bottom line is that Menna and Gloor appear to own and control Four Corners, and through that enterprise they conduct the business of operating certain bars and restaurants for their own enrichment. (Am. Compl. ¶ 356). Consequently, Menna and Gloor constitute both the person and the enterprise, which is not a violation of Section 1962(c) when the two are combined. *Haroco, Inc. v. American National Bank and Trust Co. of Chicago*, 747 F.2d 384, 400 (7th Cir. 1984) (Section 1962(c) "requires separate entities as the liable person and the enterprise which has its affairs conducted through a pattern of racketeering activity."). The Court's conclusion is grounded in two central assertions in

the Amended Complaint: (1) that all of the Four Corners entities are owned by Menna and Gloor; and (2) that the increased profits from the racketeering activity committed by Four Corner entities flowed directly to Menna and Gloor. The underlying structure of the Four Corner entities therefore provided Menna and Gloor with the ability to dictate the use of the W-2s by the subservient entities to increase the income of the Four Corner entities which resulted in Menna and Gloor being able to enrich themselves at the expense of the servers. As held in *Wooley v. Jackson Hewitt, Inc.*, 540 F. Supp. 2d 964, 975 (N.D. Ill. 2008), a plaintiff cannot establish a RICO enterprise by naming corporate franchises in addition to the corporation, or a firm and its employees, or a firm and its agents and affiliates.

The Court therefore dismisses Count VI, this time with prejudice.

### C. IWPCA Count

The Court denied Defendants' first motion to dismiss the IWPCA claim without comment. The Court overlooked the position of the Defendants that sought dismissal of this claim. The Court has now been asked once again to consider dismissal of this count. Defendants contend that the IWPCA cannot be used to recover where the claim is based on minimum wage claims, citing *Palmer v. Great Dane Trailers*, No. 05 C 1410, 2005 WL 1528255, at *3-4 (N.D. Ill.

June 28, 2005) (discussing when the proper vehicles to recover earned pay are the Fair Labor Standards Act and the Illinois Minimum Wage Law). Plaintiffs contend, however, that their claim presented in Count IV is not based solely on the minimum wage laws but instead on an agreement between Plaintiffs and Defendants that they receive all of their tip income which in Count IV they deny that they received. The Court agrees with Plaintiffs and denies the Motion to Dismiss Count IV.

### III. CONCLUSION

For the reasons stated herein, the Motion to Dismiss (Dkt. No. 65) is granted in part and denied in part. The Court dismisses Count VI of the Amended Complaint with prejudice. The remaining Counts-I, II, III, IV, V, and VII-shall stand.

**IT IS SO ORDERED.**

                                      Harry D. Leinenweber, Judge
                                      United States District Court

Dated: 1/2/2020